UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:20-cv-81063-RS

STEVE HARTEL, Individually and On
Behalf of All Others Similarly Situated,

      Plaintiff,

v.

THE GEO GROUP, INC., et al.,

      Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S CLASS ACTION COMPLAINT
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Pursuant to Fed. R. Civ. P. 9(b), 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Defendants The GEO Group, Inc. ("GEO Group" or the "Company"), George C. Zoley and Brian R. Evans (collectively, the "Individual Defendants") move to dismiss all claims in Plaintiff's Class Action Complaint ("Complaint" or "Compl.").

## INTRODUCTION

The Complaint is a text-book example of a baseless "strike suit" following a decline in the GEO Group's share price during an unprecedented pandemic that has caused severe disruptions in global markets.  In the midst of the ongoing global pandemic, Plaintiff seeks to capitalize on that drop in stock price by falsely accusing the GEO Group of failing to disclose that its response to COVID-19 was allegedly inadequate, notwithstanding that the GEO Group issued guidance to all of its facilities consistent with guidance for correctional and detention facilities issued by the Centers for Disease Control and Prevention ("CDC").  Plaintiff also speciously claims that an article, focused on a single halfway house in Kansas, published months into the COVID-19 pandemic's global disruption, purportedly revealed "the truth" about COVID-19's impact on the GEO Group's business, causing a drop in its stock price.

Plaintiff's entire theory, however, is premised on a gross distortion of the impact on the GEO Group's stock price of that one article focused on one facility.  The import of that article is overstated by Plaintiff to fit his narrative.  There was no "truth" revealed by this article; between March 2020 and June 2020, there were numerous reports of COVID-19 outbreaks, at both private and government-run correctional facilities.  Indeed, an earlier news story reported on the spread of the coronavirus at the same halfway house *several weeks* before the end of the alleged class period. The public was well aware that COVID-19 was an issue at halfway houses and correctional facilities (as well as across the globe).

Also, the very same day the article that Plaintiff relies on was published, CoreCivic, Inc. ("CoreCivic"), the GEO Group's competitor and another major for-profit correctional facility company in the U.S., publicly announced the decision to suspend its quarterly dividend while it evaluated its corporate structure and capital allocation.  Plaintiff completely ignores this announcement (as well as prior news stories about the specific halfway house discussed in the article), and completely ignores the likelihood that the GEO Group's stock drop was in response to that industry news — because it does not fit his contrived narrative.

Rather, in a transparent effort to concoct a securities fraud claim from whole cloth, Plaintiff's boiler-plate Complaint simply references the GEO Group's public statements

describing, in detail, its comprehensive response to COVID-19 risks — following guidance issued for correctional and detention facilities by the CDC — and summarily alleges that these statements were false and misleading.  Yet, as shown below, Plaintiff's allegations fail, as each of the challenged statements are factually accurate and well-founded when placed in the proper context of the GEO Group's public statements.

Ironically, while Plaintiff accuses the GEO Group of omitting material information relating to its business and operations, the only significant omissions in this case are *Plaintiff's* own intentional failure to reveal critical risk disclosures and cautionary statements in the GEO Group's SEC filings that are dispositive of his specious claims.  In any event, a cursory review of Plaintiff's manufactured securities fraud claims confirms that Plaintiff has not and cannot adequately allege *any* basis remotely sufficient to survive scrutiny under the PSLRA and the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

First and foremost, Plaintiff has not pled securities fraud with the specificity required by the PSLRA and Rule 9(b).  To the contrary, all of the statements contained in the GEO Group's public SEC filings, earnings call, and public statement were true and accurate and did not contain any false or misleading information.  Plaintiff has failed to allege actual facts — as opposed to pure opinion and conjecture — in his Complaint demonstrating otherwise.

Second, Plaintiff has not pled facts even attempting to establish the element of scienter as to each of the alleged false and misleading statements, much less the required *strong inference* of scienter.  The Complaint is completely devoid of any factual allegations regarding the state of mind of the GEO Group's CEO and CFO as of the time of the alleged false and misleading statements and falls short of pleading the requisite "strong inference" of scienter.

Third, Plaintiff's securities fraud claims are based primarily on non-actionable, forward-looking statements in the GEO Group's 2019 10-K and 2020 10-Q public filings and quarterly earnings call that are protected by the safe harbor provision of 15 U.S.C. § 78u-5.

Lastly, Plaintiff fails to sufficiently plead the required element of loss causation; there are no facts in the Complaint establishing any plausible connection between the alleged statements at issue and the proximate causation of Plaintiff's alleged losses.

In short, Plaintiff's bare-bone allegations of securities fraud are facially defective and amount to nothing more than a thinly-veiled effort to extort a settlement predicated entirely on a decline in the GEO Group's share price in the midst of an unprecedented global pandemic.

Plaintiff's Complaint must be dismissed, with prejudice, for failure to satisfy the fundamental pleading requirements of the PSLRA and Rule 9(b).

## FACTUAL BACKGROUND

### A.    The Class Action Complaint's Allegations.

This is a putative securities class action brought against the GEO Group under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), on behalf of a putative class of all purchasers of the GEO Group's securities between February 27, 2020 and June 16, 2020.  Plaintiff's Complaint also asserts claims against Messrs. Zoley and Evans (the GEO Group's CEO and CFO, respectively) for control person liability under Section 20(a) of the Exchange Act.

The GEO Group specializes in the ownership, leasing, and management of secure facilities, processing centers and reentry facilities and the provision of community-based services and youth services in the United States, Australia, South Africa, and the United Kingdom.  *See* the GEO Group's 2019 SEC Form 10-K ("2019 10-K") for the fiscal year ended December 31, 2019, attached as **Exhibit 1**, at p. 3.[1]  As of December 31, 2019, the Company's worldwide operations included the management and/or ownership of approximately 95,000 beds at 129 secure and community-based facilities, including projects under development, and the provision of community supervision services for more than 210,000 offenders and pretrial defendants, including approximately 100,000 individuals through an array of technology products.  *Id.*

Plaintiff's skeletal Complaint alleges that the GEO Group made materially false and misleading statements in its 2019 10-K, in its SEC Form 10-Q filing for quarter ended March 31, 2020 ("2020 Q1 Form 10-Q" attached as **Exhibit 2**), and in an earnings call (annexed to the GEO Group's SEC Form 8-K, filed May 6, 2020, as Exhibit No. 99.2, and attached here as **Exhibit 3**). The Complaint broadly alleges that statements related to just about every aspect of the GEO Group's business — including quality of operations, corporate social responsibility, competitive strengths, business strategies, health and safety, and COVID-19 response procedures — were false and misleading.  Compl. ¶¶ 21-30.

Plaintiff makes the same allegations with respect to a statement issued by the GEO Group on its website entitled "GEO Group Has Taken Comprehensive Steps to Address and Mitigate the Risks

---

[1] It is well-settled that on a motion to dismiss a securities fraud action, the Court is free to consider any public records and documents, including SEC filings, that are central to a plaintiff's claims or referred to in the Complaint.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1287 (11th Cir. 1999).

of COVID-19 to Those in Our Care and Our Employees" ("COVID-19 Response Statement" attached as **Exhibit 4**), Compl. ¶¶ 31-32, which outlines steps taken by the Company to address the risks of COVID-19 virtually identical to the steps outlined in the GEO Group's 2020 Q1 Form 10-Q.

Plaintiff then claims that a decline in the GEO Group's stock price on June 17, 2020 occurred as a result of an article published that day entitled "GEO Group's Blundering Response to the Pandemic Helped Spread Coronavirus in Halfway Houses" released by an online news publication, *The Intercept* (the "Intercept Article" attached as **Exhibit 5**). Compl. ¶¶ 5-6. Plaintiff claims that the Intercept Article reported "details of a significant COVID-19 outbreak at the Grossman Center, a halfway house in Leavenworth, Kansas, operated by GEO Group," Compl. ¶ 34, and that "[o]n this news, GEO Group's stock price fell $1.03 per share, or 7.8%, to close at $12.17 per share on June 17, 2020." *Id.* ¶ 36.

Plaintiff has himself made significant omissions in the Complaint by failing to include critical risk disclosures and cautionary statements related to pandemic outbreaks — and specifically COVID-19 — from the GEO Group's SEC filings. Those statements are dispositive of Plaintiff's specious fraud claims. The disclosures in the GEO Group's 2019 10-K and 2020 Q1 Form 10-Q explicitly cautioned the Company's shareholders that (i) it is unable to predict the impact that the COVID-19 pandemic will have on its financial condition, results of operations and cash flows due to numerous uncertainties; (ii) that the Company experienced the transmission of COVID-19 at a number of its facilities in the second quarter of 2020; (iii) if the Company is unable to mitigate the transmission of COVID-19 at its facilities it could experience a material adverse effect on its financial position, results of operations and cash flows; (iv) although the Company is unable to predict the duration or scope of the COVID-19 pandemic or estimate the extent of the negative financial impact to its operating results, an extended period of depressed economic activity necessitated to combatting the disease, and the severity and duration of the related global economic crisis will adversely impact its future financial performance; and (v) that natural disasters, pandemic outbreaks, global political events and other serious catastrophic events could disrupt operations and otherwise materially adversely affect the Company's business and financial condition.

Plaintiff also ignored an important and more likely cause of the GEO Group's stock drop — a press release by CoreCivic on the same day the Intercept Article was released announcing its decision to suspend its quarterly dividend while it evaluated its corporate structure and capital allocation, generally related to the effects of COVID-19 ("CoreCivic's Announcement" attached

as **Exhibit 6**).  Numerous news articles attribute the GEO Group's stock decline on June 17 to CoreCivic's Announcement.  Plaintiff failed to disclose one such article by *The Motley Fool* entitled "Why The GEO Group Stock Fell 10% at the Open on June 17" (the "Motley Fool Article" attached as **Exhibit 7**), because it unequivocally concluded that the decline in the GEO Group's stock price was a consequence of investors' reaction to CoreCivic's Announcement.

After cherry-picking statements from the GEO Group, and cherry-picking the Intercept Article, Plaintiff alleges, in purely conclusory fashion, that the GEO Group's statements were false and misleading because they purportedly failed to disclose that: (i) the GEO Group maintained woefully ineffective COVID-19 response procedures at its halfway houses; (ii) those inadequate procedures subjected residents of its halfway houses to significant health risks; and (iii) "accordingly, the Company was vulnerable to significant financial and/or reputational harm." Compl. ¶¶ 4, 33.

### B.    The Complaint Intentionally Omits Highly Material Disclosures.

As an initial matter, Plaintiff's reference to the GEO Group's 2019 10-K to support his argument that the Company made false and misleading statements regarding COVID-19 is entirely disingenuous.  The GEO Group could not have had an opportunity to address COVID-19-related issues in its 2019 10-K given that COVID-19 concerns only emerged and heightened in the first quarter of 2020.  The GEO Group's 2020 Q1 Form 10-Q adequately addressed the operational and performance issues specifically regarding the effects of COVID-19 on the Company's business and made numerous disclosures about related risks to the Company's performance.

As previously noted, the Court may properly consider the GEO Group's entire SEC filings — including all risk disclosures and cautionary statements — during the purported class period in determining the sufficiency of Plaintiff's Complaint.  *Bryant*, 187 F.3d at 1287; *see also* 15 U.S.C. § 78u-5(e) (authorizing the district court in a securities fraud action to consider "any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant").  This rule is particularly applicable in this action in light of Plaintiff's selective reference to the GEO Group's public SEC filings, as it "prevents a plaintiff from excising an isolated statement from a document and importing it into the complaint, even though the surrounding context imparts a plainly non-fraudulent meaning to the allegedly wrongful statement." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996).  This is the precise strategy employed by Plaintiff in pursuit of his specious claims in this action.

While Plaintiff seizes on pieces of the GEO Group's public SEC filings as the basis for his securities fraud claims, he has predictably omitted from the Complaint highly material risk disclosures contained in the same filings that are fatal to his claims.  Most notably, the Complaint omits that the GEO Group's 2019 10-K and 2020 Q1 Form 10-Q filings both contain sections entitled "**Risk Factors,**" which disclose multiple risks that may affect the Company's business, finances and performance.  Exhibit 1, 2019 10-K, p. 24; Exhibit 2, 2020 Q1 Form 10-Q, p. 50.

> 1. <u>**The GEO Group Explicitly Disclosed Potential Risks Associated with the Outbreak of a Pandemic.**</u>

The GEO Group's 2019 10-K for the period ending December 31, 2019 (filed with the SEC on February 26, 2020, Compl. ¶ 21), provided a non-exhaustive list of risk factors it could face in its business operations, including an explicit warning related to pandemic outbreaks:

> ***Natural disasters, pandemic outbreaks, global political events and other serious catastrophic events could disrupt operations and otherwise materially adversely affect our business and financial condition.***
>
> As owner and operator of secure facilities, processing centers and community reentry centers with operations in many states throughout the United States and multiple foreign countries, we are subject to numerous risks outside of our control, including risks arising from natural disasters, pandemic outbreaks and other global health emergencies or disruptive global political events, including terrorist activity and war, or similar disruptions that could materially adversely affect our business and financial performance.  Such occurrences can result in destruction or damage to our secure facilities, processing centers and community reentry centers and our information systems, disruption of our operations, require the evacuation of detainees or our personnel, and require the adoption of specific health protocols or treatments to safeguard the health of our detainees or personnel.  Although it is not possible to predict such events or their consequences, these events could materially adversely affect our reputation, business and financial condition.

Exhibit 1, 2019 10-K, p. 36 (emphasis in original).  In addition to specific disclosures, the Company warned: "*The risks described below are not the only risks we face.  Additional risks not currently known to us or those we currently deem to be immaterial may also materially and adversely affect our business operations.*"  Exhibit 1, p. 24 (italics in original).

> 2. <u>**The GEO Group Explicitly Disclosed Risks Associated with COVID-19.**</u>

While the GEO Group's 2019 10-K could not have specifically addressed the effects of COVID-19 — because it preceded the eruption of COVID-19 in the United States — the Company's 2020 Q1 Form 10-Q provided numerous disclosures and cautionary statements related

to COVID-19.  The "Risks and uncertainties" section of the 2020 Q1 Form 10-Q warned about the risks of the GEO Group's inability to mitigate the transmission of COVID-19 in its facilities:

> The Company is closely monitoring the impact of the COVID-19 pandemic on all aspects of its business and geographies, including how it will impact those entrusted in its care and governmental partners.  While the Company did not incur significant disruptions during the three months ended March 31, 2020 from the COVID-19 pandemic, it is unable to predict the impact that the COVID-19 pandemic will have on its financial condition, results of operations and cash flows due to numerous uncertainties.
>
> The COVID-19 pandemic and related government-imposed mandatory closures, shelter in-place restrictions and social distancing protocols have had, and will continue to have, a severe impact on global economic conditions and the environment in which the Company operates.
>
> …
>
> Additionally, the Company has experienced the transmission of COVID-19 at a small number of our facilities in the second quarter of 2020.  ***If the Company is unable to mitigate the transmission of COVID-19 at its facilities it could experience a material adverse effect on its financial position, results of operations and cash flows.  Although the Company is unable to predict the duration or scope of the COVID-19 pandemic or estimate the extent of the negative financial impact to its operating results, an extended period of depressed economic activity necessitated to combating the disease, and the severity and duration of the related global economic crisis will adversely impact its financial performance***.

Exhibit 2, 2020 Q1 Form 10-Q, at p. 7 (emphasis added).

Further, in the "2020 Developments" section of the 2020 Q1 Form 10-Q, the GEO Group included a paragraph on COVID-19, warning about the Company's inability to predict the impact of COVID-19 on its financial condition, results of operations and cash flows.  The "Outlook" and "Economic Impact" sections of the 2020 Q1 Form 10-Q contained additional warnings regarding the economic impacts of COVID-19 on the Company's operations.  Exhibit 2, at pp. 36, 46.  And, the 2020 Q1 Form 10-Q supplemented the Company's 2019 10-K with risks associated with the outbreak of COVID-19.  Exhibit 2, 2020 Q1 Form 10-Q, at p. 50.

These detailed disclosures placed Plaintiff — and every GEO Group shareholder — on notice that the Company was unable to predict the impact that the COVID-19 pandemic could have on the Company's performance due to uncertainties surrounding the pandemic, thus defeating the allegations in Plaintiff's Complaint.

### 3. The GEO Group Explicitly Disclosed the Risks Associated With Adverse Publicity Regarding Its Facilities.

Plaintiff's central fraud allegation is that the GEO Group failed to affirmatively disclose that its COVID-19 response procedures were purportedly inadequate, which subjected residents of the Company's facilities to health risks, and consequently made the Company vulnerable to financial and/or "reputational harm." Compl., ¶¶ 4, 33. Yet, in addition to specifically outlining its COVID-19 response procedures — following guidance from the CDC — the GEO Group's SEC filings explicitly warned its shareholders about the risks associated with such reputational harm relating to the alleged or perceived conditions of its private correctional facilities.

In its 2019 10-K, the heading "[a]dverse publicity may negatively impact our ability to retain existing contracts and obtain new contracts," included the following cautionary statement:

> Any negative publicity about an escape, riot, other disturbance, death or injury of a detainee, or perceived conditions and access to health care and other services at a facility, including any work program at a facility, under a public-private partnership … may result in publicity adverse to us and public-private partnerships in general. Any of these occurrences or continued trends … could have a material adverse effect on our business.

Exhibit 1, at p. 35. Plaintiff cannot successfully maintain his claim because the GEO Group adequately warned against the effect of any such adverse publicity.

## ARGUMENT

### A. THE PSLRA IMPOSES HEIGHTENED PLEADING STANDARDS FOR FEDERAL SECURITIES CLAIMS.

In order to state a viable claim for securities fraud under Section 10(b) and Rule 10b-5 of the Exchange Act, Plaintiff is required to allege: (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the Plaintiff justifiably relied; and (5) that proximately caused the Plaintiff's injury. *Bryant*, 187 F.3d at 1281. In an effort to stem the rampant tide of abusive securities litigation and dispose of non-meritorious securities fraud claims at the pleading stage, the PSLRA significantly heightened the pleading standards for Section 10(b) claims. *Id.* As such, the PSLRA imposes two key requirements and provides that, if they are not satisfied, "the court **shall**, on the motion of any defendant, **dismiss the complaint**." 15 U.S.C. § 78u-4(b)(3)(A) (emphasis added).

First, Plaintiff is required to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief,… [to] state with particularity all facts on which that

belief is formed." *Id.* § 78u-4(b)(1).  Second, Plaintiff is required, "with respect to **each act or omission alleged** . . . [to] state **with particularity** facts giving rise to a **strong inference** that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2) (emphasis added).  To satisfy this standard, all of the facts alleged, taken together, must give rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

Section 10(b) claims are also subject to Rule 9(b)'s requirement that fraud must be pled with particularity, a rule designed to thwart generalized fraud allegations that "enable[] [plaintiffs] to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation . . . ." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006).  Rule 9(b) requires plaintiffs to plead "(1) precisely what statements were made in which documents or oral representations . . ., and (2) the time and place of each such statement and the person responsible for making . . . same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

### B.   PLAINTIFF'S BOILERPLATE COMPLAINT FAILS TO STATE A CLAIM.

Plaintiff's securities fraud claims must be dismissed because his Complaint fails to adequately plead any of the requisite elements under Section 10(b) and Rule 10b-5.

### 1.   <u>Plaintiff Fails To Plead All Facts.</u>

The Complaint must be dismissed as a threshold matter because Plaintiff has failed to "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading" with the particularity required by the PSLRA and Rule 9(b).

Plaintiff's entire case is built on his flimsy claim that the Intercept Article is *per se* proof that the GEO Group made false and misleading statements by failing to disclose that the Company maintained ineffective COVID-19 response procedures at its facilities which purportedly resulted in reputational harm to the Company.  Plaintiff's theory of liability is flawed from the outset, as the Intercept Article contains nothing more than vague purported complaints from residents of the GEO Group's Grossman Center in Leavenworth, Kansas.

Plaintiff relies exclusively on those vague, generalized, and conclusory statements as the basis for his fraud claims, but the Complaint fails to identify any facts that would render any of the GEO Group's public statements concerning its facilities or services in any way false or misleading.  Conspicuously, the Intercept Article does not cite a shred of credible and verifiable

evidence that supports the purported complaints referenced therein.  For instance, the Intercept Article mentions a purported photo of individuals in bunkbeds without masks, but such photo was neither included in the Intercept Article nor the Complaint.  As such, its context cannot be determined.  There is absolutely nothing that validates the Intercept Article's unsubstantiated characterization of the purported condition of the GEO Group's Grossman Center (or its facilities, more generally).  *See* Exhibit 4, the Intercept Article.

Further, Plaintiff does not allege that any of the public statements made by the GEO Group in its SEC filings, earnings call and COVID-19 Response Statement were in any way false or inaccurate on their face as a factual matter.  Plaintiff instead contends that these statements were rendered false solely because of the allegations made in the Intercept Article.  This is the slimmest reed imaginable upon which to hang a securities fraud claim under Section 10(b) and Rule 10b-5.

## 2.     The GEO Group's Statements Are Accurate.

Plaintiff's Complaint similarly fails to allege a single fact showing that the GEO Group's challenged public statements in its SEC filings were anything but 100% true and accurate.

### (a).     The 2019 Form 10-K Was Accurate.

The first set of alleged misrepresentations are statements under the "Quality of Operations" section in the 2019 10-K.  Plaintiff alleges that the statement "[w]e operate each facility in accordance with our company-wide policies and procedures and with the standards and guidelines required under the relevant management contract…" was false and misleading.  Compl. ¶ 21. Plaintiff fails to allege any facts demonstrating that this statement was false, but instead predictably relies exclusively on the Intercept Article for the basis of his allegation that these statements were somehow false and misleading, with no attempt to explain *how* or *why* this is so.  *Id.* at ¶¶ 33-36.

Further, Plaintiff quotes from a section of the 2019 10-K under "Corporate Social Responsibility" where the GEO Group stated that: "[w]e have referenced the GRI Standards and the UN Guiding Principles on Business and Human Rights as we have recognized the need for a transparent and disciplined enterprise-wide approach."  The Company further stated that "[i]n pursuit of this approach, we have begun with the following set of ***ongoing objectives***…" (listing three ongoing objectives).  Compl. ¶ 22 (emphasis added).  Plaintiff fails to show how these statements of ongoing objectives are false or misleading.  Further, as discussed below, statements regarding the Company's "**objectives** of management for future operations" are aspirational and inactionable forward-looking statements which investors are warned are "not guarantees of future performance."  Exhibit 1, p. 68; Exhibit 2, p. 33 (emphasis added).

And, under "Risk Factors," the Company emphasized that ***"[w]e are subject to risks related to corporate social responsibility"***:

> By electing to publicly share our Human Rights and ESG [environmental, social and governance] report, our business may face increased scrutiny related to our human rights and ESG activities.  As a result, our reputation could be adversely impacted if we fail to act responsibly in the areas in which we report, such as human rights, the development of our workforce, safety and security, addressing recidivism, engaging with our stakeholders, ethics and governance, oversight and contract compliance, energy and environmental sustainability and financial management and performance.  Any harm to our reputation resulting from setting these standards or our failure or perceived failure to meet such standards could impact: … our investors willingness or ability to purchase or hold our securities; and employee retention and the quality of relations with our employees, any of which could adversely affect our business, financial condition and results of operations.

Exhibit 1, at p. 41.  Plaintiff's allegations fail because the GEO Group specifically warned its investors and shareholders of the risks related to corporate social responsibility.

Plaintiff has similarly failed to plead specific facts casting any doubt on the truth or accuracy of the GEO Group's statements in its 2019 10-K regarding the Company's "Competitive Strengths."  Although Plaintiff alleged that statements identifying the GEO Group as a "Leading Secure Services Provider Uniquely Positioned to Offer a Continuum of Care" and a "Large Scale Operator with National Presence" were false, Compl. ¶¶ 23, 33, the Complaint is completely silent as to how or why these statements are misleading.

Next, Plaintiff quotes from the "Business Strategies" section of the 2019 10-K where the Company states that its "objective" is to "Provide High Quality, Comprehensive Services and Cost Savings Throughout the Corrections Lifecycle."  Compl. ¶ 24.  Again, in addition to the fact that this is an "objective" — clearly aspirational and forward-looking — Plaintiff fails to provide any basis to establish that this statement is false.

Moreover, these statements under the "Corporate Social Responsibility," "Competitive Strengths," and "Business Strategies" sections of the 2019 10-K are statements of corporate optimism which cannot form the basis for allegations of fraud and misrepresentation.  Compl. ¶¶ 22-24.  Plaintiff's attempt to ground his Section 10(b) and Rule 10b-5 claims on statements of optimism — routinely held not actionable under the federal securities laws — is unavailing.  *See In re Royal Caribbean Cruises Ltd. Securities Litig.*, 2013 WL 3295951, at *12 (S.D. Fla. Apr. 19, 2013) (holding that "[a] statement that is vague, generalized, or 'mere corporate puffery' is immaterial because a reasonable investor would not base a decision on such statements,");

*Philadelphia Fin. Mgmt. of San Francisco v. DJSP Enters., Inc.*, 2011 WL 4591541, at *14, 17 (S.D. Fla. Sept. 30, 2011) (statements about the "efficiency" and "accuracy" of operations and that company was "well positioned" were "non-actionable 'puffery'"); *Mulvaney v. GEO Grp., Inc.*, 237 F. Supp. 3d 1308, 1322 (S.D. Fla. 2017) ("only material misrepresentations or omissions are actionable."); *Bhatt v. Tech Data Corp.*, 2018 WL 6504375, at *4 (M.D. Fla. 2018) (citing *In re Winn-Dixie Stores, Inc. Sec. Litig.*, 531 F. Supp. 2d 1334, 1343-44 (M.D. Fla. 2007)).

Alternatively, the statements are in the nature of predictive opinion, which are actionable only if they are both subjectively and objectively false — that is, only (1) if the speaker did not genuinely hold the opinion and (2) the opinion lacked a reasonable basis. *See Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1093 (1991). Plaintiff fails to allege any facts to show that the GEO Group, and its relevant executives, did not in fact believe the opinions expressed or that the opinions lacked any reasonable basis. *See Belmont Holdings Corp. v. Sun Trust Banks, Inc.*, No. 1:09-cv-1185-WSD, 2010 WL 3545389, at *6 (N.D. Ga. Sept. 10, 2010) (dismissing claim "[a]bsent an allegation that Defendants did not believe the statements").

### (b). The 2020 Q1 Form 10-Q and COVID-19 Response Statement Were Accurate.

Plaintiff next turns to the 2020 Q1 Form 10-Q and the GEO Group's COVID-19 Response Statement. First, Plaintiff challenges the Company's statement under the "Health and Safety" section of the Company's 2020 Q1 Form 10-Q. Compl. ¶ 28; *see also* Exhibit 2, at p. 45. There, the Company discussed the impact of COVID-19 on its facilities, and lists the comprehensive steps taken to address and mitigate the risks of COVID-19 to staff, inmates, detainees and residents. Compl. ¶¶ 28-29; *see also* Exhibit 2, at p. 45. Plaintiff fails to allege *how* or *why* this statement is false or misleading.

And, under the "Economic Impact" section of the 2020 Q1 Form 10-Q, the Company again accurately disclosed that it has "experienced the transmission of COVID-19 at a small number of [its] facilities in the second quarter of 2020," warning that:

> ***If we are unable to mitigate the transmission of COVID-19 at our facilities we could experience a material adverse effect on our financial position, results of operations and cash flows. Although we are unable to predict the duration or scope of the COVID-19 pandemic or estimate the extent of the negative financial impact to our operating results, an extended period of depressed economic activity necessitated to combating the disease, and the severity and duration of the related global economic crisis will adversely impact our future financial performance.***

Exhibit 2, at p. 46 (emphasis added).  Similarly, the Company again emphasized under the "Risk Factors" section of the 2020 Q1 Form 10-Q that:

> ***The current pandemic of the novel coronavirus, or COVID-19, and the future outbreak of other highly infectious or contagious diseases, could materially and adversely impact or disrupt our business, results of operations, financial condition and liquidity.***

Exhibit 2, at p. 50 (emphasis in original).

It is clear that COVID-19 has caused substantial challenges to industries globally.  It has proven highly contagious.  The GEO Group has followed CDC guidelines for correctional and detention facilities to prevent, assess and manage COVID-19.  The fact that cases of COVID-19 occurred in any Company's facilities does not mean that the Company failed to appropriately take steps to address this pandemic.  And, the GEO Group warned that:

> The Company is closely monitoring the impact of the COVID-19 pandemic on all aspects of its business and geographies, including how it will impact those entrusted in its care and governmental partners.  While the Company did not incur significant disruptions during the three months ended March 31, 2020 from COVID-19 pandemic, ***it is unable to predict the impact that the COVID-19 pandemic will have on its financial condition, results of operations and cash flows due to numerous uncertainties***.

Exhibit 2, 2020 Q1 Form 10-Q, at p. 7 (emphasis added).  All of Plaintiff's complaints have been addressed in risk factors disclosed to the public.

Plaintiff also challenges the GEO Group's COVID-19 Response Statement, Compl. ¶¶ 31, 33, a list of comprehensive steps taken by the Company to address the impact of COVID-19.  Exhibit 3; *see also* Exhibit 2, at p. 45.  Plaintiff has failed to allege any facts supporting his contention that this statement is false or misleading.

Considering the multiple reiterations regarding the risks associated with COVID-19 in the GEO Group's disclosures and cautionary statements, Plaintiff cannot justifiably state a claim.

### (c).    The Quarterly Earnings Call Was Accurate.

Plaintiff quotes extensively from the GEO Group's quarterly earnings call held on April 30, 2020, alleging that statements made during the call were false and misleading.  Compl. ¶¶ 4, 26, 27, 33.  Once again, Plaintiff fails to identify any actual facts supporting his assertions.

The statements at issue from the Q1 2020 earnings call consist of factual statements concerning specific steps taken by the Company to mitigate the risks of COVID-19, similar to the comprehensive steps referenced in the 2020 Q1 Form 10-Q.  Compl. ¶¶ 26, 27; Exhibit 2, at p. 45.  Plaintiff does not even attempt to allege with particularity *how* or *why* the statements in the GEO

Group's earnings call were in any way false, inaccurate or misleading.  Plaintiff does not allege that any of the detailed statements concerning specific steps taken by the GEO Group to mitigate the risks of COVID-19 were materially false as a factual matter.  Plaintiff similarly fails to plead specific facts casting doubt on the truth or accuracy of these statements.  Plaintiff has failed to identify facts that would render the statements false or misleading.  None of the statements in the GEO Group's earnings call is remotely actionable under Section 10(b) or Rule 10b-5.

There are simply no facts alleged to support Plaintiff's contention that the GEO Group "maintained woefully ineffective COVID-19 response procedures" which purportedly "subjected residents of the Company's halfway houses to significant health risks" and supposedly resulted in the Company being "vulnerable to significant financial and/or reputational harm."  Compl. ¶¶ 4, 33.  To the contrary, as discussed above, the GEO Group followed CDC guidelines for correctional and detention facilities to prevent, assess and manage COVID-19, and made numerous COVID-19-specific disclosures in its 2020 Q1 Form 10-Q.  Exhibit 2, at pp. 33, 36, 41, 42, 45, 46, 50.  Plaintiff has failed to state a claim for securities fraud based on statements contained in the GEO Group's SEC filings or public statements.

### 3.    The Risk Disclosures Are Fatal To Plaintiff's Omission Claims.

Plaintiff's claims of fraudulent omission are similarly defective and fail to state a claim under Section 10(b) and Rule 10b-5 because the GEO Group had ample risk disclosures in its public SEC filings.  As detailed above, the GEO Group's 2019 10-K and 2020 Q1 Form 10-Q contained detailed risk disclosures and cautionary statements that fully and adequately warned of the potential adverse effects of a pandemic, including COVID-19.  These disclosures go to the heart of the Plaintiff's fraudulent omission claims: the GEO Group's public SEC filings explicitly disclosed: (i) the potential risks associated with the outbreak of a pandemic; (ii) the risks associated specifically with COVID-19; and (iii) the risks associated with adverse publicity regarding its facilities.  Exhibit 1, 2019 10-K, pp. 36, 69; Exhibit 2, 2020 Q1 Form 10-Q, pp. 33, 36, 41, 42, 45, 46, 50.  Plaintiff cannot plead his way around the fact that the GEO Group adequately disclosed the same risk that forms the basis for this strike-suit, *i.e.*, a drop in the Company's stock price allegedly caused by the effect of COVID-19 on the Company's business operations and performance.  The GEO Group's disclosures are fatal to Plaintiff's claims since it is axiomatic that

14

a "[p]laintiff cannot premise [his] omission claims on risks that were disclosed." *Bhatt*, 2018 WL 6504375, at *5.

### 4.      Plaintiff Fails To Plead A Strong Inference of Scienter.

Plaintiff's facially defective securities fraud claims must be dismissed for another fundamental reason:  the Complaint fails to plead facts sufficient to support *any* inference of scienter, much less the strong inference required by the PSLRA.

The element of scienter necessary to state a claim under Section 10(b) and Rule 10b-5 requires Plaintiff to assert particularized allegations that *each defendant* acted knowingly or in a severely reckless manner.  *See Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1323 (S.D. Fla. 2004) (citing *Bryant*, 187 F.3d at 1283-87).  "Severe recklessness" — the minimum a plaintiff must plead — "is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care [such that] . . . the defendant must have been aware of [the fraud]." *Ziemba*, 256 F.3d at 1202 (quotation omitted).

As the Supreme Court held in *Tellabs,* to survive dismissal a complaint must allege facts sufficient to make the inference of scienter "more than merely plausible or reasonable — it must be cogent and at least as compelling as any opposing inference of non-fraudulent intent." 551 U.S. at 314.  To determine whether a complaint's scienter allegations are sufficient, a court "must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Id.*

Plaintiff's paltry scienter allegations in this action consist of just one paragraph that is patently insufficient under the stringent PSLRA and *Tellabs* standard.  The Complaint contains only the vaguest, boilerplate allegations directed at Messrs. Zoley and Evans.  Compl. ¶¶ 17, 51-53.  Those allegations can be boiled down to a paltry allegation that "[a]s the senior managers and/or directors of GEO Group, the Individual Defendants had knowledge of the details of GEO Group's internal affairs," which is wholly inadequate to plead the required strong inference of scienter on the part of the Individual Defendants.  *See, e.g., Mulvaney*, 237 F. Supp. 3d at 1324 ("[M]erely holding a position of power does not lead to an inference of scienter without specific allegations of the Individual Defendants' role in the fraud.").  These conclusory statements are utterly devoid of any factual allegations regarding the state of mind of the Company's CEO and CFO as of the time of the allegedly false and misleading statements.  Plaintiff has fallen short of pleading the requisite "strong inference" of scienter.

The Eleventh Circuit has consistently admonished that barren allegations of "motive and opportunity" — like those asserted in Plaintiff's Complaint — are inadequate to support a strong inference of scienter under the PSLRA.  *See, e.g., Jiangbo Pharm. Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1261 (S.D. Fla. 2012).   Indeed, "mere allegations that Defendants held senior management positions, had access to inside information, and therefore must have known of the falsity of certain statements is insufficient to plead scienter."  *Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267, 1286 (S.D. Fla. 2008) (quoting *In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1303 (S.D. Fla. 2002)); *see also In re: Sunterra Corp. Sec. Litig.*, 199 F. Supp. 2d 1308, 1324 (M.D. Fla. 2002) ("In essence, the Amended Complaint merely alleges that these Defendants 'must have known' because of the CEO and CFO positions that they held, and such pleading does not pass muster under the PSLRA.").

Plaintiff's Complaint merely parrots the same type of generalized scienter allegations that this Court has repeatedly found lacking and fails to provide a scintilla of factual support for any claim that the GEO Group or its officers had knowledge of any alleged fraud.  Plaintiff's glaring failure to plead any facts supporting a strong inference of scienter requires dismissal of the Complaint.

5.   **Plaintiff's Claims Are Based On Non-Actionable Forward-Looking, Cautionary Statements.**

In addition to his failure to specifically plead facts demonstrating any false and misleading statements or omissions by the GEO Group or any inference of scienter, Plaintiff's securities fraud claims are also barred because the alleged misleading statements at issue are clearly protected forward-looking statements entitled to "Safe Harbor" under the PSLRA.

In an effort to insulate public companies from potential liability for forward-looking statements and to encourage management to share opinions and projections, Congress included in the PSLRA a safe harbor that insulates corporate managers from liability for forward-looking statements.  15 U.S.C. § 78u-5.  As a result, there is no liability for forward looking statements when the statements are identified as such and are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement[s]."  15 U.S.C. § 78u-5(c)(1)(A)(i).  Where the alleged fraud is grounded on forward looking statements, dismissal is required regardless of the state of mind of the person who made the statement, be it negligent, reckless, or even knowing.  *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 795 (11th Cir. 2010).

Here, the GEO Group's 2019 10-K filing, and the 2020 Q1 Form 10-Q for the purported class period included conspicuous sections entitled "**Forward-Looking Statements — Safe Harbor**" and "**Forward-Looking Information**," respectively.  The 2019 10-K warned that it contained "forward-looking" statements within the safe harbor, including "statements regarding our future financial position, business strategy, budgets, projected costs and plans and objectives of management for future operations," and that "[t]hese statements are not guarantees of future performance and involve certain risks, uncertainties and assumptions, which are difficult to predict."  *See* Exhibit 1, 2019 10-K, p. 68 (disclosing that "forward-looking" statements include plans and objectives of management for future operations and can generally be identified by the use of forward-looking terminology such as "believe").

The alleged misleading statements that form the basis for Plaintiff's fraud claims — *i.e.*, that the GEO Group *"believed"* its continuum of care platform would result in a higher quality of care for individuals in the Company's care, and that its *"objective"* was to provide federal, state and local governmental agencies with a comprehensive offering of high quality services — are the epitome of non-actionable forward-looking statements that fall squarely within the safe harbor of the PSLRA.  Compl. ¶¶ 23-24.  In fact, the GEO Group's Form 10-K and 2020 Q1 Form 10-Q filings repeatedly and explicitly identified the ***exact*** statements that form the core of Plaintiff's securities fraud claims as forward-looking cautionary statements that the Company could neither guarantee nor predict.  For instance, the GEO Group's 2019 10-K identified its forward-looking, "cautionary statements" as including statements about (i) "the impact of natural disasters, ***pandemic outbreaks***, global political events and other serious catastrophic events on our business and financial condition."  Exhibit 1, p. 69 (emphasis added).  And regarding COVID-19, the Company's 2020 Q1 Form 10-Q included the following as part of the factors that could cause actual results to differ materially from those expressed or implied by the forward-looking statements: (i) "our ability to mitigate the transmission of COVID-19 at our secure facilities, processing centers and reentry centers; and (ii) "the magnitude, severity and duration of the COVID-19 pandemic and its impact on our business, financial condition, results of operations and cash flows."  Exhibit 2, p. 33.

The GEO Group is also shielded from liability for these statements by the safe harbor and the bespeaks caution doctrine, as the statements are undeniably forward-looking because they either explicitly speak to future events or involve opinions that can be assessed only in light of future events.  *See, e.g., Harris v. Ivax Corporation*, 182 F.3d 799, 805 (11th Cir. 1999) (holding

that statements that "our fundamental business and … strategies remain intact" and are "very well positioned" were forward-looking); *In re Mako Surgical Corp.*, 2013 WL 2145661, at *6 (S.D. Fla. May 15, 2013) (statement that "[w]e anticipate that our positive results in 2011 will carry forward into 2012" was forward-looking).

### 6.   Plaintiff Has Failed to Sufficiently Plead Loss Causation.

The Complaint also must be dismissed for failure to plead facts establishing "loss causation," *i.e.*, that the alleged economic loss was caused by the GEO Group's purported "fraud."

A plaintiff asserting claims under Section 10(b) and Rule 10b-5 is required to sufficiently allege a causal connection between the alleged misrepresentations and the economic loss incurred. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005); *see also* 15 U.S.C. §78u-4(b)(4); *Robbins v. Koger Prop., Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997). Even in a fraud-on-the-market case like this one, "the plaintiff must prove not only that a fraudulent misrepresentation artificially inflated the security's value but also that 'the fraud-induced inflation that was baked into the plaintiff's purchase price was subsequently removed from the stock's price, thereby causing losses to the plaintiff.'" *Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013) (citations omitted).

Plaintiff fails to even attempt to make such a showing of proximate cause, nor can he, given the truthful nature of the GEO Group's alleged false and misleading statements and the vast risk disclosures contained in the Company's SEC filings. There is no connection between the GEO Group's alleged false and misleading statements, and the drop in the Company's stock price given its numerous and timely public disclosures regarding the potential adverse consequences related to the COVID-19 pandemic on its facilities. Indeed, throughout the entire purported class period, the GEO Group specifically warned its shareholders about the impact that a pandemic outbreak – – more specifically COVID-19 — could have on its business operations and performance.

Additionally, as mentioned above, there are no factual allegations to demonstrate that it was the release of the Intercept Article that actually caused the decline in the GEO Group's share price. Indeed, as noted above, between March 2020 and June 2020, there were numerous reports of COVID-19 outbreaks, at both private and government-run correctional facilities, and an earlier news story reported on the spread of the coronavirus at the same halfway house *several weeks* before the end of the alleged class period. Plaintiff conveniently ignores the abundance of public information regarding COVID-19's effect on the correctional system, including the very facility discussed in the Intercept Article, and ignores CoreCivic's Announcement, which was a more

likely cause of the decline.  That Plaintiff failed to even attempt to distinguish the effect of this public information speaks volumes about the Complaint's accuracy.

**7.** **Failure to State a Claim for A Primary Violation of the Exchange Act Requires Dismissal of Count II, Secondary "Control Person" Liability**

Because Plaintiff does not state a cause of action for a primary violation of the Exchange Act in Count I as set forth above, Plaintiff's claim for secondary, "control person" liability also fails.  Count II seeks to hold the Individual Defendants secondarily liable for the GEO Group's alleged violations of the Exchange Act.  Section 20(a) of the Exchange Act imposes secondary liability on certain "control persons" for primary violations of Section 10(b) by a "person liable," *i.e.*, the issuer of securities.  *See Laperriere v. Vesta Ins. Group, Inc*., 526 F.3d 715, 721 (11th Cir. 2008).  To state a claim, a plaintiff must plead a primary violation in accordance with the requirements of the PSLRA and Rule 9(b) or be subject to dismissal.  *See In re Royal Caribbean Cruises*, 2013 WL 3295951 at *19 (dismissing Section 20(a) claim where plaintiffs failed to state a claim under Section 10(b)); *Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1255 (11th Cir. 2008) ("Because [plaintiff] failed to adequately plead a violation of § 10(b) and Rule 10b-5 by [the issuing company], its § 20(a) control-person claims against the individual defendants necessarily fail as well.").  Thus, when the primary violation fails, there can be no Section 20(a) liability. Here, because Plaintiff has not adequately pled a primary violation by the issuing company, the GEO Group, the Section 20(a) claim against the Individual Defendants, Messrs. Zoley and Evans, necessarily fails as well.  *See Mulvaney*, 237 F. Supp. 3d at 1326 ("Because Plaintiffs fail to plead a primary violation of Section 10(b) of the Exchange Act, Plaintiffs do not plead a violation of Section 20(a)").

**8.** **Count II Fails to Plead Facts to Establish the Individual Defendants as "Control Persons" as Required to State a Claim Under Section 20(a)**

Plaintiff's Section 20(a) claim also fails because Plaintiff does not plead sufficient facts to establish that either of the Individual Defendants had the power to control the GEO Group's business affairs, generally, or the dissemination of the purportedly false and misleading statements alleged.

Control requires that an individual be in "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." *Laperriere*, 526 F.3d at 723 (quotation omitted).  To plead control under Section 20(a), a plaintiff must do more than restate a legal

conclusion of control.  *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) ("[C]onclusory allegations of control are insufficient as a matter of law."); *In re Global Crossing, Ltd., Sec. Litig.*, No. 02 Civ. 910(GEL), 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005).

The Complaint fails to sufficiently allege facts to support that each Individual Defendant asserted control for purposes of liability under Section 20(a).  Rather, the Complaint lumps both Individual Defendants into a status of "controlling persons" by means of boilerplate allegations that they "participated in the operation and management of GEO Group, and conducted and participated, directly and indirectly, in the conduct of GEO Group's business affairs."  Compl. ¶ 58.  The Complaint then makes the conclusory, and inapplicable, statement that "[b]ecause of their senior positions, they knew the adverse non-public information about GEO Group's *misstatement of income and expenses and false financial statements*."  *Id.* (emphasis added).  As this is the first mention of misstated income, expenses, or false financial statements, it appears that Plaintiff merely copied and pasted this allegation from another boilerplate complaint.

The allegations in the Complaint specifically directed at the Individual Defendants are only: that the Individual Defendants, collectively, signed the various SEC filings made by the GEO Group, and that Mr. Zoley participated in an earnings' call, on April 30, 2020, where he discussed the same COVID-19 response procedures that would be described in the GEO Group's SEC Quarterly Report on Form 10-Q filed on May 6, 2020.  Compl. ¶ 26; *see also* Exhibit 2. Inexplicably, Plaintiff also admits that Mr. Zoley was not the only executive on the call but alleges that "other GEO Group executives" made the same representations.  Compl. ¶ 27.  Nowhere does the Complaint allege any specific facts to establish that either Individual Defendant effectively controlled GEO Group with respect to the alleged primary violation or "acted recklessly in failing to do what they could have done to prevent the primary violation."  *Laperriere*, 526 F.3d at 725. At most, the Individual Defendants are alleged to have done their jobs on behalf of the corporate defendant.

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that Plaintiff's Class Action Complaint be dismissed in its entirety.

Dated: August 12, 2020

Respectfully submitted,

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095

By: /s/ *Brian P. Miller*
    Brian P. Miller, Esq.
    Florida Bar No. 0980633
    brian.miller@akerman.com
    Samantha J. Kavanaugh, Esq.
    Florida Bar No. 0194662
    samantha.kavanaugh@akerman.com

*Counsel for Defendant The GEO Group, Inc.*

**GUNSTER, YOAKLEY & STEWART, P. A.**
600 Brickell Avenue, 35th Floor
Miami, FL 33131
Telephone: 305-376-6000
Facsimile: 786 425-4090

By: /s/ *William K. Hill*
    William K. Hill, Esq.
    Florida Bar Number: 747180
    Primary: whill@gunster.com
    Secondary: mmotola@gunster.com
    George S. LeMieux, Esq.
    Florida Bar Number: 16403
    Primary: glemieux@gunster.com
    Secondary: alevene@gunster.com
    Secondary: eservice@gunster.com
    Ernest "EJ" A. Cox IV, Esq.
    Florida Bar Number: 124652
    Primary: ecox@gunster.com
    Secondary: mmargolese@gunster.com

*Counsel for Defendants George C. Zoley and Brian R. Evans*