UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:20-cv-81063-RS

STEVE HARTEL, Individually and on
Behalf of All Others Similarly Situated,

      Plaintiff,

v.

THE GEO GROUP, INC., *et al*.,

      Defendants.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
LEAD PLAINTIFFS' CONSOLIDATED CLASS ACTION AMENDED COMPLAINT
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

| | |
|---|---|
| **AKERMAN LLP**<br>Three Brickell City Centre<br>98 Southeast Seventh Street<br>Suite 1100<br>Miami, FL 33131<br>Telephone: (305) 374-5600<br>Facsimile: (305) 374-5095<br>Brian P. Miller, Esq.<br>Florida Bar No. 0980633<br>brian.miller@akerman.com<br>Samantha J. Kavanaugh, Esq.<br>Florida Bar No. 0194662<br>samantha.kavanaugh@akerman.com | **GUNSTER, YOAKLEY & STEWART, P. A.**<br>600 Brickell Avenue, 35th Floor<br>Miami, FL 33131<br>Telephone: (305) 376-6000<br>Facsimile: (786) 425-4090<br>William K. Hill, Esq.<br>Florida Bar Number: 747180<br>whill@gunster.com<br>George S. LeMieux, Esq.<br>Florida Bar Number: 16403<br>glemieux@gunster.com<br>Ernest "EJ" A. Cox IV, Esq.<br>Florida Bar Number: 124652<br>ecox@gunster.com |
| ***Counsel for Defendant The GEO Group, Inc.*** | ***Counsel for Defendants George C. Zoley, Brian R. Evans, J. David Donahue, and Ann M. Schlarb*** |

Defendants hereby submit their reply in support of their Motion to Dismiss Lead Plaintiffs' Consolidated Class Action Amended Complaint [ECF No. 36].

**A.      Plaintiffs Fail to Allege the Materiality and/or Falsity of the Statements Relied Upon.**

Plaintiffs fail to demonstrate the materiality and/or falsity of the statements they rely upon. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1281 (11th Cir. 1999) (to state a viable claim for securities fraud, plaintiffs are required to allege a misstatement or omission of a material fact).

**1.      Plaintiffs Have Failed to Properly Allege the Materiality of Any Alleged Misrepresentation or Omission.**

Plaintiffs argue that the misstatements and omissions they rely upon are material because they were misleading to a reasonable investor. Resp. [ECF No. 41] at 10-11. "[M]ateriality depends on whether a 'substantial likelihood' exists that a 'reasonable investor' would have viewed a misrepresentation or omission as 'significantly alter[ing] the 'total mix' of information made available.'" *Carvelli v. Ocwen Fin'l Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019) (citations omitted). And, "absent a duty, material information needn't be disclosed unless its omission would render misleading other information that an issuer *has* disclosed." *Id.*[1]

There are numerous ways that a statement or omission may be deemed immaterial in the context of a claim for securities fraud. Puffery—"excessively vague, generalized, and optimistic comments"—is immaterial. *Carvelli*, 934 F.3d at 1320. So, too, are opinions actually held and which do not embed a false statement of fact. *Id.* at 1322-23.

A number of the statements relied upon by Plaintiffs are mere puffery regarding how Defendants viewed the quality, efficiency, and comprehensiveness of GEO's services. *See, e.g.,* Am. Comp. ¶¶ 107, 127, 128, 140, 149, 159, 164, 172, 176, 177, 192. As a matter of law, these characterizations are not actionable. *See, e.g.*, *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 504 (3d Cir. 2016) (defendant "was under no obligation to use any adjective, let alone a pejorative one, to describe the state of the deal"); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003) (defendant "was under no duty to cast its business in a pejorative, rather than a

---

[1] Though materiality can be an issue for the trier of fact, numerous cases in this Circuit have dismissed for lack of materiality as a matter of law. *See, e.g.*, *Carvelli*, 934 F.3d at 1319-20 (affirming dismissal and holding that puffery defense "seems a particularly good fit in the securities context"); *In re Greenlane Holdings, Inc. Sec. Litig.*, 2021 WL 53188, at *7 (S.D. Fla. Jan. 6, 2021) ("[I]f the lack of importance of the omission is so plain that reasonable minds cannot differ thereabout [it is] proper for the court to pronounce the omission immaterial as a matter of law.") (citing *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1189 (11th Cir. 2002)).

positive, light"). Finding themselves unable to demonstrate the falsity of these unverifiable characterizations, Plaintiffs contend that they were "misleading" because GEO omitted that it also allegedly faced difficulties by failing to meet government standards, accounts of "suicide, riots, violence, and drug overdoses" in its facilities, and increased scrutiny. Resp. 7-8.

A similar argument was rejected by the Eleventh Circuit in *Carvelli*. 934 F.3d 1307. In that case, investors brought a securities fraud case against Ocwen, a mortgage servicing company, claiming that its officers had implied that the company would "emerge from a regulatory mess" following an onslaught of consent agreements relating to the company's use of a software program that resulted in violations of various consumer protection laws. The investors argued that Ocwen made unrealistically optimistic (and, therefore, misleading) statements about the resources it was devoting to the issue, and the progress it was making, especially when those statements were considered in the context that nothing had changed with the defective software. The Eleventh Circuit rejected that argument, stating that, "the market was well aware of Ocwen's regulatory problems—the consent orders, the auditors, and the fines were far from secret, and indeed were addressed openly in Ocwen's filings, investor calls, and press releases." *Id.* at 1321.

Such is the case here, too. Not only was the market fully aware of the issues faced by GEO due to the media attention the industry received, the multiple outside groups scrutinizing the industry, and the politicians who had the industry in their crosshairs, but GEO *itself* disclosed the many hurdles it faced. With this information available to them, Plaintiffs cannot reasonably claim that they were deceived by allegedly rosy comments made by Defendants.

Many of the statements relied upon by Plaintiffs also constitute non-actionable opinions. *See Carvelli*, 934 F.3d at 1322 ("statements of opinion are generally nonactionable because liability attaches only in the case of an 'untrue statement of material *fact*.'") (emphasis in original). *See, e.g.,* Am. Compl. ¶¶ 107 (describing facilities as safe, secure, and humane environments), 109 ("*We believe* our dividend is supported by stable and predictable operational cash flows."),[2] 110 (same), 114 (same), 115 (same), 132 (same) 133 (same), 121 (high quality services), 128 (same), 140 (same), 149 (same), 127 (higher quality of care), 164 (same), 172 (same), 176 (same), 177 (same), 190 (same). Plaintiffs have not alleged that these opinions were false statements of the

---

[2] Importantly, Plaintiffs' recitation of this statement (and similar statements) misleadingly omits the key preceding words, "we believe." Compare Am. Compl. ¶¶ 109, 110 to ECF No. 37-2 (Ex. B, GEO 3Q18 earnings call) at .pdf 20, 22.

speaker's own state of mind at the time, nor that they embedded untrue facts. *See Carvelli*, 934 F.3d at 1322-23. As such, these statements cannot form the basis for a securities fraud claim.

This principle guts the centerpiece of Plaintiffs' case: that GEO misrepresented the stability of its dividend. Try as they might, Plaintiffs cannot transform Defendants' forward-looking opinions about the support for GEO's dividend into an actionable guarantee of future dividends. *See FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1304 (11th Cir. 2011) ("Statements regarding *future* performance are actionable only if 'they are worded as guarantees or are supported by specific statements of fact or if the speaker does not genuinely or reasonably believe them.'") (citation omitted). Moreover, Plaintiffs' attempt to distinguish *Walker v. L Brands, Inc.*, 2020 WL 6118467, at *2-10 (S.D. Ohio Oct. 16, 2020), is untenable.[3] In *Walker*, the court held that statements that the company "had the cash flow to sustain the dividend"; that "the dividend is very safe"; and that "we're confident that we can maintain the dividend," were "too vague to be considered material." *Id.* at *10. Here, statements that "we believe the dividend is supported by stable and predictable cash flows" are indistinguishable from *Walker*. Both company's statements concern the expectation of continued dividends in light of anticipated cash flows. And, GEO *did* declare and pay dividends throughout the entire 21-month class period, only reducing the dividend on August 6, 2020. Am. Compl. ¶ 217.

### 2. The "Truth on the Market" Defense Forecloses Plaintiffs' Claims and May Be Considered at This Procedural Stage.

"The Plaintiffs' argument for materiality receives its *coup de grâce* from the doctrine of 'public knowledge.'" *Greenlane*, 2021 WL 53188, at *14. As an initial matter, Plaintiffs argue that the truth-on-the-market defense is inapplicable post-*Amgen* and is a fact intensive inquiry not appropriate at the motion to dismiss stage. Resp. 12-13. Plaintiffs are wrong. Unlike here, *Amgen* dealt with proof of materiality at the class certification stage. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013) ("[w]hile [plaintiff] certainly must prove materiality to prevail on the merits, we hold that such proof is not a prerequisite to [Rule 23(b)(3)] class certification." Defendants here contend only that the truth-on-the-market defense bars these claims

---

[3] Plaintiffs do not even attempt to distinguish the other dividend-focused cases Defendants rely upon. *See Maeve Inv. Co. Ltd. P'ship v. Teekay Corp.*, 2017 WL 5158059, at *1 (W.D. Wash. Nov. 7, 2017); *Genna v. Potts*, 1995 WL 222043, at *1 (D. Md. Apr. 13, 1995).

*as a matter of law*. MTD 13-14. *Amgen* is completely inapposite.[4]

The recent well-reasoned decision by Judge Roy Altman in *Greenlane*, 2021 WL 53188, demonstrates the viability of this defense at this stage.[5] There, plaintiffs alleged that Greenlane, which distributed JUUL e-cigarettes, failed to disclose that one month before its public offering two ordinances in San Francisco proposed a ban on e-cigarettes like JUUL. Judge Altman held that the omitted disclosure of the ordinances was immaterial because it would not have significantly altered the total mix of information in light of the fact that "the Proposed Ordinances … were very much in the public domain—not tucked away in the annals of some foreign magazine, but as accessible to Greenlane's investors as anyone else." *Id.* at *8.

So, too, were the allegedly omitted disclosures Plaintiffs rely upon here.[6] The decisions of certain banks to divest from the industry, pending lawsuits against GEO, increased public and political scrutiny of the industry following the Trump administration's zero-tolerance immigration policy, and the infectious nature of the novel coronavirus among persons in close quarters and confinement were all well-known.

### 3. Forward-Looking Statements With Meaningful Cautionary Language Are Protected by the PSLRA's Safe Harbor Provisions.

Not only do Plaintiffs fail to demonstrate the materiality of the statements they rely upon, they also ignore that those statements are protected by the safe harbor provisions of the PSLRA. Plaintiffs argue that the safe harbor does not apply because GEO's cautionary language was merely boilerplate, because the risks had already materialized, and because Plaintiffs rely on alleged

---

[4] The cases relied on by Defendants apply regardless of whether they pre- or post-date *Amgen*. In fact, several courts since *Amgen* have held that the truth-on-the-market defense can be raised at the motion to dismiss stage. *See In re Kalobios Pharm., Inc. Sec. Litig.*, 258 F. Supp. 3d 999, 1011 (N.D. Cal 2017) ("the court agrees that the market was aware of the information Plaintiffs accuse Shkreli of withholding or misrepresenting before any 'corrective disclosure' occurred."); *In re Incyte S'holder Litig.*, 2014 WL 707207, at *10, n.15 (D. Del. Feb. 21, 2014) ("a truth on the market defense . . . can succeed on a motion to dismiss if 'the company's SEC Filings or other documents disclose the very information necessary to make their public statements not misleading.'").

[5] *Greenlane* dealt with securities claim under Section 11 and 12 of the Securities Act of 1933. But, "Courts have long held that the 'materiality requirement is identical under Section 10, Rule 10b-5, Section 11, and Section 12.'" *Id.* at *15, n.13 (citation omitted).

[6] The Amended Complaint painstakingly provides a detailed account of the various public sources of information reporting bad news about GEO and the industry in which it operated. *See, e.g.*, Am. Compl. ¶¶ 6, n.1, 10, 11, 13, 14, 45, 53, 57-64, 76, 77, 79, 80, 84.

material omissions of then-existing facts. Resp. 13-15. Plaintiffs' arguments are unavailing.

The PSLRA's safe harbor provision, 15 U.S.C. § 78u-5(c)(1), "provides three independent, alternative means of inoculating forward-looking statements: those that are (1) accompanied by meaningful cautionary language, (2) immaterial, or (3) made without actual knowledge of their falsity." *Carvelli*, 934 F.3d at 1326.[7]

The meaningful cautionary language contained in GEO's SEC filings were "detailed and informative" as they advised "in detail what kind of misfortunes could befall the company and what the effect could be." *See Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir. 1999). In *Harris*, the Eleventh Circuit squarely rejected the argument made by Plaintiffs here, namely that a company is required to disclose each and every possible factor that could affect it:

> [M]ust the cautionary language explicitly mention the factor that ultimately belies a forward looking statement? We think not. The statute requires the warning only to mention "important factors that could cause actual results to differ materially from those in the forward-looking statement." It does not require a listing of *all* factors.... [W]hen an investor has been warned of risks of a significance similar to that actually realized, she is sufficiently on notice … to make an intelligent decision about it according to her own preferences for risk and reward. *Id.* at 807 (emphasis in original).

In this case, GEO specified real threats that had the potential to materially affect its future prospects. *See* MTD at 4-8. For example, Plaintiffs claim that they were misled into believing that the "dividend would 'remain unchanged.'" Resp. 8. But the statements that Plaintiffs rely upon were forward-looking and accompanied by meaningful risk disclosures that warned that distributions were "not guaranteed"; "may fluctuate"; are determined by the "board of directors, in its sole discretion"; and depend on a number of factors, including "cash flow and capital requirements" and "borrowing capacity." *See, e.g.*, 2018 10-K, .pdf 31 [ECF No. 37-7]; 3Q18 10-Q, .pdf 19, 50 [ECF No. 37-1]. These are the exact risks that Plaintiffs claim were not disclosed.

Plaintiffs also claim that the warned-of risks had already materialized, so the safe harbor does not apply. But, when risks did materialize, Defendants timely disclosed them. For example, when certain big banks announced that they planned to eventually divest from their relationships with private prison operators, GEO acknowledged those developments. *See, e.g.*, [ECF No. 37-8] (Ex. H at .pdf 54). Plaintiffs have failed to allege how Defendants could have disclosed these

---

[7] Though Plaintiffs contend that the speaker's state of mind is relevant for forward-looking statements that are accompanied by meaningful cautionary language, Resp. 15 n.7, the Eleventh Circuit reiterated that is not so. *Carvelli*, 934 F.3d at 1326 ("[I]f a statement is accompanied by 'meaningful cautionary language,' the defendants' state of mind is irrelevant.").

specific events *before* they occurred.[8]

### 4.    Plaintiffs Take Defendants' Statements Out of Context.

Plaintiffs repeatedly rely on snippets of comments made by Defendants, taken out of context, to attempt to paint a picture of deceit regarding GEO's access to capital and the nature of its services. Plaintiffs posit that the misconstrued statements are misleading because they were not accompanied by a host of other unrelated announcements. For example, in paragraph 146, they state:

> On July 30, 2019, during the second quarter 2019 ("2Q19") earnings call, Defendant Zoley specifically addressed "the recent media stories regarding overcrowded border patrol facilities and financial institutions discontinuing future financial support for private operators of ICE Processing Centers," unequivocally debunking them as being, "driven by a *false narrative* and deliberate mischaracterization of our *long-standing role as a quality service provider* to ICE."

In actuality, Zoley said:

> **[W]e recognize that the recent media stories** regarding overcrowded border patrol facilities and financial institutions discontinuing future financial support for private operators of ICE processing centers **have created volatility in our equity and debt markets.** These headlines have unfortunately been driven by a false narrative and deliberate mischaracterization of our long-standing role as a quality service provider to ICE. **We have never managed any facilities that house unaccompanied minors. We have never managed any border patrol holding facilities.**

ECF No. 37-13 at .pdf 20.[9]

---

[8] Plaintiffs cite a May 2017 JP Morgan announcement that it was considering ending its relationship with the private prison industry to argue that GEO knew that it would, in fact, decide to divest, and that other big banks would follow suit. Resp. at 9. "But the Plaintiffs cite to *no* factual allegations for this claim; as such, it is nothing more than baseless speculation not entitled to the presumption of truth." *Greenlane*, 2021 WL 53188 at *11. The truth-on-the-market defense also neutralizes this contention because this public announcement was equally available to investors and GEO. *See* § A.2, *supra*.

[9] Because Plaintiffs take liberties with Defendants' statements, Defendants attached the SEC filings for the putative class period to their motion to dismiss. [ECF No. 37]. Plaintiffs' cite to a Ninth Circuit case to argue that the Court should disregard these filings is unavailing (Resp. at 2 n.2); the practice of relying on complete SEC filings to assess the viability of a securities fraud case is consistent with common practice in this Circuit. *See FindWhat*, 658 F.3d at 1297 n.15 ("We are permitted to review the Defendants' SEC filings ourselves in evaluating the sufficiency of the Plaintiffs' allegations."); *Oxford Asset Mgmt.,* 297 F.3d at 1188; *Bryant*, 187 F.3d at 1276. Moreover, the inclusion of Exhibit BB was not improper; it does not violate the page limitation.

Another example demonstrates that this tactic is pervasive. In paragraph 121, Plaintiffs allege that Donahue stated during a 4Q18 call: "[l]ooking at our state segment, our non-state correctional customers have stable budgets and ***our facilities have been able to provide high quality services without being impacted by budgetary constraints.***" Donahue actually said:

> Looking at our state segment, our ***nine state*** correctional customers ***had*** stable budgets and our facilities have been able to provide high quality services without being impacted by budgetary constraints.

ECF No. 37-6 at .pdf 24 (emphasis added). Donahue's comments pertained specifically to GEO's *state* correctional customers (and constituted a protected forward-looking statement); yet Plaintiffs claim his statements were misleading because he did not also mention issues relating to two *federal* facilities: Adelanto and Aurora. *See* Am. Compl. ¶ 122.

Plaintiffs' improper practice of partially quoting or misquoting Defendants' statements, taking those statements out of context, and then claiming that shareholders were misled by those statements is repeated throughout the Amended Complaint. *See, e.g.,* Am. Compl. ¶¶ 109, 110, 114, 115, 117, 132, 133, 140, 151, 159, 170, 183.[10]

**5.      GEO's Statements Were In Fact Truthful; Plaintiffs Fail to Allege Otherwise.**

Under the PSLRA, Plaintiffs are required to, *inter alia*, "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . ." *Id.* § 78u-4(b)(1). Any failure to do so results in the dismissal of Plaintiffs' claims with respect to that statement. *See, e.g.*, *FindWhat*, 658 F.3d at 1298-99 (affirming partial dismissal with respect to two allegedly misleading statements). Though Plaintiffs creatively string together bits of Defendants' statements to support their narrative, when the statements are placed in context, Plaintiffs fail to adequately allege how they are misleading.

To illustrate, in paragraphs 132, 133, 135, and 136, Plaintiffs refer to innocuous statements made during a 1Q19 earnings call that, based on the results for the first quarter of 2019, GEO believed in the stability of the dividends and expected to continue to have access to cost-effective capital. Plaintiffs claim those statements were misleading because, in their view, GEO would eventually have to cut its dividend if it could not maintain government contracts and if other banks decided to stop financing its industry. But the call's introductory remarks warned that actual results

---

[10] In many instances, Plaintiffs have intentionally removed words—such as "looking forward," or "we believe"—that provide protection to statements made under the safe harbor provisions of the PSLRA. *See, e.g.*, Am. Compl. ¶¶ 109, 110, 114, 115, 117, 151, 170, 183.

could differ materially from those forecasted in forward-looking statements based on the factors contained in its SEC filings. And the Company's 1Q19 10-Q warned that "[p]ublic resistance to the use of public-private partnerships . . . could result in our inability to obtain new contracts or the loss of existing contracts, impact our ability to obtain or refinance debt financing or enter into commercial arrangements, which could have a material adverse effect on our business, financial condition and results of operations." [ECF No. 37-8 at .pdf 54]. GEO explicitly stated that:

> JP Morgan Chase and Wells Fargo recently announced that they will not be renewing existing agreements or entering into new agreements with companies that operate correctional, detention and community-based facilities pursuant to public-private partnerships. While we believe we will continue to have access to cost-effective capital to support the growth and expansion of our high-quality services, if other banks or third parties that currently provide us with debt financing or that we do business with decide in the future to cease providing us with debt financing or doing business with us, such determinations could have a material adverse effect on our business, financial condition, and results of operations.

*Id.* There could be no clearer disclosure of the very risks of which Plaintiffs now complain.[11] These disclosures (and others detailed in the Motion to Dismiss) completely gut Plaintiffs' claims.

In paragraphs 112, 119, 123, 144, 157, 168, 179, and 198, Plaintiffs quote statements disclosing pending litigation. In many of those statements, GEO disclosed that it "ha[d] not recorded an accrual relating to these matters at this time, as a loss is not considered probable nor reasonably estimable at this stage of the lawsuits." Plaintiffs do not contend that GEO failed to accurately disclose activity in those lawsuits, nor that its failure to accrue for any probable loss, or its disclosure of incurred legal fees in its financial statements, violated accounting principles. Instead, Plaintiffs cite to a letter written by Zoley to ICE describing a worst-case-scenario view of the potentialities of the litigation in an effort to obtain assistance from ICE in defending the lawsuits. That letter does not render GEO's statements misleading because it does not demonstrate that the potentiality described therein represented a "probable" or "reasonably estimable" loss.

Plaintiffs' reliance on a letter written to the SEC by an outspoken opponent of private prison companies, Democratic Senator Warren (*see* https://elizabethwarren.com/plans/end-private-prisons), fares no better because the law is clear that, even if Senator Warren's letter had prompted a SEC investigation, that alone still would not constitute a "corrective disclosure" of fraud. *See Meyer v. Greene*, 710 F.3d 1189, 1200 (11th Cir. 2013) ("the commencement of an SEC

---

[11] Plaintiffs cite this same SEC filing in paragraph 144, but ignore the lengthy risk factors section that puts the statements into context.

investigation, without more, is insufficient to constitute a corrective disclosure"). It makes no sense to treat a *request* for an investigation as a corrective disclosure, when an investigation itself is not even treated as such. Moreover, Plaintiffs' frenetic theory of loss causation which alleges not one, but an absurd nine "corrective disclosures" simply does not withstand scrutiny. Resp. 19.

### 6.      Plaintiffs Have Not Demonstrated a Duty to Disclose.

"Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1274 (11th Cir. 2016) (citation omitted). The statements relied on by Plaintiffs do not, as they contend, give rise to a duty to disclose every possible adverse fact about GEO's business, or every instance where GEO has arguably fallen short. *See, e.g.*, *Mulvaney v. GEO Group, Inc.*, 237 F. Supp. 3d 1308, 1318-19 (S.D. Fla. 2017) ("Requiring that disclosures be complete and accurate does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise.") (citation omitted); *Greenlane*, 2021 WL 53188 at *11 (noting no duty "to teach investors about investing or to warn them about everything that could go wrong in the world.").

Plaintiffs rely on *FindWhat Investor Grp.*, 658 F.3d at 1298-99 to argue that a duty to disclose arose as a result of nearly every statement they rely upon. Resp. 7. But the types of statements at issue in *FindWhat* are qualitatively different from the statements at issue here. There, the defendants were found to have misled investors by making "affirmative statements of present facts" (such as, "[w]e employ an integrated system . . . that continually monitor[s] traffic quality," and "[w]e enforce strict guidelines . . . to ensure the quality of traffic"). *Id.* at 1298. This triggered a duty to disclose "the grave defects that existed within the enforcement system they voluntarily touted." *Id.* at 1298-99. Here, Plaintiffs cite no affirmative statements of present fact, focusing instead on non-actionable forward-looking statements, opinions, and corporate puffery.

Plaintiffs' reliance on *FindWhat* is further misplaced because there, the "cautionary language consisted only of general warnings about risks inherent to the Company's business model, and was not 'specifically tailored' to risks from click fraud." *Id.* at 1299. But here, GEO included highly relevant and tailored risk disclosures and meaningful cautionary statements. *See* MTD at 4-8.[12]

---

[12] Because there was no duty to disclose, Plaintiffs' argument that the safe harbor does not apply because Plaintiffs rely on material omissions of then-existing facts also fails.

**B.       There is No Strong Inference of Scienter.**

Plaintiffs have failed to allege a strong inference of scienter as to each defendant with respect to each act or omission. *See FindWhat*, 658 F.3d at 1300 ("The PSLRA also mandates that the court asses scienter 'with respect to each act or omission alleged to violate this chapter.'"); *Mulvaney*, 237 F.Supp. 3d at 1325. Even though "theoretically" a complaint could demonstrate corporate scienter while failing to demonstrate scienter as to the individual defendants, that academic principle cannot salvage Plaintiffs' Amended Complaint because they have also failed to allege the scienter of any other agents of GEO which could be imputed to GEO. *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 635 (11th Cir. 2010); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1254-55 (11th Cir. 2008). This is another basis for dismissal.

**C.       Count II Fails to State a Section 20(a) Claim Against the Individual Defendants.**

Count II must be dismissed because the Amended Complaint fails to make particularized allegations that the Individual Defendants asserted the requisite level of control over GEO or had any reason to partake in the alleged wrongdoing. *Cf. In re Spear & Jackson Sec. Litig.,* 399 F. Supp. 2d 1350, 1357-58 (S.D. Fla. 2005) (affirming dismissal of 20(a) claim against company officer where there was no allegation indicating why the officer would have participated in the alleged scheme nor how the officer allegedly profited from it). The response in no way establishes a basis for control person liability, but rather simply cites to the references to the Individual Defendants in the Amended Complaint without in any way establishing sufficient allegations of their control. Count II is a classic shotgun pleading that lumps together all Individual Defendants and ascribes to them, collectively, the purported bad acts allegedly committed by each Individual Defendant and by GEO. Rather than precisely state what each Individual Defendant allegedly did, Plaintiffs use the blunt instrument of re-alleging each of 245 separate paragraphs against the Individual Defendants, collectively. Such shotgun pleadings have routinely been dismissed.

**CONCLUSION**

For the foregoing reasons and those stated in Defendants' Motion to Dismiss, Defendants request that the Amended Complaint be dismissed in its entirety and with prejudice.[13]

---

[13] Plaintiffs have already drafted an Amended Complaint that encompasses nearly every imaginable aspect of GEO's business, and in light of the exhaustive public disclosures demonstrated by Defendants, any further attempt to amend the complaint would be futile. The Amended Complaint should be dismissed with prejudice. *See, e.g., Greenlane*, 2021 WL 53188, at *23; *Carvelli v. Ocwen Fin'l Corp.*, 2018 WL 4941110, at *8 (S.D. Fla. Apr. 30, 2018).

Dated: February 2, 2021

Respectfully submitted,

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095

By: /s/ *Brian P. Miller*
    Brian P. Miller, Esq.
    Florida Bar No. 0980633
    brian.miller@akerman.com
    Samantha J. Kavanaugh, Esq.
    Florida Bar No. 0194662
    samantha.kavanaugh@akerman.com

*Counsel for Defendant The GEO Group, Inc.*

**GUNSTER, YOAKLEY & STEWART, P. A.**
600 Brickell Avenue, 35th Floor
Miami, FL 33131
Telephone: (305) 376-6000
Facsimile: (786) 425-4090

By: /s/ *William K. Hill*
    William K. Hill, Esq.
    Florida Bar Number: 747180
    Primary: whill@gunster.com
    Secondary: mmotola@gunster.com
    George S. LeMieux, Esq.
    Florida Bar Number: 16403
    Primary: glemieux@gunster.com
    Secondary: alevene@gunster.com
    Secondary: eservice@gunster.com
    Ernest "EJ" A. Cox IV, Esq.
    Florida Bar Number: 124652
    Primary: ecox@gunster.com
    Secondary: mmargolese@gunster.com

*Counsel for Defendants George C. Zoley,*
*Brian R. Evans, J. David Donahue, and*
*Ann M. Schlarb*