UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:20-cv-81063-RS

STEVE HARTEL, Individually and on
Behalf of All Others Similarly Situated,

    Plaintiff,

v.

THE GEO GROUP, INC. and GEORGE C.
ZOLEY,

    Defendants.
_____/

# DEFENDANTS' MOTION TO DISMISS
# LEAD PLAINTIFFS' CONSOLIDATED CLASS ACTION
# SECOND AMENDED COMPLAINT [ECF NO. 46],
# OR ALTERNATIVELY, MOTION TO STRIKE,
# AND INCORPORATED MEMORANDUM OF LAW

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095
Brian P. Miller, Esq.
Florida Bar No. 0980633
brian.miller@akerman.com
Samantha J. Kavanaugh, Esq.
Florida Bar No. 0194662
samantha.kavanaugh@akerman.com

*Counsel for Defendant The GEO Group, Inc.*

**GUNSTER, YOAKLEY & STEWART, P. A.**
600 Brickell Avenue, 35th Floor
Miami, FL 33131
Telephone: (305) 376-6000
Facsimile: (786) 425-4090
William K. Hill, Esq.
Florida Bar No. 747180
whill@gunster.com
George S. LeMieux, Esq.
Florida Bar No. 16403
glemieux@gunster.com
Ernest "EJ" A. Cox IV, Esq.
Florida Bar No. 124652
ecox@gunster.com

*Counsel for Defendant George C. Zoley*

Pursuant to Fed. R. Civ. P. 9(b), 12(b)(6), and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) ("PSLRA"), The GEO Group, Inc. ("GEO") and George C. Zoley (together, "Defendants") move to dismiss the Consolidated Class Action Second Amended Complaint (the "Third Complaint"), filed by Lead Plaintiffs James Michael DeLoach and Edward Oketola ("Plaintiffs"). In the alternative, pursuant to Fed. R. Civ. P. 12(f), Defendants move to strike portions of the Third Complaint that fail to comply with the Court's Order or are otherwise impertinent and immaterial.

## INTRODUCTION

On September 23, 2021, the Court entered its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Consolidated Class Action First Amended Complaint (the "Second Complaint"). *See* ECF No. 45 ("Motion to Dismiss Order"). That Order required Plaintiffs to amend their complaint. Had Plaintiffs complied with the requirements in the Motion to Dismiss Order, Defendants would have answered the amended complaint. However, Plaintiffs' failure to comply with the Court's express directive necessitates this motion.

In its twenty-seven page Motion to Dismiss Order, the Court carefully analyzed each of the sixty-one statements identified by Plaintiffs that were alleged to be false or misleading. Ultimately, the Court found that the vast majority of Plaintiffs' alleged false or misleading statements—*all but four statements on the singular topic of pending lawsuits*—were non-actionable, directed the filing of an amended complaint, and provided clear instructions to Plaintiffs regarding the limited, permissible content in that further amended complaint.

Plaintiffs disregarded both the letter and spirit of the Motion to Dismiss Order. The Third Complaint continues to allege that statements—made temporally *after* the corrective disclosure

1

for loss causation purposes was determined by the Court to be adequately pled—are false or misleading.

Further, the Third Complaint is replete with vestigial sections from the Second Complaint that go well beyond the narrowed issues in this lawsuit, notwithstanding the Motion to Dismiss Order which significantly contracted this case. Plaintiffs' immaterial and impertinent allegations are far afield from, and are unrelated to, the few specific statements that the Court has determined may proceed.

Defendants are left with no choice but to again move to dismiss to ensure that the operative complaint is consistent with the Court's ruling. The Court should dismiss the Third Complaint and require Plaintiffs to comply with the Motion to Dismiss Order, which contains the Court's directive to streamline this lawsuit. Alternatively, the Court should strike the irrelevant portions of the Third Complaint that are inconsistent with the Motion to Dismiss Order or are otherwise impertinent and immaterial.

## BACKGROUND

### A. The First Complaint [ECF No. 1]

The initial complaint in this putative securities class action lawsuit was filed on July 7, 2020 (the "First Complaint"). *See* ECF No. 1. The First Complaint sued GEO, Zoley, and Brian R. Evans (GEO's CFO) for violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and sued Zoley and Evans for violations of Section 20(a) of the Exchange Act. It alleged a putative class of "all persons other than [d]efendants who purchased or otherwise acquired [GEO] securities between February 27, 2020 and June 16, 2020, both dates inclusive." *Id.* at ¶ 1.

In the First Complaint, Plaintiffs seized upon a drop in GEO's stock price that was caused by GEO's *competitor's* announcement that it was decreasing its dividend payment going forward. Plaintiffs then manufactured a claim that GEO had misled the marketplace about the potential effects of COVID-19 on its facilities and business. During this unprecedented pandemic, GEO faced the risk that infections could arise in its facilities where prisoners, detainees, or probationers are necessarily kept together in close quarters. GEO promptly disclosed that risk and outlined the steps it was taking, in accordance with evolving CDC guidelines, to manage the risk. The defendants filed a motion to dismiss pointing out the First Complaint's deficiencies. The Court dismissed the First Complaint without prejudice so Plaintiffs could amend. *See* ECF No. 30.

### B.     The Second Complaint [ECF No. 33]

Plaintiffs filed their Second Complaint on November 18, 2020. *See* ECF No. 33. Again asserting claims under Section 10(b) and 20(a) of the Exchange Act, the Second Complaint attempted to vastly expand this lawsuit. Spanning a protracted 104 pages, the 260-paragraph Second Complaint embraced a "kitchen-sink" approach, reciting every bit of published bad news about GEO in the last few years, and attempted to tie disparate and factually unconnected threads together as alleged evidence of "fraud" following a small drop in stock price. Indeed, the Second Complaint alleged that sixty-one separate statements related to almost every aspect of GEO's business—including quality of operations, corporate social responsibility, competitive strengths, business strategies, health and safety, sources of financing, dividend expectations, and COVID-19 procedures—were materially false or misleading or contained material omissions. *Id.* at Appendix A. The Second Complaint claimed that the "full truth" was ultimately "revealed" through a "series of corrective disclosures" that culminated on August 6, 2020, when GEO announced it had made

the prudent decision to reduce its quarterly dividend payment going forward and pay down indebtedness, resulting in a 7% drop in GEO's stock price. *Id.* at ¶¶ 217, 235.

The Second Complaint sued two additional GEO executives—J. David Donahue and Ann M. Schlarb—and also attempted to significantly enlarge the putative class period from what had been less than 4 months to nearly 2 years: "all persons or entities who purchased or otherwise acquired GEO common stock during the period from November 7, 2018 to August 5, 2020, inclusive." *Id*. at ¶ 1.

    **C.**    **Defendants' Motion to Dismiss the Second Complaint**

Defendants argued that the Second Complaint suffered from multiple legal deficiencies that required dismissal. *First*, GEO's public statements that Plaintiffs allege were forward-looking statements and statements of puffery or corporate optimism that are legally protected under the federal securities laws. *Second*, what Plaintiffs complain was hidden actually was in the public domain, either through affirmative disclosure by GEO or in the numerous press articles, lawsuits, and announcements by third parties that Plaintiffs liberally referenced throughout their complaint. *Third*, there was no causal nexus between the alleged misrepresentations and the eventual announcement of GEO's intent to reduce dividends and repay debt (i.e., no loss causation). *Fourth*, the complaint did not allege scienter with the requisite heightened particularity. And, *fifth*, the claims against the individual defendants failed. *See* Motion to Dismiss Second Complaint [ECF No. 36]. The motion to dismiss was fully briefed. *See generally* [ECF Nos. 37, 41, 42 & 44].

    **D.**    **The Motion to Dismiss Order [ECF No. 45]**

In ruling on the motion to dismiss the Second Complaint, the Court sustained the overwhelming majority of Defendants' arguments. The Court dismissed both the § 10(b) and § 20(a) counts in their entirety against defendants Evans, Donahue, and Schlarb. The Court further

found that nearly all of the statements alleged by Plaintiffs to be false or misleading were not actionable for a variety of reasons.

Ultimately, of the sixty-one statements Plaintiffs alleged to be false or misleading, the Court dismissed the § 10(b) claims based on all but four statements regarding pending lawsuits:

> (1) the Company does not expect any pending claims or lawsuits to have a material adverse effect on its financial condition, results of operations, or cash flows;
>
> (2) the Company has not recorded an accrual relating to these matters at this time, as a loss is not considered probable nor reasonably estimable at this stage of the lawsuit;
>
> (3) the Company does not expect the outcome of any pending claims or legal proceedings to have a material adverse effect on its financial condition, results of operations or cash flows; and
>
> (4) the Company has adequately accounted for known legal cases in our guidance for 2019.

*See* ECF No. 45 at 22-23.

The Court also determined that Plaintiffs sufficiently pled loss causation, with respect to these four remaining claims, based on allegations of a stock drop in July 2019:

> The Court will only address whether Plaintiffs have sufficiently pled loss causation ***as to the remaining claims*** – the claims based on Defendants' statements about the pending lawsuits. Plaintiffs have pled that on July 17, 2019, reputable news sources published articles revealing GEO's requests to ICE to help cover the costs of litigation because GEO could not bear the costs of defense on its own. Over the next two days, GEO's share price fell over 7.9%. This is sufficient to plead loss causation.

*Id.* at 24 (emphasis added).

In its Motion to Dismiss Order, the Court required Plaintiffs to file an amended complaint, but directed that Plaintiffs' further amended complaint was to be "**in accordance with this Order**" and that Plaintiffs "**shall not allege any claims based on statements that the Court has found**

**non-actionable as forward looking or as puffery, corporate optimism, or opinion"** and **"shall not add any additional statements as the basis of its claims."** *Id.* at 27 (emphasis added).

  E.  **The Third Complaint [ECF No. 46]**

On October 4, 2021, Plaintiffs filed their Third Complaint. Contrary to the Court's instruction, the Third Complaint goes well-beyond the parameters delineated in the Motion to Dismiss Order. Despite the fact that the Motion to Dismiss Order identified only four alleged statements that could form the basis for their lawsuit, Plaintiffs nevertheless allege <u>eight</u> false or misleading statements—the four authorized by the Court and <u>an additional four</u> that occur ***after*** July 17, 2019, the date that the Court relied on for loss causation purposes. *See* ECF No. 46 at ¶¶ 115-122 & Appendix A.

Further, despite the fact that the Court had significantly narrowed the scope of this suit in only permitting a single category of statements to form the basis for Plaintiffs' claims, the Third Complaint nevertheless consists of 180 paragraphs over 72 pages. Even a cursory review of Exhibit 1 to the Third Complaint, which purports to be a comparison between the Second Complaint and Third Complaint, readily reveals that Plaintiffs made very minimal substantive changes to the first 39 pages of the Third Complaint (consisting of more than 100 paragraphs). Indeed, large swaths of the Third Complaint relate to issues no longer part of the case, including GEO's response to the COVID-19 pandemic, GEO's access to capital, and facility-specific issues.

<b><u>ARGUMENT</u></b>

**I.**  **The Court Should Dismiss the Third Complaint**

  A.  **The PSLRA Imposes Heightened Pleading Standards.**

In order to state a viable claim for securities fraud under Section 10(b) and Rule 10b-5 of the Exchange Act, Plaintiffs are required to allege: (1) a misstatement or omission; (2) of a material

fact; (3) made with scienter; (4) on which the Plaintiffs justifiably relied; and (5) that proximately caused the Plaintiffs' injury. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1281 (11th Cir. 1999); *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236-37 (11th Cir. 2008).

In an effort to stem the rampant tide of abusive securities litigation and dispose of non-meritorious securities fraud claims at the pleading stage, the PSLRA significantly heightened the pleading standards for Section 10(b) claims. *Bryant,* 187 F.3d at 1278. The PSLRA imposes two key requirements and provides that, if they are not satisfied, "the court **shall**, on the motion of any defendant, **dismiss the complaint**." 15 U.S.C. § 78u-4(b)(3)(A) (emphasis added).

First, Plaintiffs are required to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief … [to] state with particularity all facts on which that belief is formed." *Id.* § 78u-4(b)(1). Second, Plaintiffs are required "with respect to **each act or omission alleged** . . . [to] state **with particularity** facts giving rise to a **strong inference** that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2) (emphasis added). To satisfy this standard, all of the facts alleged, taken together, must give rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 309 (2007).

Section 10(b) claims are also subject to Rule 9(b), which requires plaintiffs to plead "(1) precisely what statements were made in which documents or oral representations . . ., and (2) the time and place of each such statement and the person responsible for making . . . same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

In sum, to survive a motion to dismiss a claim brought under §10(b) and Rule 10b-5, the plaintiffs must satisfy, "(1) the federal notice pleading requirements; (2) the special fraud pleading requirements found in [FRCP 9(b)]; and (3) the additional pleading requirements imposed by the [PSLRA]." *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

### B. Plaintiffs Cannot Plead Loss Causation for All Their Alleged Misstatements

The Third Complaint must be dismissed for failure to state a claim to the extent that it does not adequately plead loss causation for the four post-July 2019 statements alleged to be false or misleading. *See* ECF No. 46 at ¶¶ 115-122.

Loss causation is the "causal connection between the material misrepresentation and the loss [incurred.]" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). As the Court explained in its Motion to Dismiss Order, "[i]n a fraud-on-the-market case, such as this, a plaintiff can plead loss causation by pleading that the share price fell significantly after the truth became known." ECF No. 45 at 24 (citing *Dura Pharms., Inc.*, 544 U.S. at 347). Even in a fraud-on-the-market case, the Plaintiffs "must prove not only that a fraudulent misrepresentation artificially inflated the security's value but also that the fraud-induced inflation that was baked into the plaintiff's purchase price was subsequently removed from the stock's price, thereby causing losses to the plaintiffs." *Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013) (internal quotation omitted). This loss causation requirement can be satisfied by pleading the existence of a corrective disclosure that purportedly revealed ***new*** information about the alleged fraud to the market and caused a price drop. *See Sapssov v. Health Mgmt. Assocs., Inc.*, 608 F. App'x 855 (11th Cir. 2015) (holding that loss causation was inadequately pleaded under fraud-on-the-market doctrine where plaintiffs relied on an OIG investigation, whistleblower case, and equity analyst's report, none of which disclosed actual wrongdoing or qualified as a corrective disclosure establishing causal link for loss).

As the Court previously noted, Plaintiffs can circumstantially demonstrate loss causation in fraud-on-the-market cases by:

> (1) identifying a "corrective disclosure" (a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud); (2) showing that the stock price dropped soon after the corrective disclosure; and (3) eliminating other possible explanations for this price drop, so that the factfinder can infer that it is more probable than not that it was the corrective disclosure—as opposed to other possible depressive factors—that caused at least a "substantial" amount of the price drop.

*FindWhat Investor Grp.*, 658 F.3d at 1311-12 (footnote omitted); ECF No. 45 at 24. "By ensuring that only losses actually attributable to a given misrepresentation are cognizable, the loss causation requirement ensures that the federal securities laws do not become a system of investor insurance that reimburses investors for any decline in the value of their investments." *Meyer*, 710 F. 3d at 1196 (internal quotation omitted).

Just as in the Second Complaint, the Third Complaint alleges as follows with respect to loss causation related to statements regarding litigation:

> [O]n July 17, 2019, after the market opened, reputable news sources published articles such as "GEO Wants Taxpayers to Foot Bill for Private Prison Exploitation," revealing GEO's pleas to ICE to help cover litigation costs stating in relevant part, "GEO cannot bear the costs of this defense on its own" and "[w]e urgently implore DOJ to take over the defense of these lawsuits and reimburse GEO for its costs." On this news, indicating the Company's serious concern that these lawsuits could have a material effect on its financial condition, results of operations or cash flow, GEO's share price fell over 7.9%, or $1.48 per share, to close at $17.24 per share on July 19, 2019 after two days of heavy trading.

ECF No. 46 at ¶ 128. *See also* ECF No. 33 at ¶ 207.

In its Motion to Dismiss Order, the Court found this allegation sufficient to plead loss causation "***as to the remaining claims***." ECF No. 45 at 24. In other words, the Court determined that Plaintiffs had adequately pled a corrective disclosure only concerning the specific statements that the Court was allowing to proceed in this case. Thus, for the July 17, 2019, news reports to

9

be a corrective disclosure, any alleged false or misleading statements necessarily had to occur *prior to that date*.

Yet Plaintiffs continue to include allegations of false and misleading statements *after that date*, in contravention of the Motion to Dismiss Order.[1] The Third Complaint, like the Second Complaint, includes allegations that statements in GEO's subsequent filings with the SEC were false or misleading:

(1) GEO's Form 10-Q for the 2nd Quarter of 2019, August 2, 2019
*See, e.g.,* ECF No. 46 at ¶¶ 115-116

(2) GEO's Form 10-Q for the 3rd Quarter of 2019, November 7, 2019
*See e.g.,* ECF No. 46 at ¶¶ 117-118

(3) GEO's Form 10-K for Year 2019, February 26, 2020
*See, e.g.,* ECF No. 46 at ¶¶ 119-120

(4) GEO's Form 10-Q for the 1st Quarter of 2020, May 6, 2020
*See, e.g.,* ECF No. 46 at ¶¶ 121-122

Allegations regarding these *precise* statements were included in the Second Complaint and were rejected and dismissed by the Court. In contrast to the four statements made pre-July 17, 2019 that the Court has permitted to proceed,[2] Plaintiffs have not adequately pled any loss causation for

---

[1] Plaintiffs Third Complaint continues to allege that the "full truth" was ultimately "revealed" through a "series of corrective disclosures"—"including those on March 5, 2019, March 10, 2019, March 12, 2019, July 11, 2019, July 17, 2019, March 9-10, 2020, June 17, 2020, July 16, 2020 and August 6, 2020." *See, e.g.,* ECF No. 46 at ¶ 155. These allegations are in contravention of the Court's Motion to Dismiss Order that identified a single adequately pled corrective disclosure.

[2] Respectfully, Defendants continue to maintain their positions and disagree that the statements the Court found to be actionable in its Motion to Dismiss Order can form the basis for securities fraud claims. For preservation purposes, Defendants adopt and incorporate by reference the arguments advanced in their briefing in connection with the Second Complaint and do not waive any rights related thereto. In particular, Defendants reassert that the statements that the Court has determined are at issue here (*see* ECF No. 46 at ¶¶ 107-114) are non-actionable because they are correct and protected forward-looking statements. Further, Plaintiffs do not allege that GEO failed to disclose or misstated the actual costs of defense incurred during any particular reporting cycle, or violated any GAAP principles in its method of accounting for such expenses. The fully disclosed decision not to accrue a reserve does not give rise to a material misrepresentation as a matter of law. *See Luna v. Marvell Tech. Grp. Ltd*, 2016 WL 5930655, at *7 (N.D. Cal. Oct. 12, 2016) (accrual not required under GAAP even after company had judgment entered against it in litigation).

these later statements. Consistent with the Motion to Dismiss Order, the Court should dismiss any § 10(b) claims based on these non-actionable statements, as well as any accordant § 20(a) claim.[3]

## II. Alternatively, the Court Should Strike Immaterial and Impertinent Portions of the Third Complaint

Defendants are left with no other option than to move to strike because many of the allegations in the Third Complaint go well beyond what was contemplated by the Motion to Dismiss Order. These allegations are immaterial and impertinent and should be stricken in order to streamline and appropriately restrain this lawsuit going forward.

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." "An allegation is immaterial if it has no value in developing the issues of the case." *Blake v. Batmasian,* 318 F.R.D. 698, 700 n.2 (S.D. Fla. 2017). "An allegation is impertinent if it is irrelevant to the issues and which are not properly in issue between the parties." *Id.* at n.3. "The purpose of a motion to strike is 'to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" *Halmu v. Beck*, 2021 WL 980912, at *5 (S.D. Fla. Mar. 15, 2021) (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002)). The Court has "broad discretion" when it considers a motion to strike. *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1317-18 (S.D. Fla. 2005); *see also Williams v. Eckerd Family Youth Alt.*, 908 F. Supp. 908, 910 (M.D. Fla. 1995) (noting the court has "broad jurisdiction" when considering a motion to strike under Rule 12(f)).

---

[3] In the same vein, the Court should not permit Plaintiffs to allege any class period that goes beyond July 19, 2019, the date the Court has determined Plaintiffs have pled a corrective disclosure related to the statements-at-issue. When a publicly available "corrective disclosure," such as a news article, provides information that allows an efficient market to adjust, then this marks the end of the class period. *See, e.g., Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 96-97 (S.D.N.Y. 2015) ("In the case of a securities fraud class action, courts are required to cut off the class period on the date of a statement or event that cures the market. In other words, a class period ends when the truth has been disseminated to the market.") (citations omitted).

Defendants are cognizant of the fact that motions to strike are disfavored and that striking a pleading is a "drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Board of Public Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) (citations omitted). However, where a court gives permission to make only specific amendments to a pleading, changes outside of the scope of that permission violate Federal Rule of Civil Procedure 15(a)(2) and should be stricken and disregarded. *See, e.g., The Cincinnati Ins. Co. v. Cochran*, 2006 WL 4495335, at *3 (11th Cir. Dec. 27, 2006) (affirming dismissal of newly asserted counterclaim that exceeded the scope of the district court's grant of leave to amend). And a motion to strike should be granted when portions of the pleading to be stricken, like the Third Complaint, have no possible relation to the controversy. *Id. See also K. Hansotia & Co. Inc. v. Einalem LLC*, 2019 WL 7708241, at *1 (S.D. Fla. May 13, 2019) (a court will not exercise its discretion to strike a pleading "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.") (quotation omitted).

This Court should strike the plainly immaterial allegations that have no conceivable connection to the Plaintiffs' claims, which have been limited to statements regarding pending litigation. *Hill v. Allianz Life Ins. Co.*, 2015 WL 12838838 (M.D. Fla. June 17, 2015) (citing *Helms v. Nationwide Ins. Co. of Am.*, 280 F.R.D. 354, 359, 360-62 (S.D. Ohio 2012) (striking amended complaint containing new allegations and claims exceeding the grant of leave to amend)). *See also Ivey v. City of Melbourne*, 2020 WL 4353195, at *2 (M.D. Fla. July 14, 2020) (recommending the striking of portions of an amended complaint where plaintiffs read too broadly the order granting in part a prior motion to dismiss and permitting leave to file an amended complaint); *Kuenzig v. Kraft Glob. Foods, Inc.*, 2012 WL 366927, at *3 (M.D. Fla. Feb. 3, 2012) (striking pleading exceeding scope of leave to amend), *aff'd sub nom. Kuenzig v. Hormel Foods*

*Corp.*, 505 F. App'x 937, 939 n.2 (11th Cir. 2013) (noting district court struck portions of the amended complaint that "exceeded the scope of the leave to amend"); *Veritas Pers. Servs., Inc. v. ADP Totalsource, Inc.*, 2019 WL 11506035, at *2 (S.D. Fla. Dec. 27, 2019) (striking new count that exceeded the scope of the court's prior order granting leave to amend).

Many of the allegations in the Third Complaint are unrelated to, and go well beyond, the claims the Court has allowed to proceed and should be stricken, including:

- allegations related to the four purported false or misleading statements made *after* the July 2019 date found by the Court to have been adequately pled as a corrective disclosure [including Paragraphs 115-122 or portions thereof (as well as references thereto in Appendix A)];

- allegations after July 2019, which should appropriately end the class period [including Paragraphs 12-24, 68-72, 83-84, 89-105, 115-122, 129-138, 142 or portions thereof];

- allegations regarding other alleged "corrective disclosures" [including Paragraphs 123-127, 129-138, 155 or portions thereof];

- allegations regarding GEO's response to infectious diseases and COVID-19 [including Paragraphs 22, 24, 85-105, 131, 133-34, 137-138, 142, 144-145 or portions thereof];[4]

- allegations regarding GEO's access to capital [including Paragraphs 6-11, 14, 24, 49-53, 75-80, 83-84, 106, 123-124, 126 or portions thereof];[5]

- allegations regarding GEO's services and quality of care [including Paragraphs 13, 16, 22-24, 54-56, 58, 61-64, 72-74, 81-82, 85-86, 88-92, 95, 100, 138, 144-145, 149 or portions thereof];[6]

- allegations regarding GEO's dividends and cash flows [including Paragraphs 4-5, 7-8, 10-12, 15-17, 21-22, 24, 49, 52-53, 57, 122, 125, 132, 138, 141, 145-149 or portions thereof];[7] and

---

[4]  *Cf.* ECF No. 45 at 20-21 ("Plaintiffs' claims based on [COVID-19] statements must be dismissed").

[5]  *Cf.* ECF No. 45 at 21 ("Plaintiffs' claims based on the statements regarding GEO's ability to obtain funding must be dismissed.").

[6]  *Cf.* ECF No. 45 at 21 ("the claims based on [statements about GEO's services, certifications and following certain policies and procedures] are dismissed.").

[7]  *Cf.* ECF No. 45 at 22.

13

- allegations regarding facility-specific issues [including Paragraphs 22, 61-74, 82, 85-88, 95, 105, 131 or portions thereof].

These allegations are unrelated to the narrow directives outlined by the Court. They are irrelevant and their inclusion serves no purpose. As set forth in Exhibit A hereto, Defendants have highlighted the paragraphs or portions thereof that they propose be stricken.

The Motion to Dismiss Order clarified that the time period at issue here is only from November 9, 2018 to July 19, 2019. The above allegations beyond that time period have nothing to do with the alleged false or misleading statements at issue in this case regarding pending litigation and are well-beyond the scope of this lawsuit. These allegations are immaterial and impertinent, have no legitimate factual or legal connection to the claims at issue, and seek to gratuitously expand the scope of permissible discovery, as well as possibly prejudice a jury against the Defendants.

If these matters are not stricken, Defendants will be prejudiced. If these matters remain part of the operative complaint in this lawsuit, there is a substantial likelihood that there would be disputes over the proper scope of discovery, which will be time-consuming and expensive. And, discovery into these irrelevant topics will not ultimately further the actual claims in this litigation. In order to avoid this prejudice, the Court should strike the immaterial and impertinent portions of Plaintiffs' Third Complaint.

## **CONCLUSION**

Plaintiffs' Third Complaint significantly deviates from the Court's Motion to Dismiss Order. Contrary to the Court's instructions, Plaintiffs continue to assert claims based on four statements that the Court found non-actionable. Further, despite the Court's dramatic narrowing of the litigation, Plaintiffs persist in their effort to unduly enlarge the scope of this lawsuit by

including large swaths of impertinent and immaterial allegations that bear no relationship to the claims this Court has permitted to proceed. In doing so, Plaintiffs have exceeded their grant of leave to amend their claims.

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Third Complaint, or in the alternative, strike the allegations identified above to streamline the case and preclude the foray into irrelevant matters. Defendants also seek such other and further relief as the Court deems just and proper.

### S.D. Fla. Local Rule 7.1(a)(3) Certification

Counsel for Defendants hereby certify that they have conferred by telephone with Counsel for Plaintiffs in a good faith effort to resolve the issues raised in this motion and have been unable to do so.

Dated: October 18, 2021

Respectfully submitted,

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095

By: /s/ *Brian P. Miller*
   Brian P. Miller, Esq.
   Florida Bar No. 0980633
   brian.miller@akerman.com
   Samantha J. Kavanaugh, Esq.
   Florida Bar No. 0194662
   samantha.kavanaugh@akerman.com

*Counsel for Defendant The GEO Group, Inc.*

**GUNSTER, YOAKLEY & STEWART, P. A.**
600 Brickell Avenue, 35th Floor
Miami, FL 33131
Telephone: (305) 376-6000
Facsimile: (786) 425-4090

By: /s/ *William K. Hill*
   William K. Hill, Esq.
   Florida Bar Number: 747180
   whill@gunster.com
   George S. LeMieux, Esq.
   Florida Bar Number: 16403
   glemieux@gunster.com
   Ernest "EJ" A. Cox IV, Esq.
   Florida Bar Number: 124652
   ecox@gunster.com

*Counsel for Defendant George C. Zoley*