**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:20-81063-CIV-SMITH**

STEVE HARTEL, Individually and on Behalf
of All Others Similarly Situated,

                Plaintiff,

       v.

THE GEO GROUP, INC. and GEORGE C.
ZOLEY,

                Defendants.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**LEAD PLAINTIFFS' CONSOLIDATED CLASS ACTION SECOND AMENDED**
**COMPLAINT, OR ALTERNATIVELY, MOTION TO STRIKE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................II

INTRODUCTION ......................................................................................................... 1

RELEVANT PROCEDURAL HISTORY ...................................................................... 4

RELEVANT FACTS ...................................................................................................... 5

ARGUMENT ................................................................................................................. 8

    I.   Defendants' Third Motion to Dismiss Should Be Denied. .................................. 8

        A.   The Court already found misstatements about pending lawsuits actionable. ............ 9

        B.   Defendants' already-rejected truth-on-the-market defense fails again. ................... 10

        C.   The SAC (just like the CAC) adequately pleads loss causation. ........................... 11

    II.  Defendants' Motion to Strike Prematurely Adjudicates Merits Issues Prior

       to Discovery  and, Therefore, Should Be Denied. .......................................................... 15

CONCLUSION.............................................................................................................. 18

i

## TABLE OF AUTHORITIES

**Cases**

*Achievement & Rehab. Ctrs., Inc. v. City of Lauderhill*,
  2012 U.S. Dist. LEXIS 173139 (S.D. Fla. Dec. 5, 2012) ....................................................... 16

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013).................................................................................................................. 10

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988).................................................................................................................. 10

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019) ................................................................................................ 8

*City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*,
  806 F. Supp. 2d 1267 (N.D. Ga. 2011) .................................................................................... 11

*City Pension Fund for Firefighters & Police Officers in City of Mia. Beach v.*
  *Aracruz Cellulose S.A.*,
  41 F. Supp. 3d 1369 (S.D. Fla. 2011) ...................................................................................... 11

*Coachmen Indus. v. Royal Surplus Lines Ins. Co.*,
  2007 U.S. Dist. LEXIS 46134 (M.D. Fla. June 25, 2007) ........................................................ 8

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005).................................................................................................................. 11

*Eastwood Enters., LLC v. Farha*,
  2009 U.S. Dist. LEXIS 88945 (M.D. Fla. Sept. 28, 2009) ....................................................... 12

*EEOC v. Univ. of Miami*,
  2020 U.S. Dist. LEXIS 91813 (S.D. Fla. May 22, 2020) ......................................................... 16

*FindWhat Inv. Grp. v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) ............................................................................................... 13

*Galle v. Nationstar Mortg., LLC*,
  2018 U.S. Dist. LEXIS 118698 (M.D. Fla. Jan. 25, 2018)...................................................... 10

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000)..................................................................................................... 10

*Hartel v. GEO Group, Inc.*,
  2021 U.S. Dist. LEXIS 182485 (S.D. Fla. Sept. 23, 2021) ............................................. passim

*Harty v. SRA/Palm Trails Plaza, LLC*,
  755 F. Supp. 2d 1215 (S.D. Fla. 2010) .................................................................................... 15

*In re BankAtlantic Bancorp Securities Litigation*,
  2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011) ........................................... 10, 11, 13

*In re CenturyLink Sales Practices & Sec. Litig.*,
  337 F.R.D. 193 (D. Minn. 2020)............................................................................................... 15

ii

*In re Equifax Inc. Sec. Litig.*,
  357 F. Supp. 3d 1189 (N.D. Ga. 2019) ...................................................... 11

*In re Gilead Sciences Securities Litigation,*
  536 F.3d 1049 (9th Cir. 2008) ..................................................................... 14

*In re Jiangbo Pharm., Inc., Sec. Litig.*,
  884 F. Supp. 2d 1243 (S.D. Fla. 2012),
  *aff'd sub nom. Brophy v. Jiangbo Pharm., Inc.*,
  781 F.3d 1296 (11th Cir. 2015) .............................................................. 12, 14

*In re Loewen Group Inc. Sec. Litig.*,
  395 F. Supp. 2d 211 (E.D. Pa. 2005) .......................................................... 15

*In re Marine Hose Antitrust Litig.*,
  2009 U.S. Dist. LEXIS 133199 (S.D. Fla. May 21, 2009) ............................. 9

*In re PainCare Holdings Sec. Litig.*,
  541 F. Supp. 2d 1283 (M.D. Fla. 2008) ..................................................... 11

*In re PSS World Med., Inc. Sec. Litig.*,
  250 F. Supp. 2d 1335 (M.D. Fla. 2002) ..................................................... 12

*In re Snap Inc. Sec. Litig.*,
  334 F.R.D. 209 (C.D. Cal. 2019) ................................................................ 15

*Katyle v. Penn Nat'l Gaming, Inc*.,
  637 F.3d 462 (4th Cir. 2011) ...................................................................... 13

*Linco Enters. v. Firer*,
  2021 U.S. Dist. LEXIS 179008 (S.D. Fla. Sep. 17, 2021)............................. 16

*Local 703, I.B. of T. Grocery & Food Emples. Welfare Fund v. Regions Fin. Corp.*,
  2014 U.S. Dist. LEXIS 162403 (N.D. Ala. Nov. 19, 2014) ........................... 10

*Luczak v. Nat'l Bev. Corp.*,
  812 F. App'x 915 (11th Cir. 2020) .................................................... 11, 13, 14

*Martinez v. Cherry Bekaert, LLP*,
  2021 U.S. Dist. LEXIS 185165 (S.D. Fla. Sep. 28, 2021)............................. 15

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ................................................................... 11

Molina v. SMI Security Management,
  2013 U.S. Dist. LEXIS 205722 (S.D. Fla. Mar. 22, 2013)............................. 16

*Pepper v. U.S.,*
  562 U.S. 476 (2011)....................................................................................... 8

*Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*,
  2019 U.S. Dist. LEXIS 161566 (M.D. Fla. Sep. 23, 2019) .................... 10, 11

*Thompson v. Kindred Nursing Ctrs. E., LLC*,
  211 F. Supp. 2d 1345 (M.D. Fla. 2002) ..................................................... 15

iii

*Thompson v. RelationServe Media, Inc.*,
  610 F.3d 628 (11th Cir. 2010) ........................................................................................... 13

*Wiggins v. FDIC*,
  2017 WL 588444 (N.D. Ala. Feb. 14, 2017) ....................................................................... 8

**Other Authorities**

15 U.S.C. § 78u-4(a)(3)(B) ...................................................................................................... 4

Plaintiffs respectfully submit this Opposition to Defendants' Motion to Dismiss Lead Plaintiffs' Consolidated Class Action Second Amended Complaint ("SAC"), or Alternatively, Motion to Strike (ECF No. 47) ("Motion," or "Mot.").[1]

## INTRODUCTION

Defendants' Motion – their **third** motion to dismiss – relitigates issues the Court resolved and improperly challenges the relevancy of alleged facts at the pleading stage. The facts and law have not changed since this Court issued its Motion to Dismiss Order ("MTD Order") on September 23, 2021, granting in part and denying in part Defendants' Motion to Dismiss Lead Plaintiffs' Consolidated Class Action Amended Complaint ("CAC") and Incorporated Memorandum of Law (ECF No. 36) ("Second MTD"). *Hartel v. GEO Group, Inc.*, 2021 U.S. Dist. LEXIS 182485 (S.D. Fla. Sept. 23, 2021). As alleged in both the CAC (ECF No. 33) and the SAC, Defendants publicly told investors that GEO did not expect any of its pending claims or lawsuits to have a material adverse effect on its financial condition. Privately, however, Defendants were pleading with U.S. Immigration and Customs Enforcement ("ICE") to shield GEO from "catastrophic risk" and "tens of millions" of dollars in legal expenses. Defendants' statements about GEO's pending lawsuits and their impact on its finances are no less misleading now than when the Court last considered them at the Second MTD.

Instead of answering the SAC and moving forward into discovery, Defendants wrongfully accuse Plaintiffs of "disregard[ing] both the letter and the spirit of the [MTD Order]" in revising the CAC. Mot. at 1. Plaintiffs did nothing of the sort. The Court upheld Plaintiffs' claims concerning Defendants' statements about GEO's "pending lawsuits" and ordered the filing of "a second amended complaint" without allegations "based on statements that the Court has found non-actionable as forward looking or as puffery, corporate optimism, or opinion" or "add[ing] any additional statements as the basis of its claims." *Hartel*, 2021 U.S. Dist. LEXIS 182485, at *43. Plaintiffs adhered strictly to this directive. The SAC does not contain the dismissed misstatements or omissions and does not add new misstatements or omissions. *See* ¶¶106-22. Rather, the SAC maintains that Defendants misrepresented the risks, realities, and effects of GEO's pending lawsuits, resulting in damages sustained by Plaintiffs and the Class as GEO revealed the truth

---

[1] Capitalized terms that are not defined have the meanings ascribed in Defendants' Motion. Unless otherwise noted, internal citations are omitted and emphasis is added throughout. References to ¶_ are to the SAC (ECF No. 46).

through a series of partial disclosures. *Id.*; *see also* ¶¶123-38. The SAC also includes the contextual background and narrative of GEO's operations, pressures, risks, and results—all of which meet the relevance standard *vis-à-vis* the falsity, scienter, loss causation, and damages elements of Plaintiffs' securities fraud claims. Needless to say, the parties must litigate those issues of fact, but at the pleading stage, the SAC properly sets forth the allegations related to those issues. Thus, there is no basis to summarily rule that particular allegations are permanently excluded from any further mention or consideration for the remainder of this litigation.

Dissatisfied with the Court's ruling, Defendants have raised arguments that are inapposite and incorrect. According to Defendants, the Court has ruled that all statements, conduct, and other events occurring after July 17, 2019, are *per se* irrelevant and permanently excluded from the case. In support of that sweeping proposition, Defendants rely solely on the Court's holding that Plaintiffs plausibly pled a "corrective disclosure" on July 17, 2019. Mot. at 9-10. Defendants are wrong on the facts and the law.

Plaintiffs allege that the articles issued on July 17, 2019 ("July 17 articles"), revealed **some** information about GEO's pending lawsuits and that losses arose from those revelations. Plaintiffs have not alleged—and the Court has not held—that GEO or a third-party, on that date, revealed the **full** truth about the risks, realities, and effects of the lawsuits. In other words, the July 17 articles only partially corrected Defendants' prior misrepresentations. ¶128. While investors learned that these lawsuits posed risks to GEO that were previously undisclosed, investors did not fully understand the risks or appreciate the implications of these risks until GEO was forced to reduce its dividend to "preserve capital." ¶¶24, 138; Exhibit A, GEO's August 6, 2020 Press Release, at 2. Indeed, in spite of and contrary to, the information disclosed in the July 17 articles, GEO **continued** to conceal and misrepresent its exposure due to the lawsuits, repeatedly representing thereafter that its "pending claims or legal proceedings" will not "have a material adverse effect on its financial condition, results of operations, or cash flow." ¶¶115-22.

Simply put, Defendants are raising factual challenges to the causation and damages elements, which are issues normally reserved for summary judgment or trial. When a company misleads the market *via* misrepresentations or omissions, the truth can be revealed in a variety of ways by an assortment of mechanisms across multiple dates. In some cases, there may be a single unequivocal revelation, such as the filing of restated financials to correct earlier misstatements. Alternatively, the company might conceal the risk that a detrimental event might occur, and then

the risk materializes, causing losses to unsuspecting investors. Often, a company, an insider, a whistleblower, or a third-party makes **partial** revelations, over an ongoing period, of misrepresented circumstances. And those partial disclosures need not be mirror images of the fraud. In other words, the truth is revealed through a series of partial disclosures that, in turn, cause the share price to fall. Damages are recoverable if and when the plaintiff proves at summary judgment or trial that those partial revelations revealed some (but not necessarily all) of the information about the defendants' misrepresentations and contributed to the stock drop. In many instances, the company actually denies the accuracy of third-parties' disclosures and continues the misrepresentations. Here, **Defendants denied the accuracy of the July 17 articles and continued making the false and misleading statements that GEO did not face material risks from its pending lawsuits**. ¶¶115, 117, 119, 121.

Through misdirection, Defendants invite the Court to ignore the proper legal analysis and issue premature factual rulings. Specifically, Defendants' requested relief, when accurately framed, would amount to a finding that:

- the third-party disclosures on July 17th revealed the **full** truth about GEO's internal assessments of litigation risks;

- every post-July 17th statement by Defendants about litigation risks was unequivocally true and posed zero risk of misleading investors;

- Defendants' post-July 17th statements about litigation risks—*i.e.*, that there were no material risks—are irrelevant and permanently excluded from any mention or consideration in this case; and

- every pre- and post-July 17th revelation by Defendants or third parties— including that GEO could not pay normal dividends—lacks any plausible connection to GEO's litigation risks.

Worse yet, Defendants suggest that the Court has already made those rulings and need only reconfirm the rulings now.

Defendants are wrong. The Court properly considered the law on loss causation and declined to dismiss the case because Plaintiffs adequately pled at least one stock drop connected to at least one revelation. Plaintiffs should now be allowed to proceed with discovery to obtain evidence in support of their allegations, including but not limited to the connection between

Defendants' misrepresentations and other declines in GEO's stock price, such as the one that occurred when Defendants announced GEO's 30% dividend cut on August 6, 2020.

As Plaintiffs alleged, after July 17, 2019, Defendants continued to deny that GEO faced material litigation risks. ¶¶115-22. As such, Plaintiffs further alleged that Defendants' 30% dividend cut on August 6, 2020, had at least some connection to those increasing (but continually denied) litigation risks. ¶¶152-55. As this Court previously found, nothing more is required to plead loss causation. *See Hartel*, 2021 U.S. Dist. LEXIS 182485, at *39. During discovery, Plaintiffs will obtain additional information concerning the legal and financial risks GEO faced related to its pending lawsuits and will be able to determine with certainty to what extent those risks contributed to the dividend cut. Granting Defendants' Motion would deprive Plaintiffs of the ability to take this discovery and to hold Defendants accountable for the damage they caused. Thus, as elaborated below, the Motion should be denied.

## RELEVANT PROCEDURAL HISTORY

On July 7, 2020, Plaintiff Steve Hartel commenced this action with the filing of the Class Action Complaint (ECF No. 1) (the "Initial Complaint") for violations of the federal securities laws. Pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court was required to appoint a lead plaintiff before the parties could engage in substantive litigation involving the claims asserted in the Initial Complaint. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Despite the PSLRA explicitly providing potential class members the right to move for lead plaintiff within 60 days of notice of the Initial Complaint, on August 12, 2020, Defendants filed a Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 6) ("First MTD") pursuant to Rule 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and the PSLRA.

On September 8, 2020, various Class members timely filed motions for lead plaintiff, including Messrs. DeLoach and Oketola. *See* ECF Nos. 19, 21-24. On September 18, 2020, Messrs. DeLoach and Oketola filed an unopposed motion and stipulation requesting that the Court appoint them co-lead plaintiffs and set a schedule for filing an amended complaint (ECF No. 26), which the Court granted on September 30, 2020 (ECF No. 30).

When appointing Messrs. DeLoach and Oketola as co-lead plaintiffs and setting forth the schedule for an amended complaint, the Court also granted in part and denied in part the First MTD. *Id.* Noting that Plaintiff Hartel was not seeking lead plaintiff status, the Court dismissed the First MTD without prejudice, ordering "each party [ ] bear its own costs and fees only with respect

4

to the initial complaint" and confirming that "[t]his dismissal [wa]s not an adjudication on the merits and the amended complaint to be filed pursuant to this Order shall relate back to the initial Complaint." *Id.*

On November 17, 2020, Plaintiffs filed the CAC which, like the Initial Complaint, alleged violations of the federal securities laws. However, Plaintiffs expanded the alleged false and misleading statements to include five aspects of GEO's business: 1) the stability of its dividend; 2) the quality of its services; 3) its pending lawsuits; 4) the availability of its funding; and 5) COVID-19 in its facilities.

On December 18, 2020, Defendants filed their Second MTD pursuant to Rules 9(b) and 12(b)(6) and the PSLRA, challenging the sufficiency of Plaintiffs' allegations, specifically, whether they adequately pled the elements of falsity, scienter, and loss causation.

On September 23, 2021, the Court issued the MTD Order, granting in part and denying in part Defendants' Second MTD. *See Hartel*, 2021 U.S. Dist. LEXIS 182485. In pertinent part, the Court held that Plaintiffs adequately pleaded a claim for securities fraud against GEO and Zoley in connection with their statements about the Company's pending lawsuits. *Id*. at *42. The Court also directed Plaintiffs to file a second amended complaint removing the alleged misstatements that had been dismissed. *Id*. at *43.

On October 4, 2021, Plaintiffs filed the SAC, removing all alleged misrepresentations and omissions that had been dismissed and adding no new ones. Plaintiffs otherwise left the pleading intact, including, in pertinent part, Defendants' representations about GEO's legal matters as well as the corrective disclosures that caused in Plaintiffs' damages.

On October 18, 2021, Defendants filed their instant Motion. This Motion marks the third occasion on which Defendants are seeking to dismiss Plaintiffs' case at the pleading stage, despite recently having been told by the Court that Plaintiffs' allegations sufficiently state a claim for relief and warrant discovery on the merits.

## RELEVANT FACTS

GEO, a purported leader in the private prison business, was founded in 1984 but restructured to become a REIT in 2013. ¶¶44-45. As a REIT, GEO is required to distribute at least 90% of its income each year as dividends to shareholders. ¶49. As a result, GEO relied on the capital markets to fund growth investments and maintain its operations, which included dealing with lawsuits involving its detainees. *Id.*; *see also* ¶¶57-74.

At the start of the Class Period (November 9, 2018 through August 5, 2020), JPMorgan, was the largest lender to private prisons, including GEO, with Wells Fargo and Bank of America coming in at close second and third. ¶51. This ready access to capital contributed to GEO's ability to maintain its quarterly dividend levels, a key metric for investors, and signaled that the Company still had enough cash to fund its operations. ¶52.

Critically, to keep its capital investors, and thus its dividends, GEO had to successfully maintain and operate its facilities in compliance with a host of contractual and regulatory requirements, while satisfying standards of due process and human rights. ¶¶53-56. Any failures subjected GEO to public scrutiny, bad publicity, government investigations, and ultimately decades of ongoing litigation. ¶57.

The SAC details multiple government investigations and filed lawsuits involving GEO and its facilities prior to and throughout the Class Period, asserting claims of inadequate medical and mental health care (both COVID-19 related and in general); forced labor; unsafe and unhealthy conditions at GEO facilities; understaffing and inadequate training of staff; and severe overcrowding. ¶¶58-74, 85-105.

GEO's inability to properly maintain and manage its facilities in accordance with applicable laws and regulations resulted in ongoing litigation and governmental scrutiny, subjected the Company to the known (or recklessly disregarded) risk of losing existing capital investors, and ultimately led to the reduction of the Company's quarterly dividend. ¶¶75-84.

Yet, throughout the Class Period, Defendants made materially false and misleading statements relating to GEO's exposure to litigation, including, but not limited to, claims related to conditions at its facilities and medical malpractice, stating in relevant part, that "**[t]he Company does not expect the outcome of any pending claims or legal proceedings to have a material adverse effect on its financial condition, results of operations or cash flows.**" ¶¶107, 111, 113, 115, 117, 119, 121. Plaintiffs allege that the truth about GEO's pending claims or legal proceedings was partially revealed through multiple corrective disclosures until the risk of the financial burden posed by the lawsuits fully materialized through a reduced dividend. ¶¶123-138.

A series of statements provided investors glimpses into the adverse impact GEO's ongoing litigation was having on GEO's financial condition and cash flow: JP Morgan's March 5, 2019, announcement that it would "no longer bank the private prison-industry" (¶123); US Bank's March 10, 2019 announcement that it had reduced its credit exposure to GEO to "an immaterial amount";

6

and the March 5, 2019 announcement by Well Fargo's CEO that the bank would exit its relationship with GEO (¶124). On these revelations, GEO's share price fell over 11% to close at $20.35 per share on March 8, 2019, and another 5% to close at $19.43 per share on March 14, 2019, on heavy trading volume. ¶125. By August 2019, eight major banking institutions were refusing to loan money to private prisons—representing 87.4% of the credit lines and term loans that had previously been available to GEO to fund its operations, including litigation costs. ¶83.

Between May and July 2019, the U.S. Department of Homeland Security, Office of Inspector General issued reports finding that several of GEO's facilities did not comply with government standards and called for immediate action to address the substandard conditions, inadequate medical care, and overcrowding at these facilities. ¶73. Then on July 11, 2019, NBC News published an article announcing that the House Oversight and Reform Committee was investigating GEO and the "deplorable" treatment of migrants in these facilities. ¶74. On this revelation—indicating that the claims pending against GEO were valid, which posed risk to its cashflow and operations— GEO's share price fell 6.5% to close at $18.97 per share on July 11, 2019 on heavy trading. ¶127.

Then, during market hours on July 17, 2019, news sources revealed that Defendants were begging ICE to help cover the Company's litigation costs, stating, in relevant part, "GEO cannot bear the costs of this defense on its own" and "[w]e urgently implore DOJ to take over the defense of these lawsuits and reimburse GEO for its costs." ¶128. On this news, indicating its ongoing litigation was materially affecting its financial condition, results of operations or cash flow, GEO's share price fell over 7.9% to close at $17.24 per share on July 19, 2019, after heavy trading. *Id.*

Thereafter, Defendants and third parties made partial disclosures revealing more information about GEO's vulnerability to litigation, including disclosures on March 9, 2020 (¶129), March 10, 2020 (¶¶ 130-131), and June 17, 2020 (¶133). Each time, GEO's stock price fell substantially, on heavy trading. *See* ¶¶ 129-133. Then, on July 16, 2020, major news sources reported that a federal judge had issued a tentative ruling that largely upheld California's January 2020 ban on private prison contracts, Assembly Bill ("AB") 32, concluding that "AB 32 does not unconstitutionally discriminate against the federal government or its contractors." ¶135. If forced to close its facilities by AB 32, GEO claimed "it would lose an average of $250 million a year in revenue over the next 15 years, plus the $300 million invested in acquiring and setting up those

7

buildings." *Id.* On this news, GEO's stock price fell over 5.4% to close at $11.49 per share on July 17, 2020 on heavy trading. ¶136.

Finally, on August 6, 2020, major news outlets announced that a federal judge in one of the many lawsuits against GEO had ordered it and ICE to conduct weekly, rapid-result COVID-19 tests of detainees, noting authorities had "avoided widespread testing…not for lack of tests, but for fear that positive test results would require them to implement safety measures that they apparently felt were not worth the trouble." ¶137. That same day, GEO announced a nearly 30% reduction in its quarterly dividend—just enough to allow it to remain a REIT. ¶138. In response to the ever-mounting litigation expenses and dividend cut, GEO's stock price fell $0.77 to close at $10.67 per share on August 7, 2020 on heavy trading. *Id.*

## ARGUMENT

### I.    Defendants' Third Motion to Dismiss Should Be Denied.

To state a claim for violations of § 10(b) and Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the loss, commonly called 'loss causation.'" *Carvelli v. Ocwen Fin. Corp.,* 934 F.3d 1307, 1317 (11th Cir. 2019).[2] In the instant Motion, Defendants frame their argument for dismissal as solely based on a failure to plead loss causation. *See* Mot. at 8. In reality, Defendants are asking the Court to reconsider falsity with regards to the four post-July 2019 statements alleged, claiming these statements are not actionable because they are barred by the "truth-on-the-market" defense.[3] Defendants are also claiming that

---

[2] Defendants do not again seek dismissal of Plaintiffs' § 20(a) claim against Defendant Zoley.

[3] Since the falsity allegations and applicable law have not changed, the law of the case applies and thus there is no basis to relitigate the allegations. *See Pepper v. U.S.,* 562 U.S. 476, 507 (2011) ("As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *Coachmen Indus. v. Royal Surplus Lines Ins. Co.,* 2007 U.S. Dist. LEXIS 46134, at *54 (M.D. Fla. June 25, 2007) ("Law-of-the-case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit."); *see also Wiggins v. FDIC,* 2017 WL 588444, at *2 (N.D. Ala. Feb. 14, 2017) ("Under the doctrine of the 'law of the case,' whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case."); *cf. In*

8

Plaintiffs failed to adequately plead loss causation for the partial disclosures on March 5, 2019, March 10, 2019, March 12, 2019, July 11, 2019, March 9-10, 2020, June 17, 2020, July 16, 2020, and August 6, 2020. *Id.* at 9-11, n.1. For three reasons, Defendants' arguments are meritless.

### A.    The Court already found misstatements about pending lawsuits actionable.

First, the MTD Order already found these statements—related to litigation risks, realities, and effects—to be actionable at the pleading stage. *See Hartel*, 2021 U.S. Dist. LEXIS 182485, at *26-*27, *35-*36. When considering Defendants' Second MTD, the Court noted that:

> Defendants repeatedly made three statements about pending lawsuits: (1) the Company does not expect any pending claims or lawsuits to have a material adverse effect on its financial condition, results of operations, or cash flows; (2) the Company has not recorded an accrual relating to these matters at this time, as a loss is not considered probable nor reasonably estimable at this stage of the lawsuit; and (3) the Company does not expect the outcome of any pending claims or legal proceedings to have a material adverse effect on its financial condition, results of operations or cash flows.

*Id.* at *35-*36. The Court found falsity plausibly alleged as to those statements.

Nonetheless, Defendants now ignore (or obfuscate) that they made those three statements prior to, **and after**, the July 17, 2019 partial corrective disclosure. *See* ¶¶107, 111, 113, 115, 117, 119, 121. In other words, when third parties partially revealed the truth to investors—*via* the July 17 articles—Defendants doubled down and **continued to deliver the same false statements** that artificially inflated GEO's stock price. *See* ¶¶115, 117, 119, 121. Thus, contrary to Defendants' claims that Plaintiffs' four post-July 2019 statements were dismissed, the Court had no reason to— and did not purport to—parse out specific dates on which false statements were made. Rather, the Court considered the categories/topics of alleged false statements and held that falsity was adequately pled as to Defendants' statements regarding litigation risks. *See Hartel*, 2021 U.S. Dist. LEXIS 182485, at *36. Though Defendants may disagree with the Court's conclusion regarding falsity, disagreement "'is not a basis for reconsideration of that conclusion.'" *See Skypoint Advisors, LLC v. 3 Amigos Prods. LLC*, 2019 U.S. Dist. LEXIS 161566, at *18 (M.D. Fla. Sep.

---

*re Marine Hose Antitrust Litig.,* 2009 U.S. Dist. LEXIS 133199, at *16 n.3 (S.D. Fla. May 21, 2009) (denying defendants' request that the claims be "dismissed as law of the case because the Second Amended Complaint contains allegations identical to the First Amended Complaint. As noted above, the Court finds that the allegations against [defendant] are not identical and further finds that Plaintiff has sufficiently alleged the relationship between the entities such that dismissal is not warranted.").

23, 2019) (quoting *Galle v. Nationstar Mortg., LLC*, 2018 U.S. Dist. LEXIS 118698, at \*2 (M.D. Fla. Jan. 25, 2018)).

## B.       Defendants' already-rejected truth-on-the-market defense fails again.

Second, the Court already rejected Defendants' premature truth-on-the-market defense. Nonetheless, Defendants argue that the August 6, 2020 dividend cut cannot show loss causation because the July 17, 2019 corrective disclosure eliminated risk of deception in marketplace, *i.e.*, the truth was on the market. Once again, this argument fails.

"Under the Truth on the Market Doctrine, 'a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market.'" *Hartel*, 2021 U.S. Dist. LEXIS 182485, at \*36-\*37 (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir. 2000)). This defense challenges the materiality of alleged misrepresentations and omissions. *Local 703, I.B. of T. Grocery & Food Emples. Welfare Fund v. Regions Fin. Corp.*, 2014 U.S. Dist. LEXIS 162403, at \*28 (N.D. Ala. Nov. 19, 2014) ("[A] truth-on-the-market defense ... goes to materiality.… [S]tripped down, [it] is merely an argument that the alleged misrepresentation was immaterial in light of other information on the market.").

To prevail on the defense, a defendant must show "the truth of the matter was transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by the misrepresentation or omission." *In re BankAtlantic Bancorp Securities Litigation*, 2011 U.S. Dist. LEXIS 48057, at \*37 (S.D. Fla. Apr. 25, 2011). Like other materiality challenges, moreover, the truth-on-the-market defense is fact-specific and premature on a motion to dismiss. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 481-82 (2013) ("'Proof of that sort is a matter for trial' (and presumably also for a summary-judgment motion under [Rule] 56)." (*quoting Basic, Inc. v. Levinson*, 485 U.S. 224, 248-49 (1988)).

Applying those principles, the Court found that Plaintiffs adequately "alleged that the excessive costs of the lawsuits were not known to the market at the time the statements about the lawsuits were made." *Hartel*, 2021 U.S. Dist. LEXIS 182485, at \*37. Although the Court did not parse out specific dates on which these statements were made, the analysis is precisely on point for Defendants' litigation-specific statements before and after July 17, 2019. Before July 17, Defendants stated to investors that there were no material litigation risks. ¶¶107, 109, 111, 113. On July 17, third parties stated that GEO faced undisclosed litigation risks, but Defendants continued the same exact misstatements. *See* ¶115 (8.2.19 10-Q), ¶117 (11.7.19 10-Q), ¶119

10

(2.26.20 10-K), ¶121 (5.6.20 10-Q). And Defendants revealed the dividend cut (to "preserve capital") for the first time on August 6, 2020. Consequently, Defendants cannot show (particularly at the pleading stage, where Plaintiff's allegations control) that, prior to August 6, 2020, the truth about the financial impact of the lawsuits was sufficiently disclosed to investors to outweigh Defendants' misleading statements and omissions. Simply put, because Defendants **denied the truth** told by third parties on July 17, 2019**,** Defendants cannot credibly argue that they told the truth with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression.

## C. The SAC (just like the CAC) adequately pleads loss causation.

Third, only a "short and plain" statement regarding loss causation is required under Rule 8's notice standard, not a detailed pleading under the PSLRA. *Skypoint*, 2019 U.S. Dist. LEXIS 161566, at *22-*25 ("[L]oss causation is not subject to the PSLRA's heightened pleading requirement and must only be pled in accordance with [Rule] 8(a)(2)"); *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1249 (N.D. Ga. 2019) (same); *City Pension Fund for Firefighters & Police Officers in City of Mia. Beach v. Aracruz Cellulose S.A.*, 41 F. Supp. 3d 1369 (S.D. Fla. 2011) (same). A plaintiff need only "provide ... some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).

More specifically, "'a plaintiff must offer proof of a causal connection between the misrepresentation and the investment's subsequent decline in value.'" *Luczak v. Nat'l Bev. Corp.*, 812 F. App'x 915, 920 (11th Cir. 2020) (*quoting Meyer v. Greene*, 710 F.3d 1189, 1195 (11th Cir. 2013). Loss causation can be proven by: (1) a stock price decrease after the release of information (*i.e.*, "corrective disclosure" theory); **or** (2) misrepresentations or omissions that "concealed a foreseeable risk that ultimately materialized" (*i.e.*, "materialization of the risk" theory). *See City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*, 806 F. Supp. 2d 1267, 1297 (N.D. Ga. 2011); *BankAtlantic*, 2011 U.S. Dist. LEXIS 48057, at *52-*53. A "corrective disclosure" theory requires a plaintiff to identify "a disclosure or revelation of truth about a defendant's prior misstatement or omission that is in some way connected with a stock price drop." *In re PainCare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283, 1294 (M.D. Fla. 2008); *see also Skypoint*, 2019 U.S. Dist. LEXIS 161566, at *22-*23 ("the plaintiff need not show that the defendant's misconduct was the sole and exclusive cause of his injury, but only that it was a substantial or significant contributing cause").

11

Under a "materialization of the risk" theory, it "suffic[es] to show that a risk, defendants allegedly concealed, materialized and arguably caused the plaintiffs' losses." *In re Jiangbo Pharm., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1264-65 (S.D. Fla. 2012), *aff'd sub nom. Brophy v. Jiangbo Pharm., Inc.*, 781 F.3d 1296 (11th Cir. 2015). Either theory is acceptable in the Eleventh Circuit. Ultimately, pleading loss causation is "not meant to impose a great burden upon a plaintiff." *Id*. Generally, loss causation is a factual issue not to be resolved on a motion to dismiss. *Eastwood Enters., LLC v. Farha*, 2009 U.S. Dist. LEXIS 88945, at *16 (M.D. Fla. Sept. 28, 2009); *see also In re PSS World Med., Inc. Sec. Litig*., 250 F. Supp. 2d 1335, 1351 (M.D. Fla. 2002).

Plaintiffs' SAC (like the CAC) adequately alleged that Defendants made materially false and misleading statements relating to whether "pending claims or legal proceedings" will "have a material adverse effect on its financial condition, results of operations, or cash flow." ¶¶107, 111, 113, 115, 117, 119, 121. Plaintiffs allege the truth was revealed through multiple corrective disclosures, damaging Plaintiffs and the Class. ¶¶123-38. Under a materialization of the risk theory, moreover, Plaintiffs allege the risks of the lawsuits' financial burden materialized through a reduced dividend.

Critically, the SAC (like the CAC) plausibly alleges that July 17, 2019 was not the date of a final corrective disclosure or the final materialization of the risk. Despite the July 17 articles indicating that GEO could not bear the defense costs of its ongoing lawsuits on its own, Defendants continued to make false and misleading statements that the "pending claims or lawsuits" will not "have a material adverse effect on its financial condition, results of operations, or cash flow." ¶¶115, 117, 119, 121. Defendants continued concealing the truth about pending litigation, including the true risks posed by those lawsuits. On August 6, 2020, the risk of financial burden from the lawsuits materialized—and Defendants made a new corrective disclosure—when Defendants announced, *inter alia*, that GEO would be reducing its dividend by almost 30% to "preserve capital and focus on paying down debt." ¶¶24, 137-38; Exhibit A, GEO's August 6, 2020 Press Release, at 2. In response to the news, GEO's stock price fell $0.77 per share, or nearly 7%, to close at $10.67 per share on August 7, 2020, after two days of heavy trading. ¶138.

Despite those well-pleaded allegations, Defendants now argue that the dividend reduction has no possible connection to GEO's burgeoning legal expenses. Defendants are free to raise that factual challenge at a later stage, but at the pleading stage, Plaintiffs' well-pleaded allegations must be accepted as true. *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 631 n.5 (11th Cir.

2010) (courts "accept all well-pleaded facts as true, and [] make[s] all reasonable inferences in favor of the plaintiff").

The Eleventh Circuit's decision in *Luczak*, is instructive. 812 F. App'x 915. In *Luczak*, the Eleventh Circuit found that "the district court failed to analyze [plaintiffs'] complaint as alleging a series of partial disclosures." *Id*. at 922. The Court noted that in doing so, where a plaintiff alleges that multiple disclosures "cumulatively disclose[]" the fraud, he does not need to allege that each corrective disclosure individually "shows proof of fraud." *Id*. (*citing Katyle v. Penn Nat'l Gaming, Inc*., 637 F.3d 462, 472-73 (4th Cir. 2011)). The Eleventh Circuit also determined that it was improper for the district court to reject plaintiffs' interpretation of the corrective disclosure, concluding that the district court's interpretation "was too narrow at this stage in the proceedings." *Id.* at 923. The Eleventh Circuit elaborated that, "[w]hile a court is not bound to accept the truth of general allegations in a complaint where they are contradicted by specific factual details in attached exhibits, no contradiction exists here." *Id.*

As in *Luczak*, the Court should accept Plaintiffs' allegations—specifically, that the reduced dividend has a connection to the reality that Defendant Zoley (and GEO) was "deeply alarmed at the rapidly increasing costs in defending these lawsuits." ¶¶ 7, 60. Indeed, there are no facts to contradict Plaintiffs' allegation that the August 6, 2020 corrective disclosure was a consequence (realization) of the risks caused by the financial burden created by GEO's pending lawsuits. The August 6 disclosure "reveal[ed] to the market the pertinent truth that was previously concealed or obscured by the company's fraud." *Hartel*, 2021 U.S. Dist. LEXIS 182485, at *37-*38 (quoting *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1311-12 (11th Cir. 2011)). As alleged, the reduced dividend was caused—at least in part, if not in whole—by GEO's reduced cash flows and financial stress from the ongoing lawsuits; therefore, the August 6, 2020 corrective disclosure "relate[s] back to the misrepresentation." *Luczak*, 812 F. App'x at 921.

*BankAtlantic* is also directly on point. 2011 U.S. Dist. LEXIS 48057. In *BankAtlantic*, the plaintiffs alleged that the defendant "concealed the risk of losses to the entire land loan portfolio by misrepresenting that the risk of significant losses was limited to the BLB loans and that this concealed risk was revealed to the market on October 25 and 26, 2007 when it materialized in the form of significant losses throughout the land loan portfolio." *Id*. at *52. The court noted that the "general purpose" of the "materialization-of-the-risk" theory "is to allow defrauded investors to prove loss causation and recover under Rule 10b-5 even where the defendant does not publicly

13

correct his fraud, but instead the fraud is revealed through some other event." *Id.* at *52-*53. The court, therefore, found that "[a] jury could have found that these announcements revealed information about the risk to the entire land loan portfolio that had been concealed by [defendant] when he made [the false statement]." *Id.* at *53.

Similar to *BankAtlantic*, Plaintiffs adequately allege that, while GEO's announcement of the dividend cut to preserve capital does not "precisely mirror the earlier misrepresentation" (*Luczak*, 812 F. App'x at 921), the risk of "a material adverse effect" on the company's "financial condition, results of operations, and cash flow" from the pending lawsuits materialized in the form of a first-ever dividend cut. Therefore, Plaintiffs have adequately alleged loss causation for the August 6, 2020 stock drop under a materialization of the risk theory. *See Jiangbo*, 884 F. Supp. 2d at 1265 (S.D. Fla. 2012) ("It is sufficient to show that a risk defendants allegedly concealed materialized and arguably caused the plaintiffs' losses.").

Finally, *In re Gilead Sciences Securities Litigation* is also instructive. 536 F.3d 1049 (9th Cir. 2008). In *Gilead*, the defendants concealed from investors an off-label marketing scheme that, as alleged, exposed the company to heightened regulatory risk. These risks came to bear when, first, the FDA issued a "Warning Letter" on August 7, 2003, and then, second, Gilead Sciences reported sales significantly below expectations on October 28, 2003. *Id*. at 1053-54. The district court dismissed the plaintiffs' complaint for failing to adequately plead loss causation because Gilead Science's stock price declined only after the weak earnings report on October 28, which was nearly three months after the FDA's "Warning Letter." *Id*. at 1057. The Ninth Circuit reversed because the plaintiffs' allegations adequately linked the decline in the stock price caused by the earnings announcement to the off-label marketing scheme revealed in the earlier Warning Letter. *Id*. at 1058. In pertinent part, the Ninth Circuit reasoned that "the Investors' complaint convinces us that the October drop in stock price was plausibly caused by the Warning Letter. Importantly, the drop occurred immediately after Gilead disclosed less-than-expected revenues resulting from the reduction in wholesalers' Viread inventories, which analysts ascribed to lower end-user demand. That lower end-user demand, in turn, is expressly alleged to have been caused by the Warning Letter." *Id*.

The alleged facts here are analogous. On July 17, 2019, articles surfaced concerning GEO's litigation expenses. Nonetheless, GEO continued to conceal the true extent of its legal exposure by telling investors that the "pending claims or legal proceedings" would not "have a material

14

adverse effect on its financial condition, results of operations, or cash flow." *See*, *e.g.*, ¶115 (8.2.19 10-Q). Because of Defendants' ongoing denials of the materiality of litigation risks, investors failed to appreciate the significance of the July 17, 2019 articles, until August 6, 2020, when GEO finally revealed the dividend cut to preserve capital. In other words, Plaintiffs' allegations demonstrate a link between Defendants' misrepresentations and the declines in GEO's stock price; therefore, the SAC adequately pleads the element of loss causation.

In sum, the Court should decline Defendants' improper (and second) invitation to ignore Plaintiff's allegations and rule at the pleading stage on the highly factual loss causation element. *See In re CenturyLink Sales Practices & Sec. Litig*., 337 F.R.D. 193, 213-14 (D. Minn. 2020) (rejecting defendants' truth on the market argument that the "thrust of the alleged fraud was revealed" in an earlier corrective disclosure because "Defendants denied the allegations and continued the alleged misrepresentations" and the subsequent disclosure "revealed more about the scope of [the] fraud."); *In re Snap Inc. Sec. Litig*., 334 F.R.D. 209, 225 (C.D. Cal. 2019) (refusing to shorten class period to when lawsuit was revealed because, after that date, defendant allegedly "continued to make misrepresentations regarding the lawsuit"); *In re Loewen Group Inc. Sec. Litig.*, 395 F. Supp. 2d 211, 218 (E.D. Pa. 2005) ("Plaintiffs have pleaded loss causation adequately by alleging that they purchased TLGI stock at an inflated price and lost money when the price fell.... Because the existence and significance of any losses is unclear, loss causation is an inappropriate ground for summary judgment.").

## II. Defendants' Motion to Strike Prematurely Adjudicates Merits Issues Prior to Discovery and, Therefore, Should Be Denied.

Defendants' alternative request to strike also lacks merit and would unfairly prejudice Plaintiffs. The "ability to strike is considered to be drastic, and is often disfavored." *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002); *accord Martinez v. Cherry Bekaert, LLP*, 2021 U.S. Dist. LEXIS 185165, at *2 (S.D. Fla. Sep. 28, 2021) ("[M]otions to strike are generally disfavored and should not be used to determine disputed questions of fact or disputed and substantial questions of law—particularly when there is no showing of prejudice to the movant[.]"). "A motion to strike will usually be denied unless the allegations have **no possible relation** to the controversy and may cause prejudice to one of the parties." *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1218 (S.D. Fla. 2010).

Further, courts routinely deny motions to strike where, as here, granting the relief would result in summarily adjudicating a matter without the benefit of discovery. *See Achievement &*

15

*Rehab. Ctrs., Inc. v. City of Lauderhill*, 2012 U.S. Dist. LEXIS 173139, at *3 (S.D. Fla. Dec. 5, 2012) ("Motions to strike should not be used to obtain a summary adjudication on the merits; the Federal Rules provide other mechanisms for achieving such ends."); *accord EEOC v. Univ. of Miami*, 2020 U.S. Dist. LEXIS 91813, at *7 (S.D. Fla. May 22, 2020). For example, in *EEOC v. University of Miami*, the plaintiff sought to strike one of the defendants' affirmative defenses. 2020 U.S. Dist. LEXIS 91813, at *16-*19. The court denied the motion on the basis that its decision to deny the defendants' motion to dismiss did not foreclose the possibility that additional evidence could be "developed . . . during discovery and presented at summary judgment." *Id*. at *19.

Similarly, in *Molina v. SMI Security Management*, the court refused to strike an affirmative defense because "[d]etermining the viability of defenses . . . is not appropriate in the context of a motion to strike" when the issue can be addressed after an opportunity for discovery during summary judgment. 2013 U.S. Dist. LEXIS 205722 at *15-*16 (S.D. Fla. Mar. 22, 2013); *see also Linco Enters. v. Firer*, 2021 U.S. Dist. LEXIS 179008, at *8 (S.D. Fla. Sep. 17, 2021) (denying motion to strike where defense "raise[d] substantial questions of law" and was "more appropriately adjudicated following the appropriate factual development of this case").

Defendants cannot meet those standards or articulate any colorable basis for using a motion to strike to line edit the SAC. Pursuant to the Court's MTD Order, Plaintiffs filed the SAC alleging only the claims that had been upheld—*i.e.*, the claims based on Defendants' statements about the pending lawsuits—and omitting those that were dismissed. As instructed, Plaintiffs **deleted the dismissed false and misleading statements and did not add allegations**.

Nonetheless, Defendants take issue with the SAC's contextual narrative of GEO's operations and struggles—all of which bear upon why GEO faces litigation risks and how GEO addresses, withstands, and/or suffers from those risks. Indeed, the allegations provide context to the litigation risks that are central to this case:

- As a REIT, GEO depended on capital investors to fund its operations and maintain a stable dividend, however due to GEO's ongoing litigation, at least in part, the Company's access to capital was depleted [including ¶¶4-12, 14-17, 21-22, 24, 49-53, 57, 75-80, 83-84, 106, 122-26, 132, 141, 145-49 or parts thereof];

- GEO is required to maintain and operate its facilities in compliance with a host of contractual and regulatory requirements, while satisfying standards of due process and human rights [including ¶¶5, 54-56 or portions thereof];

- GEO's inability to properly manage its facilities (in general, and in response to COVID-19) resulted in ever mounting public scrutiny, government investigations and fines, facility closures and/or contract terminations, and decades of ongoing related litigation [including ¶¶ 13, 16-24, 54-56, 58, 61-74, 81-82, 85-105, 131, 133-34, 137-38, 142, 144-45, 149 or parts thereof]; and

- Defendants' false and misleading statements about the pending lawsuits and the risk of the litigation having a materially adverse effect on the Company's financial condition, results of operations, or cash flow continued throughout the Class Period, with the truth slowly revealed through a series of partial corrective disclosures until the truth was fully revealed and materialized in the reduction of its dividends [including ¶¶10-12, 19-22, 24, 74, 83, 106, 115-27, 129-38, 141-42, 144-49, 155 or parts thereof (as well as references thereto in Appendix A)].

Notwithstanding the connection between these allegations and Plaintiffs' remaining claims, Defendants ask the Court to strike those portions of Plaintiffs' SAC as "immaterial and impertinent" under Rule 12(f). *See* Mot. at 11-14. More specifically, Defendants ask the Court to strike 108 paragraphs of the 180 paragraphs alleged in the SAC. *See* Mot., Exhibit 1 (ECF No. 47-1). In effect, Defendants seek a holding that numerous aspects of GEO's operations and struggles could not possibly be relevant to the truth, falsity, or materiality of GEO's statements and omissions about litigation; to the characteristics or severity of GEO's litigation risks; to the potential or realized effects that litigation had on GEO's operations, financial results, and dividends; or to the knowledge or recklessness of GEO or any employee, officer, executive, or director whose state of mind is imputable to GEO. Defendants' request amounts to a premature order limiting the scope of discovery, granting summary judgment, and granting motions in limine.

Accordingly, Defendants' request is improper, as well as prejudicial to Plaintiffs. The SAC dictates the scope of discovery and the allegations Plaintiffs seek to prove. It includes the contextual and direct allegations that support the falsity of Defendants' statements, Defendants' scienter, loss causation, and damages. For example, the SAC sets forth the operations, strains, and

17

results that are relevant to the misrepresented litigation risks causing "deep[ ] alarm[ ]" to Defendant Zoley and GEO's subsequent dividend cut to preserve capital—allegedly the capital needed to protect against litigation costs and liability. In discovery, Plaintiffs will obtain further proof as to the practices and operations at issue in GEO's wide-ranging litigation, the status of that litigation, the extent of GEO's litigation costs, the involvement of GEO's executives, the reasons for publicly denying the effects and risks of the litigation, and the reasons behind GEO's dividend reduction. *See* Plaintiffs' First Request for Production of Documents dated October 18, 2021 ("First Requests").[4]

In sum, Defendants seek to circumscribe the entire litigation process. They ask the Court to limit the case to a handful of allegations that Defendants deem relevant. The practical effect would be a holding that the allegations have **no possible bearing on any aspect** of falsity, scienter, loss causation, or damages; that discovery cannot relate to those allegations; and that those allegations are dismissed with prejudice such that they should not be considered at summary judgment or trial. When properly framed therefore, Defendants' motion to strike is baseless and would severely prejudice Plaintiffs at this nascent stage in the litigation. Thus, Plaintiffs respectfully request that the Court deny the Motion in full.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety.

DATED: November 1, 2021

Respectfully submitted,

**ROCHE FREEDMAN LLP**

*/s/ Constantine P. Economides*
Constantine P. Economides (FL# 118177)
Velvel (Devin) Freedman (FL# 99762)
Ivy T. Ngo (*pro hac vice*)
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel.: (305) 851-5997
ceconomides@rochefreedman.com
vel@rochefreedman.com
ingo@rochefreedman.com

---

[4] Plaintiffs served their First Requests "early" under Rule 26(d)(2). Request Nos. 18-22, among others, specifically seek material and relevant information on the issue of GEO's legal expenses and their impact on the dividend. Defendants presently refuse to engage in a Rule 26(f) conference or otherwise provide discovery in response to Plaintiffs' Requests.

18

**LEVI & KORSINSKY, LLP**
Adam M. Apton
Nicholas I. Porritt
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel.: (202) 524-4290
Fax: (202) 333-2121
aapton@zlk.com
nporritt@zlk.com

*Co-Lead Counsel for the Class*

**CULLIN O'BRIEN LAW, P.A.**
Cullin O'Brien (FL# 0597341)
6541 NE 21st Way
Fort Lauderdale, Florida 33308
Tel.: (561) 676-6370
Fax: (561) 320-0285
cullin@cullinobrienlaw.com

*Additional Counsel for Lead Plaintiff*
*James Michael DeLoach*
**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Tel.: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*
*Edward Oketola*

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

/s/ Constantine P. Economides
Constantine P. Economides (FL# 118177)

20