UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:20-cv-81063-RS

STEVE HARTEL, Individually and on
Behalf of All Others Similarly Situated,

     Plaintiff,

v.

THE GEO GROUP, INC. and
GEORGE C. ZOLEY,

     Defendants.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
LEAD PLAINTIFFS' CONSOLIDATED CLASS ACTION
SECOND AMENDED COMPLAINT [ECF NO. 46],
OR ALTERNATIVELY, MOTION TO STRIKE,
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

| | |
|---|---|
| **AKERMAN LLP** | **GUNSTER, YOAKLEY & STEWART, P. A.** |
| Three Brickell City Centre | 600 Brickell Avenue, 35th Floor |
| 98 Southeast Seventh Street | Miami, FL 33131 |
| Suite 1100 | Telephone: (305) 376-6000 |
| Miami, FL 33131 | Facsimile: (786) 425-4090 |
| Telephone: (305) 374-5600 | William K. Hill, Esq. |
| Facsimile: (305) 374-5095 | Florida Bar No. 747180 |
| Brian P. Miller, Esq. | whill@gunster.com |
| Florida Bar No. 0980633 | George S. LeMieux, Esq. |
| brian.miller@akerman.com | Florida Bar No. 16403 |
| Samantha J. Kavanaugh, Esq. | glemieux@gunster.com |
| Florida Bar No. 0194662 | Ernest "EJ" A. Cox IV, Esq. |
| samantha.kavanaugh@akerman.com | Florida Bar No. 124652 |
| | ecox@gunster.com |

*Counsel for Defendant The GEO Group, Inc.*

*Counsel for Defendant George C. Zoley*

60712749

Defendants hereby submit their reply in support of their Motion to Dismiss Lead Plaintiffs' Consolidated Class Action Second Amended Complaint, or Alternatively, Motion to Strike [ECF No. 47].[1]

<h2 style="text-align:center"><u>INTRODUCTION</u></h2>

Plaintiffs' Opposition to the Motion ("Opposition" or "Opp.") [ECF No. 52] inaccurately portrays Defendants' Motion as an effort to relitigate issues already decided by the Court and to delay the progress of this lawsuit.  Despite Plaintiffs' self-serving contention that they have "adhered strictly to [the Court's] directive," (Opp. at 1), even a cursory review of the Third Complaint reveals that it goes well beyond the narrow bounds outlined by the Court and exceeds Plaintiffs' leave to amend.  Defendants' Motion is not about "limit[ing] the case" to the "allegations that Defendants deem relevant."  Opp. at 18.  Rather, Defendants filed their Motion to address Plaintiffs' disregard of the Court's Motion to Dismiss Order as reflected in their Third Complaint, to ensure that the operative complaint complies with the Motion to Dismiss Order's parameters by omitting the numerous allegations the Court has already rejected and/or deemed irrelevant, and to streamline this lawsuit as the Court instructed.

Plaintiffs openly flaunt that aside from deleting specific allegations related to many of the alleged statements the Court found non-actionable (primarily from Section IV., E of the Third Complaint), they "otherwise left the pleading intact" when crafting the Third Complaint from the Second Complaint.  Opp. at 5; *see also* Ex. 1 to Third Complaint.  The length of the Third Complaint is illustrative: while the Second Complaint spanned 104 pages, the Third Complaint consists of 72 pages.  This is remarkable given that the Court rejected nearly all of the sixty-one statements asserted in the Second Complaint as non-actionable.  The Court found that only four statements—relating to the singular topic of pending litigation—were adequately pled.  To put a finer point on it, the Court's narrowing related specifically to GEO's pending *detainee* litigation, as made clear from its analysis throughout the Motion to Dismiss Order—including in the loss causation and scienter sections—that centrally discussed GEO's communications with ICE regarding the costs associated with those detainee lawsuits and the public disclosure of that information.

---

[1]  Capitalized terms not defined herein have the meanings ascribed in Defendants' Motion.

1

Plaintiffs attempt to justify their lack of substantive deletions—and the inclusion of lengthy impertinent and immaterial allegations—as "contextual background and narrative of GEO's operations, pressures, risks, and results."  Opp. at 2.  But it is clear that these allegations are remnants of the subject areas and topics the Court already dismissed from the case and do not relate to the very discrete claims upheld by the Court.  These irrelevant allegations seek to unnecessarily expand the bounds of this case, to Defendants' prejudice.

With respect to loss causation, the Court should reject Plaintiffs' misguided view that they are entitled to include allegations of purported corrective disclosures other than the single corrective disclosure this Court found adequately pled.  Plaintiffs' position is nonsensical.  The only alleged corrective disclosures in the Second Complaint that the Court found plausibly pled loss causation were the disclosures alleged related to the July 17-19, 2019 stock drop.  The Court did *not* find any other alleged corrective disclosures were adequately pled.

And the Court must similarly ignore Plaintiffs' attempt to conflate Defendants' loss causation argument with a "truth-on-the-market" defense.  The Motion to Dismiss Order found that the "truth-on-the-market" defense was not a basis for dismissal at that stage of the proceedings.  But loss causation and the "truth-on-the-market" defense are distinct concepts.  Indeed, they were addressed separately in the Motion to Dismiss Order.  ECF No. 45 at Sections III, E & F.  Defendants' argument here is that the Court already ruled that only one alleged corrective disclosure adequately pled loss causation and, in light of that ruling, the Third Complaint fails to plead the causal connection between any post-July 2019 alleged misstatement and any post-July 2019 alleged corrective disclosure.  As such, Plaintiffs' vain attempt to re-characterize Defendants' arguments to avoid the Court's scrutiny of the true loss causation pleading issue must be disregarded.

Finally, Plaintiffs' attempt to portray Defendants as obstructionist because they have filed three motions to dismiss is meritless.  Each motion has been appropriate and warranted—indeed, the Court already determined the first two were justified, and sustained the overwhelming majority of Defendants' arguments in its Motion to Dismiss Order.[2]  The Court should disregard Plaintiffs'

---

[2]     Defendants moved to dismiss the First Complaint and were well-within their rights to promptly proceed in that manner.  Indeed, allowing a "placeholder" complaint to go unchallenged pending appointment of lead plaintiff—which is what Plaintiffs argue should have happened— would not only condone the filing of deficient complaints but would even *encourage* them in a

disparagements and instead see Plaintiffs' Opposition for what it is: a feeble defense of their refusal to adhere to this Court's directive.

Alternatively, the Court should exercise its broad discretion to strike the vast irrelevant passages to streamline the litigation.

## **ARGUMENT**

### A.   **PLAINTIFFS CANNOT PLEAD LOSS CAUSATION FOR ALL THEIR ALLEGED MISSTATEMENTS**

Plaintiffs do not dispute that the Third Complaint is subject to heightened pleading standards, which include: (1) the federal notice pleading requirements; (2) the special fraud pleading requirements found in Federal Rule of Civil Procedure 9(b); and (3) the PSLRA's pleading requirements.   Plaintiffs do not dispute that those standards require that they must adequately plead loss causation, the "causal connection between the material misrepresentation and the loss [incurred.]"  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).

The Parties also agree that the Court has ruled that Plaintiffs sufficiently pled loss causation in the Second Complaint with respect to four statements regarding the pending detainee litigation that occurred prior to allegations of a stock drop in July 2019:

> The Court will only address whether Plaintiffs have sufficiently pled loss causation *as to the remaining claims* – the claims based on Defendants' statements about the pending lawsuits.  Plaintiffs have pled that on July 17, 2019, reputable news sources published articles revealing GEO's requests to ICE to help cover the costs of litigation because GEO could not bear the costs of defense on its own.  Over the

race to the court.  Despite Plaintiffs' indignance, "[t]here is nothing in the PSLRA requiring a district judge to stay a motion to dismiss so that a plaintiff can assign lead counsel and file a Consolidated Complaint."  *Grobler v. Neovasc, Inc.*, Case No. 1:16-cv-11038-RGS (D. Mass July 29, 2016) (ECF No. 22).  Permitting a complaint to in effect be a "nullity" also violates federal pleading requirements.  *See, e.g., In re Engle Cases*, 767 F.3d 1082, 1113 (11th Cir. 2014) (noting filing "placeholder actions" "would run counter" to Rule 11).

In any event, the Court recognized the propriety of the motion to dismiss the First Complaint: it was granted in part and the First Complaint was dismissed without prejudice. *See* ECF No. 30.  Defendants' motion to dismiss the Second Complaint was also granted in part.  The Court dismissed both the § 10(b) and § 20(a) counts in their entirety against defendants Evans, Donahue, and Schlarb.  The Court further found that nearly *all* of the statements alleged by Plaintiffs to be false or misleading were not actionable for a variety of reasons.  Ultimately, of the sixty-one statements Plaintiffs alleged to be false or misleading, the Court dismissed the claims based on all but four statements regarding pending lawsuits.  The filing of all three motions to dismiss has been proper, warranted, and necessary.

3

60712749

next two days, GEO's share price fell over 7.9%. This is sufficient to plead loss causation.

ECF No. 45 at 24 (emphasis added).

As expected, this loss causation allegation is repeated in the Third Complaint:

[O]n July 17, 2019, after the market opened, reputable news sources published articles such as "GEO Wants Taxpayers to Foot Bill for Private Prison Exploitation," revealing GEO's pleas to ICE to help cover litigation costs stating in relevant part, "GEO cannot bear the costs of this defense on its own" and "[w]e urgently implore DOJ to take over the defense of these lawsuits and reimburse GEO for its costs." On this news, indicating the Company's serious concern that these lawsuits could have a material effect on its financial condition, results of operations or cash flow, GEO's share price fell over 7.9%, or $1.48 per share, to close at $17.24 per share on July 19, 2019 after two days of heavy trading.

ECF No. 46 at ¶ 128. *See also* ECF No. 33 at ¶ 207.

However, the Third Complaint expands the scope beyond that contemplated in the Motion to Dismiss Order by including allegations regarding eight purported false or misleading statements; four of which occur *after* July 17, 2019, the date that the Court ruled was the trigger for loss causation purposes. *See* ECF No. 46 at ¶¶ 115-122 & Appendix A. The crux of the dispute here is that Plaintiffs focus on what the Court *could* have found in its order, while Defendants focus on what the Court *did* find.

Plaintiffs have not identified anything in the Motion to Dismiss Order—a 27-page detailed analysis—to support that the Court determined that the Second Complaint adequately pled loss causation based on any other purported corrective disclosures. Nor can they. The Court was clear that the remaining claims that can proceed only relate to statements on the narrow subject of GEO's pending detainee litigation. This is readily apparent from the Motion to Dismiss Order's analysis, where the Court's discussions about both loss causation and scienter revolve around the allegations of Zoley's May 2018 letter to ICE seeking reimbursement in connection with lawsuits brought by detainees against GEO, and the July 2019 news reports regarding that prior correspondence. *See* ECF No. 45 at 23-26. Plaintiffs themselves recognize that the basis for the Court's finding that loss causation and scienter were adequately pled relates *only* to the detainee lawsuits. *See, e.g.,* Third Complaint at ¶ 61 ("This class action was the first of a series of lawsuits questioning GEO's practice of forcing detainees to do manual labor for $1 a day (sometimes less) or face solitary confinement. GEO itself characterized *these lawsuits* as a 'potentially catastrophic risk' in

4

communications to ICE…") (emphasis added). There can be no doubt that the only allegations the Court has allowed to move forward relate to any alleged misstatements *regarding the detainee suits*, and prior to the July 2019 alleged disclosure.[3] And Plaintiffs do not sufficiently allege any other corrective disclosure regarding the pending detainee litigation.

Nevertheless, Plaintiffs' Opposition illogically submits that just because the Court found loss causation was plausibly alleged based upon a single alleged corrective disclosure, Plaintiffs are free to assert allegations of other purported disclosures that occurred *after* July 2019. Like the prior complaint, the Third Complaint continues to allege that "the truth was revealed in a series of corrective disclosures – including those on March 5, 2019, March 10, 2019, March 12, 2019, July 11, 2019, July 17, 2019, March 9-10, 2020, June 17, 2020, July 16, 2020 and August 6, 2020." ECF No. 46 at ¶ 155. But other than the July 2019 disclosure the Court has found adequate, none of these other alleged corrective disclosures relate to GEO's detainee litigation.

A review of the alleged corrective disclosures demonstrates that, other than the July 17, 2019 disclosure, none have any relation to the detainee litigation at issue in this lawsuit:

- March 5, 2019 – an announcement that JP Morgan had decided to stop financing private operators of prisons and detention centers. *Id.* at ¶¶ 10, 123.

- March 10, 2019 – an announcement that U.S. Bank "had reduced its credit exposure" to GEO and another company. *Id.* at ¶¶ 10, 124.

- March 12, 2019 – a statement from Wells Fargo that they will exit its relationship with the private prison industry. *Id.* at ¶¶ 10, 124.

- July 11, 2019 – an NBC News article indicating political pressure on for-profit prisons. *Id.* at ¶ 127.

- July 17, 2019 – an article regarding GEO's request to ICE regarding litigation costs (the alleged corrective disclosure the Court found adequately pled with respect to the remaining claims). *Id.* at ¶ 128.

---

[3] Despite the Court's clear direction, the Third Complaint still includes allegations related to completely unrelated lawsuits involving GEO, such as over California's Assembly Bill 32 (AB-32) that sought to bar the federal government from engaging GEO or any other government contractors to provide detention services for illegal aliens. *See, e.g.* Third Complaint at ¶¶ 119-120. It should be noted though that GEO was successful in having this law found to be invalid as discriminatory against the federal government and thus violative of intergovernmental immunity. *See The GEO Grp., Inc. v. Newsom*, 15 F.4th 919 (9th Cir. 2021).

5

60712749

- March 9-10, 2020 – a request for information was sent to GEO from U.S. Senators regarding policies and procedures to prevent the spread of COVID-19 and a news article regarding Delaware County, Pennsylvania's decision to terminate its contract with GEO. *Id.* at ¶¶129, 130, 131.

- June 17, 2020 – the announcement by a GEO competitor that the competitor was suspending its quarterly dividend and an article regarding COVID-19 outbreaks at GEO facilities. *Id.* at ¶¶ 132, 133, 134.

- July 16, 2020 – reports that a federal judge upheld California's ban on private prison contracts. *Id.* at ¶¶ 135, 136.

- August 6, 2020 – reports that GEO and ICE were required to conduct weekly COVID-19 tests at a facility and GEO announced a reduction in its quarterly dividend. *Id.* at ¶¶ 137, 138.

Plaintiffs' Opposition predominately addresses the August 6, 2020 alleged corrective disclosure, the latest alleged disclosure (perhaps to ask for an artificially inflated class period). Plaintiffs avoid focusing on their other purported corrective disclosures, which similarly have no relation whatsoever to the only claim at issue, based on GEO's four statements on detainee litigation. Defendants' Motion does not seek to relitigate issues; rather it is ***Plaintiffs*** who seek to relitigate whether they have adequately pled a corrective disclosure for any date *other* than July 2019.

The cases cited by Plaintiffs are unavailing. Defendants do not dispute the general proposition that a corrective disclosure *could* be established by a single disclosure or a series of partial disclosures. But the Court already considered this issue and identified only one that was adequately pled. Unlike *Luczak v. Nat'l Beverage Corp.,* 812 F. App'x 915 (11th Cir. 2020) cited by Plaintiffs, the Court here *did* analyze loss causation.[4] The Third Complaint fails to adequately plead how the dividend cut in August 2020—or any of the other purported disclosures—revealed any *new* information *about the pending litigation. See Sapssov v. Health Mgmt. Assocs., Inc.*, 608 F. App'x 855 (11th Cir. 2015).

Plaintiffs' own cases are distinguishable and do not help their cause. For example, Plaintiffs rely on a non-binding Ninth Circuit decision for support that they have sufficiently pled

---

[4]     *Luczak* is an unpublished opinion and is not binding precedent. *See* U.S. Ct. of App. 11th Cir. Rule 36-2.

60712749

loss causation.  *See In re Gilead Sciences Securities Litigation*, 536 F.3d 1049 (9th Cir. 2008).  In *Gilead*, investors sued the biopharmaceutical company related to alleged misleading claims about demand for its product following a stock drop three months later.  The district court found that the factual and logical gaps were too large to plead loss causation and dismissed the complaint.  While the Ninth Circuit did reverse the dismissal there, the plaintiffs had alleged "abundant details" regarding the facts.  *Id.* at 1056.  In contrast, the lack of allegations in the Third Complaint preclude loss causation for any of the post-July 2019 statements here.  There are too many gaps that exist in Plaintiffs' theory to find loss causation adequately pled for any other purported corrective disclosure beyond the July 2019 stock reaction.  And certainly it is unreasonable for Plaintiffs to suggest that a disclosure in July 2019 led to a price drop more than a full year later.  As the *Gilead* court noted, while any misrepresentation need not be the only reason for the decline in value of the securities, it must be a "substantial cause."  *Id.* at 1055-56.  Plaintiffs must show that any alleged misrepresentation was a "substantial cause" for the decline in value of the securities.  Here, Plaintiffs have not pled that any failure to disclose the financial risk from the pending lawsuits against GEO was a substantial cause of any of the other stock price movements post-July 2019.

Similarly, Plaintiffs' reliance on the *BankAtlantic* case does not support a determination that loss causation has been adequately pled here.  *See In re BankAtlantic Bancorp, Inc.,* 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.,* 688 F.3d 713 (11th Cir. 2012).  As an initial matter, the opinion cited by Plaintiffs was in a wholly different procedural posture—*i.e.*, an Order on a Motion for Judgement as a Matter of Law and Motion for New Trial.  Nonetheless, the case is distinguishable based on the factual allegations at issue.  In *BankAtlantic*, plaintiffs alleged misrepresentations that concealed the true quality and consequent value of certain assets in the bank's loan portfolio.  The bank distinguished two different types of loans in its portfolio, both of which faced serious risks.  *Id.* at *11.  During an earnings call, the CEO differentiated between the two types and expressed concern only about one type.  *Id.* at *12-13.  Months later, the bank reported a loss that was due in part to non-performing loans, including the type where risks were not disclosed.  *Id.* at *14-15.  The court determined that a jury could have found that the CEO's statement about risks concealed material information.  *Id.* at *15-16.  By contrast here, the Third Complaint does not plead any causal link because none of the other corrective disclosures reveal new information or even directly address the pending litigation.  Plaintiffs ask the Court to take a huge inferential leap that is not justified

7

or warranted. Plaintiffs' baseless allegations that simply point to a stock drop, without more, are insufficient.

The Motion to Dismiss Order rejects any allegations after July 2019. The Court should dismiss the Third Complaint because it cannot adequately and plausibly plead loss causation with respect to the four post-July 2019 statements.

**B.      ALTERNATIVELY, THE COURT SHOULD STRIKE THE IMMATERIAL AND IMPERTINENT PORTIONS OF THE THIRD COMPLAINT**

Plaintiffs' Opposition exemplifies the prejudice that Defendants would face if the Third Complaint is permitted to stand. Notwithstanding the Court's intention to narrow this lawsuit, Plaintiffs argue that essentially *every aspect* of GEO's business is germane to this case, including but not limited to (*see, e.g.,* Opp. at 16-17):

- allegations regarding GEO's operations;
- allegations regarding GEO's contractual and regulatory requirements;
- allegations regarding GEO's access to capital;
- allegations regarding GEO's services and quality of care;
- allegations regarding GEO's dividends and cash flows;
- allegations regarding facility-specific issues; and
- allegations regarding GEO's response to infectious diseases and COVID-19.

As explained above and in Defendants' Motion, allegations regarding any other alleged corrective disclosure or allegations post-July 2019 are irrelevant, impertinent, and immaterial, and will only expand and confuse the issues. Not only do Plaintiffs argue all of these allegations are appropriate as "contextual" background, they also believe these wide-ranging subjects are proper for broad fishing expeditions in discovery.

Contrary to Plaintiffs' suggestion, Defendants are not seeking premature rulings on the merits or otherwise. Rather, Defendants ask the Court to exercise its broad discretion, in light of the rulings in the Motion to Dismiss Order, "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Halmu v. Beck*, 2021 WL 980912, at *5 (S.D. Fla. Mar. 15, 2021). The paragraphs and portions thereof highlighted on Exhibit A to the Motion to Dismiss have no value in developing the remaining issues in this case. *See Blake v. Batmasian*, 318 F.R.D. 698, 700 n.2 (S.D. Fla. 2017). And they have no relationship to the very limited claims

8

60712749

the Court has determined may proceed.  *See K. Hansotia & Co. Inc. v. Einalem LLC*, 2019 WL 7708241, at *1 (S.D. Fla. May 13, 2019).

In their Motion, Defendants posited that there was a substantial likelihood of time-consuming and expensive disputes over the proper scope of discovery based on Plaintiffs' improper and overreaching Third Complaint containing impertinent and immaterial allegations. Plaintiffs have effectively demonstrated this concern.  Despite being aware that Defendants were about to file their Motion, Plaintiffs nevertheless prematurely and improperly "served" GEO with their first set of requests for production, prior to any Rule 26(f) discovery conference in violation of the Rules of Civil Procedure.  Defendants' predictions are now reality:  Plaintiffs seek to inquire into a whole host of irrelevant topics that will not ultimately further the actual claims in this litigation.[5]  Plaintiffs must be properly restrained consistent with the Motion to Dismiss Order, or Defendants will be prejudiced.

## CONCLUSION

Nothing in Plaintiffs' Opposition alters the fact that Plaintiffs' Third Complaint significantly deviates from the Court's Motion to Dismiss Order.  Despite the Court's dramatic narrowing of this case, Plaintiffs persist in their effort to unduly enlarge the scope of this lawsuit by including large swaths of impertinent and immaterial allegations that bear no relationship to the claims this Court has permitted.  Plaintiffs continue to assert claims based on four statements, post-July 2019, that the Court found non-actionable.  Plaintiffs have therefore exceeded their grant of leave to amend.  The Court should reject Plaintiffs' false claims of prejudice to their ability to prosecute this case, which in reality are appeals to the Court to reconsider the dismissal of the bulk of their claims as set forth in the Motion to Dismiss Order.

For the foregoing reasons and those set forth in their Motion, Defendants respectfully request that the Court dismiss the Third Complaint, or in the alternative, strike the impertinent and immaterial allegations to streamline the case and preclude the foray into irrelevant matters. Defendants also seek such other and further relief as the Court deems just and proper.

---

[5]     For example, Plaintiffs intend to seek irrelevant, impertinent, and overly broad categories of documents—including those already dismissed from this case—such as "[d]ocuments and communications concerning GEO's quarterly dividend," and "[d]ocuments and communications concerning any press release, published article, financial analysts' report and/or rating agencies' report relating to or concerning GEO."

Dated: November 8, 2021

Respectfully submitted,

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street
Suite 1100
Miami, FL 33131
Telephone: (305) 374-5600
Facsimile: (305) 374-5095

By: /s/ *Brian P. Miller*
  Brian P. Miller, Esq.
  Florida Bar No. 0980633
  brian.miller@akerman.com
  Samantha J. Kavanaugh, Esq.
  Florida Bar No. 0194662
  samantha.kavanaugh@akerman.com

*Counsel for Defendant The GEO Group, Inc.*

**GUNSTER, YOAKLEY & STEWART, P. A.**
600 Brickell Avenue, 35th Floor
Miami, FL 33131
Telephone: (305) 376-6000
Facsimile: (786) 425-4090

By: /s/ *William K. Hill*
  William K. Hill, Esq.
  Florida Bar Number: 747180
  whill@gunster.com
  George S. LeMieux, Esq.
  Florida Bar Number: 16403
  glemieux@gunster.com
  Ernest "EJ" A. Cox IV, Esq.
  Florida Bar Number: 124652
  ecox@gunster.com

*Counsel for Defendant George C. Zoley*

60712749