**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 9:20-81063-CIV-SMITH**

STEVE HARTEL, Individually and on Behalf
of All Others Similarly Situated,

        Plaintiff,

      v.

THE GEO GROUP, INC. and GEORGE C.
ZOLEY,

        Defendants.

## LEAD PLAINTIFFS' MOTION TO COMPEL RULE 26 CONFERENCE OR, ALTERNATIVELY, MOTION TO LIFT DISCOVERY STAY

Lead Plaintiffs James Michael DeLoach ("DeLoach") and Edward Oketola ("Oketola") (together, "Lead Plaintiffs" or "Plaintiffs") respectfully move this Court for entry of an Order compelling Defendants to complete a Rule 26 discovery conference, as required by the Federal Rules of Civil Procedure and the Southern District of Florida's Local Rules. In the alternative, and to the extent it remains in place, Plaintiffs seek the entry of an Order lifting the stay imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## INTRODUCTION

Plaintiffs are entitled to relief from Defendants' improper refusal to participate in discovery. On September 23, 2021, this Court issued its Motion to Dismiss Order ("MTD Order"), granting in part and denying in part Defendants' Motion to Dismiss Lead Plaintiffs' Consolidated Class Action Amended Complaint. *Hartel v. GEO Group, Inc.*, No. 20-81063-CIV-SMITH, 2021

WL 4397841 (S.D. Fla. Sept. 23, 2021). The Court recognized that Plaintiffs had stated viable securities fraud claims against Defendants GEO Group, Inc. ("GEO") and George C. Zoley ("Zoley" and together with GEO, "Defendants") and included a detailed analysis regarding whether various categories of statements made by the Defendants and included in Plaintiffs' Amended Complaint were actionable. The Court also instructed Plaintiffs to file an amended pleading without allegations "based on statements that the Court has found non-actionable as forward looking or as puffery, corporate optimism, or opinion," and without "add[ing] any additional statements as the basis of its claims." *Id*. at \*15. Plaintiffs adhered strictly to this directive, ensuring that the Second Amended Complaint ("SAC") did not contain the dismissed misstatements or omissions and did not add any new misstatements or omissions. *See* SAC (ECF No. 46) at ¶¶106-22. The Order did not include an invitation to Defendants to file a successive motion to dismiss aimed at rearguing issues already resolved by the Court.

On October 18, 2021—despite the Court's unambiguous holding that Plaintiffs had already stated viable claims in their Amended Complaint (which simply needed to be re-pled in accordance with the Court's instructions)—Defendants filed a motion to dismiss or, alternatively, motion to strike the SAC (the "Motion to Dismiss or Strike") (ECF No. 47). As Defendants' *third* attempt to dismiss Plaintiffs' case at the pleading stage, the Motion to Dismiss or Strike does nothing more than relitigate issues the Court previously resolved in the MTD Order.

On the same date, Plaintiffs served GEO with requests for production ("RFPs") pursuant to Federal Rule of Civil Procedure 26(d)(2), seeking the categories of particularized discovery relating to Plaintiffs' surviving claims. Plaintiffs subsequently attempted to schedule and complete a discovery conference with Defendants, as required by Federal Rule of Civil Procedure 26(f) and Southern District of Florida Local Rule 16(b)(1). But Defendants have refused to schedule or

participate in the mandatory conference, citing the PSLRA provision that stays discovery during the pendency of a motion to dismiss. Defendants have also refused to respond to the RFPs, which were now served over three months ago, until the Rule 26(f) conference.[1]

Without judicial intervention, Defendants will be able to use the PSLRA's discovery stay provisions to unfairly delay the progression of this case and, in so doing, unduly prejudice Plainitffs' ability to obtain evidence in support of their allegations. The events at issue in this case date back to November 2018. As more time elapses, memories will grow even more stale and Plaintiffs face the risk of documents being lost or misplaced, specifically those that are presently being maintained by third-parties who are not subject to the same document preservation rules as the parties. Defendants should not be able to force a discovery stay in this matter simply by moving to reargue the issues already decided by this Court. Defendants should be compelled to participate in the Rule 26(f) conference and commence discovery.

## **ARGUMENT**

The PSLRA provides that discovery in a securities fraud class action is stayed during the pendency of a motion to dismiss, but the statute also expressly contemplates that the discovery stay can be lifted or modified under appropriate circumstances:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, ***unless*** the court finds upon the motion of any party that ***particularized discovery is necessary to preserve evidence or to prevent undue prejudice*** to that party.

---

[1] Fed. R. Civ. P. 26(d)(1) states that a "party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Subsection (2) of the Rule further addresses "early" discovery requests and states, in relevant part, that "[m]ore than 21 days after the summons and complaint are served on a party, a request under Rule 34 may be delivered to that party by any other party … The request is considered to have been served at the first Rule 26(f) conference." Fed. R. Civ. P. 26(d)(2)(A)-(B).

15 U.S.C. §78u-4(b)(3)(B) (emphasis added). Congress enacted the discovery stay to prevent plaintiffs from filing securities class actions with the intent of using the discovery process to force a coercive settlement. See H. Rept. No. 104-369H. Rept. No. 104-369 (Nov. 28, 1995). The stay provision "deters these so-called 'strike suits' and 'fishing expeditions' by mandating that aside from certain exceptional circumstances, 'discovery … be permitted only after the court has sustained the sufficiency of the complaint." *In re Lernout & Hauspie Sec. Litig.*, 214 F.Supp.2d 100, 106 (D. Mass. 2002) (quoting Senate Report No. 104-98, at 14 (1995)).

However, that policy diminishes **after** the court has ruled that the complaint is legally sufficient:

> The purpose of the statutory stay is to prevent abusive, expensive discovery in frivolous lawsuits by postponing discovery until after the Court has sustained the legal sufficiency of the complaint. In a case where the court already *has* sustained the legal sufficiency of the complaint, this purpose has been served. To permit defendants indefinitely to renew the stay simply by filing successive motions to dismiss would be to invite abuse. Some judicial discretion to evaluate the desirability of a renewed stay appears to be necessary.

*In re Salomon Analyst Litig.*, 373 F.Supp.2d 252, 254-55 (S.D.N.Y. 2005) (emphasis in original) (internal quotation marks and citation omitted).[2] Consequently, the stay does not serve a purpose where a defendant files an additional motion to dismiss after the court has ruled that the case will

---

[2] Plaintiffs acknowledge that the *Salomon Analyst Litig.* court granted a stay pending a renewed motion to dismiss in light of intervening binding appellate authority decided after the court's resolution of the initial motion to dismiss. 373 F.Supp.2d at 254. No such intervening authority exists here. Nonetheless, the court's analysis regarding the potential for abuse where multiple motions to dismiss are filed (even after a court has found the plaintiff states a legally sufficient claim) provides useful guidance in this scenario. Additionally, the court noted that its primary reason for granting a stay was that the Second Circuit had issued an opinion on loss causation "in a context relevant to this case" in between the defendants' first and second motions to dismiss. *Id*. at 256. Due to the intervening change in law, which defendants suggested undermined the court's reasoning in denying the initial motion to dismiss, the court allowed a stay of discovery during its consideration of the arguments premised upon the new law. *Id*. No such intervening law that would justify a further stay of discovery has been cited by Defendants in their Motion to Dismiss or Strike.

4

proceed past the pleading stage into discovery. *See Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d at 105 (denying motion to stay discovery under PSLRA where motions to dismiss against four senior officer defendants had been denied and where other defendants' motions to dismiss remained pending; allowing discovery to proceed against the senior officer defendants); *In re LeapFrog Enterprise, Inc. Sec. Litig.*, No. 15-cv-00347-EMC, 2017 WL 3263114, at *1 (N.D. Cal. July 28, 2017) (noting that imposition of PSLRA stay based on the filing of a subsequent motion to dismiss could lead to abuse and observing that "[a] defendant could file repeated motions for leave to file a motion to reconsider or motions for reconsideration and prolong the PSLRA discovery stay.").

For two reasons, Defendants should participate in a Rule 26(f) conference and engage in discovery. First, the PSLRA discovery stay does not apply in this procedural posture. Second, even if the PSLRA discovery stay does apply, the stay should be lifted to allow Plaintiffs to proceed with discovery.

### A.     The PSLRA Discovery Stay Does Not Apply in This Procedural Posture.

The discovery stay has no purpose or effect under these circumstances. The MTD Order confirms that the case is proceeding against Defendants. Even if the Court agreed with Defendants' request to strike allegations from the Complaint—and there is no reason for the Court to do so (*see* ECF No. 52)—Defendants would still face securities fraud claims and participate in discovery. In other words, Defendants' Motion to Dismiss or Strike will dictate only whether particular allegations are stricken, not whether the case and current claims will proceed into discovery. By seeking discovery, therefore, Plaintiff does not intend to force a settlement or engage in a fishing expedition. Rather, Plaintiff seeks only to prosecute a securities fraud claim that the Court has already found to be legally sufficient.

In sum, this procedural posture should not and does not implicate the PSLRA discovery

stay. Accordingly, the Court should construe Defendants' Motion to Dismiss or Strike as a motion that does not implicate the PSLRA discovery stay.

**B. Even If the PSLRA Discovery Stay Does Apply, the Stay Should Be Lifted to Allow Plaintiffs to Proceed with Discovery.**

In order to obtain relief from the PSLRA discovery stay, a party must (1) request "particularized discovery," and (2) show that such discovery is necessary either "to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. §78u-4(b)(3)(B); *see In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, No. 05-MD-1725, 2007 WL 518626, at *4 (E.D. Mich. Feb. 15, 2007) (noting that if Congress had intended an absolute stay on discovery, it would not have authorized a judicial reprieve).As stated below, Plaintiffs' RFPs are both particularized and necessary to prevent undue prejudice, and the stay serves no useful purpose here. Therefore, the stay should be lifted.

**1. Plaintiffs' RFPs are particularized.**

The statutory exception to the discovery stay applies to "particularized discovery." 15 U.S.C. §78u-4(b)(3)(B). This requirement has been construed to mean that "the party seeking discovery under the exception must adequately specify the target of the requested discovery and the types of information needed to relieve [an undue burden]." *Lernout & Hauspie Sec. Litig.*, 214 F.Supp.2d at 108.; *see also Mori v. Saito*, 802 F.Supp.2d 520, 523-24 (S.D.N.Y. 2011) ("A request is considered 'particularized' for purposes of the PSLRA when 'it is directed at specific persons' and 'identifies specific types of evidence that fall within its scope.'").

Plaintiffs' RFPs are sufficiently particularized. Plaintiffs seek to obtain an identifiable universe of documents, including the production of documents that have already been submitted to government regulators, as well as others that relate to legal actions against and investigations into GEO. In addition, the subjects of Plaintiffs' RFPs are based on the Court's September 23,

2021 MTD Order. Far from a fishing expedition, therefore, Plaintiffs' targeted requests account for this Court's analysis on actionable misstatements, loss causation, and scienter. Thus, because the RFPs are sufficiently particularized, Plaintiffs readily satisfy the first prong for lifting the discovery stay.

### 2. Discovery is necessary to preserve evidence and/or prevent undue prejudice.

Courts recognize "that a delay may lead to the loss of evidence and frustrate a plaintiff's ability to put on an effective case." *De'Omilia Plastic Surgery, PC v. Sweeton*, No. 12-06415 (FLW), 2013 WL 6070037, at *4 (D.N.J. Nov. 18, 2013). "Plaintiffs have an interest in moving their case forward, and also in preventing any prejudice that an indefinite stay may cause as discoverable evidence may become lost or destroyed." *Id*. For two primary reasons, the imposition of a prolonged stay here would severely prejudice Plaintiffs and GEO investors.

First, the sheer length of the delay is prejudicial in the context of this case. As a federal securities class action, this case is governed by the PSLRA, and, therefore, unlike most cases, discovery was previously stayed until the Court ruled on Defendants' second motion to dismiss. In the months that have passed since that motion was denied, Defendants have not produced a single document. If the PSLRA stay is not lifted, fact discovery will not begin and may ultimately extend into the end of 2023 or beginning of 2024. The prejudice of delaying discovery until next year is amplified by the long period that has already passed between many of the events at issue in this case, given that the Class Period begins in 2018.

Second, Plaintiffs would be placed at a strategic disadvantage in this case as GEO continues to prepare its defense while Plaintiffs are left in the dark. Unlike a breach of contract case where each side has roughly the same information, investors are at a massive informational disadvantage, as the bulk of pertinent information comes from GEO's internal records. During the indefinite

delay that Defendants seek to perpetuate, Defendants will continue to have unfettered access to these documents, thereby gaining a multi-year head start in building their defense and formulating litigation strategy. Put simply, there is no need to prejudice Plaintiffs further by allowing Defendants' advantage to continue.

For example, Defendants assert in support of their Motion to Dismiss or Strike that an inference of scienter cannot be established where "GEO was addressing, and promptly disclosing, any challenges it faced in its business, such as relations with lenders, government customers, new legislation, and the COVID pandemic." ECF No. 36 at 19. Similarly, Defendants make several fact-specific arguments relating to their truth-on-the-market defense (*Id*. at 14), suggesting that various corrective disclosures eliminated the risk of deception in the marketplace—*i.e.*, the truth was on the market. Yet, while Defendants refuse to engage in discovery, Plaintiffs are left without the information to assess and respond to those arguments. To prevent undue prejudice, therefore, the Court should permit Lead Plaintiffs to access the documents concerning these issues. *See, e.g.*, *Westchester Putnam Heavy & Highway Laborers Local 60 Benefit Funds v. Sadia S.A*., No. 08 Civ. 9528 (SAS), 2009 WL 1285845, at \*1-2 (S.D.N.Y. May 8, 2009) (lifting the stay after finding that plaintiffs would have been unduly prejudiced without access to "a report issued at the conclusion of an internal investigation").

### 3. The purpose of the PSLRA will not be frustrated by lifting of any discovery stay.

As referenced above, the Congressional intent underlying the PSLRA discovery stay was to minimize incentives for plaintiffs to file "frivolous lawsuits" initiated only to conduct "fishing expedition[s]" in the hopes of finding a sustainable claim. *See* S. Rep. No. 104-98, at 14 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 693. Accordingly, numerous courts have reasoned that it is appropriate to lift the PSLRA discovery stay when it is clear that the plaintiff's claims are not

frivolous and, therefore, that Congress's purposes in enacting the PSLRA will not be frustrated. *See, e.g., In re Delphi Corp. Sec., Derivative & ERISA Litig.*, Nos. MDL-05-1725, 2007 WL 518626, at *8 (E.D. Mich. Feb. 15, 2007) (lifting PSLRA stay reasoning that the plaintiffs' claims were not frivolous because the SEC brought an action based on the same accounting irregularities); *In re Metro. Sec. Litig.*, No. CV-04-25-FVS, 2005 WL 940898, at *3 (E.D. Wash. Mar. 31, 2005) (lifting PSLRA stay where the complaint contained detailed allegations and was based on substantial support); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004) (lifting PSLRA stay, in part, because "the securities plaintiffs' case, whatever its ultimate disposition, is far from frivolous*"); In re Williams Sec. Litig.*, No. 02-CV-72H (M), 2003 WL 22013464, at *2 (N.D. Okla. May 22, 2003) (lifting PSLRA stay, reasoning that "enforcement of the stay as to the particular documents sought would not serve any interest the PSLRA stay was enacted to advance"); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL 02-1335-B, 2003 WL 23830479, at *4 (D.N.H. Jan. 29, 2003) (lifting PSLRA stay where "none of the claims at issue are frivolous"); *In re WorldCom*, *Inc. Sec. Litig.*, 234 F.Supp.2d 301, 305 (S.D.N.Y. 2002) (lifting PSLRA stay were the claims were not frivolous and plaintiffs had "clearly not filed the complaint to initiate a 'fishing expedition'").

Here, Plaintiffs are not asserting frivolous claims. Indeed, the Court has already recognized that Plaintiffs state viable claims for violation of federal securities laws. Thus, there is no policy justification for maintaining the stay (to the extent it even applies in this procedural posture).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court require Defendants to participate in a Rule 26 discovery conference so that discovery in this matter may commence.

DATED: January 26, 2022

Respectfully submitted,

**ROCHE FREEDMAN LLP**

*/s/ Constantine P. Economides*
Constantine P. Economides (FL# 118177)
Velvel (Devin) Freedman (FL# 99762)
Ivy T. Ngo (*pro hac vice*)
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
Tel.: (305) 851-5997
ceconomides@rochefreedman.com
vel@rochefreedman.com
ingo@rochefreedman.com

**LEVI & KORSINSKY, LLP**
Adam M. Apton
Nicholas I. Porritt
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel.: (202) 524-4290
Fax: (202) 333-2121
aapton@zlk.com
nporritt@zlk.com

*Co-Lead Counsel for the Class*

**CULLIN O'BRIEN LAW, P.A.**
Cullin O'Brien (FL# 0597341)
6541 NE 21st Way
Fort Lauderdale, Florida 33308
Tel.: (561) 676-6370
Fax: (561) 320-0285
cullin@cullinobrienlaw.com

*Additional Counsel for Lead Plaintiff James Michael DeLoach*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Tel.: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Edward Oketola*

## S.D. FLA. L.R. 7.1 CERTIFICATION

Plaintiffs' counsel has conferred with Defendants' counsel in a good faith effort to resolve the issues raised in this motion but have been unable to resolve their differences.

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

*/s/ Constantine P. Economides*

Constantine P. Economides (FL# 118177)