**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-81063-CIV-SMITH**

STEVE HARTEL, individually and on behalf
of all others similarly situated,

Plaintiff,

vs.

THE GEO GROUP, INC., *et al.*,

Defendants.
_______________________________________/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' Motion to Dismiss Lead Plaintiffs' Consolidated Class Action Second Amended Complaint, or Alternatively, Motion to Strike [DE 47], Plaintiffs' Opposition [DE 52], and Defendants' Reply [DE 53]. Plaintiffs' Second Amended Complaint [DE 46] ("SAC") alleges that Defendants violated the Securities Exchange Act of 1934 (the "Exchange Act") by making materially false and misleading statements about the corporate Defendant, The GEO Group, Inc. (the "Company" or "GEO"). Once the falsity of the statements became clear, the Company's stock declined in value, causing Plaintiffs and class members losses and damages. The SAC sets forth two counts: Count I alleges violations of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, against both Defendants and Count II alleges violations of § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against the individual Defendant, George C. Zoley. Defendants argue that the Court should dismiss portions of the SAC because Plaintiffs have failed to allege an element of their claims as to certain statements that form the basis of their claims. In the alternative, Defendants seek to strike large

portions of the SAC involving and relating to non-actionable statements made by Defendants. For the reasons set forth below, the Motion to Dismiss is granted and the Motion to Strike is denied as moot.

## I. BACKGROUND

Defendant GEO is a Delaware corporation with its headquarters in Boca Raton, Florida. It is an equity real estate investment trust ("REIT") specializing in the design, financing, development, and operation of secure facilities, processing centers, and community reentry centers in the United States, Australia, South Africa, and the United Kingdom. Defendant Zoley is GEO's Chairman of the Board and Chief Executive Officer.

GEO was founded in 1984 but was restructured as a REIT in 2013. As a REIT, GEO is required to distribute at least 90% of its income each year as dividends to shareholders. As a result, GEO relies on the capital markets to fund growth investments. At the start of the class period, defined as November 7, 2018 through August 5, 2020, JPMorgan Chase Co. ("JPMorgan") was the largest lender to private prison operators, including GEO. Wells Fargo & Company ("Wells Fargo") and Bank of America Corporation ("BofA") were also large lenders to GEO.

For the last three decades, GEO has had long-term contracts with the federal government to provide services for the Federal Bureau of Prisons, U.S. Immigration and Customs Enforcement ("ICE"), and the U.S. Marshal Service, as well as contracts with the Department of Corrections for ten different states to own and/or operate correctional facilities within those states. The state and federal contracts were regularly renewed.

In April 2018, after the Trump administration announced its zero-tolerance policy on immigration, private prison operators, such as GEO, came under increased scrutiny. As a result, in 2019 multiple banks announced that they would stop doing business with private prison

operators. Together the banks represented 87.4% of the credit lines and term loans that previously had been available to GEO to fund its operations and growth. The bank announcements led to decreases in GEO's stock price.

Additionally, in 2018 and 2019, the U.S. Department of Homeland Security, Office of Inspector General ("DHS OIG") issued reports and made findings that several of GEO's facilities were not in compliance with government standards and called for immediate action to address the substandard conditions, inadequate medical care, and overcrowding at these facilities. In 2019 and 2020, GEO lost or terminated several of its contracts to manage facilities.

The Company is a defendant is several lawsuits arising from the conditions in its facilities and the treatment of people housed at some of its facilities. GEO made numerous statements about the pending lawsuits, including: (1) the Company does not expect any pending claims or lawsuits to have a material adverse effect on its financial condition, results of operations, or cash flows; (2) the Company has not recorded an accrual relating to these matters at this time, as a loss is not considered probable nor reasonably estimable at this stage of the lawsuit; (3) the Company does not expect the outcome of any pending claims or legal proceedings to have a material adverse effect on its financial condition, results of operations or cash flows; and (4) the Company has adequately accounted for known legal cases in our guidance for 2019. The first three statements were made multiple times from 2018 through 2020. Plaintiffs allege that, in communications with ICE, Defendants characterized the lawsuits as a "potentially catastrophic risk" that exposed the Company to "tens of millions" in potential damages and up to $20 million in legal expenses. Further, Plaintiffs have alleged that on May 30, 2018, in a letter to ICE, Zoley stated that "[w]e are deeply alarmed at the rapidly increasing costs in defending these lawsuits without reimbursement from ICE, or assistance in the defense by the Department of Justice (DOJ.)" On

July 17, 2019, reputable news sources published articles revealing GEO's requests to ICE to help cover the costs of litigation because GEO could not bear the costs of defense on its own. Over the next two days, GEO's share price fell over 7.9%.

In 2020, COVID-19 swept the world. On April 23, 2020, a federal judge ordered the GEO-operated Adelanto Facility to immediately reduce detainee population and to follow all measures recommended by the Centers for Disease Control ("CDC") to contain COVID-19. On April 13, 2020, detainees at the GEO-operated Broward Transitional Center filed a lawsuit alleging a failure to comply with COVID-19 guidelines. On April 30, 2020, the court ordered the Center to cut the number of people in its custody to 75% and to hand out soap, cleaning materials, and masks to all detainees. On April 14, 2020, detainees at the Aurora Facility filed a lawsuit accusing GEO of failing to follow CDC recommendations regarding COVID-19. On April 20, 2020, detainees at the GEO-operated Mesa Verde Detention Center filed a lawsuit alleging that the facility was so overcrowded that social distancing was impossible and no meaningful steps had been taken to reduce the risk of COVID-19 outbreaks. On June 29, 2021, a lawsuit was filed alleging that GEO had failed to follow proper safety and health protocols at a federal halfway house in Houston, Texas and threatened to discipline residents if they called county or city agencies about COVID-19 testing, information, or to inform them about deaths at the facility.

On August 6, 2020, Defendants announced that they would be reducing GEO's quarterly dividend by nearly 30%. The stock price then fell nearly 7%. Lead Plaintiffs, James Michael DeLoach and Edward Oketola, purchased common stock in the Company during the proposed Class Period, November 7, 2018 through August 5, 2020. Plaintiffs maintain that Defendants were aware of or were severely reckless in not knowing that GEO's operational deficiencies and contractual and legal violations would impair the Company's access to capital after its publicly

disclosed financing partners bailed and revenue streams slowed when multiple government contracts were terminated.

Plaintiffs' Amended Complaint was based on allegedly false and misleading statements covering five different areas of GEO's business:

1. Statements about the stability of the dividend;
2. Statements about the quality of the services the Company provides;
3. Statements about pending lawsuits;
4. Statements about availability of funding; and
5. Statements about containing COVID-19 in the Company's facilities.

Defendants filed a Motion to Dismiss the Amended Complaint. The Court granted the motion in part and denied it in part. In its Order, the Court dismissed all of Plaintiffs' claims except those based on statements about pending lawsuits. The Court found that Plaintiffs had adequately pled that the statements about pending lawsuits were false, Defendants knew they were false when made, and that Plaintiffs had adequately pled loss causation based on the allegations that in July 2019, reputable news sources published articles revealing GEO's requests to ICE to help cover the costs of the litigation because GEO could not bear the cost of defense on its own and that the stock price subsequently dropped. Plaintiffs were permitted to file a second amended complaint.

Plaintiffs' SAC contains most of the allegations contained in the Amended Complaint. However, only the statements about pending lawsuits form the basis of Plaintiffs' claims in the SAC. Defendants now move to dismiss any statements about pending lawsuits made after July 17, 2019 because Plaintiffs have failed to plead loss causation as to those statements.

## II. MOTION TO DISMISS STANDARD

Claims brought under Rule 10b-5 "must satisfy (1) the federal notice pleading requirements [set out in Federal Rule of Civil Procedure 8(a)]; (2) the special fraud pleading requirements found in Federal Rule of Civil Procedure 9(b) . . .; and (3) the additional pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA")." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (citations and footnote omitted).

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pled allegations are true and view the pleadings in the light most favorable to the plaintiff. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." This requirement can by met by pleading (1) precisely what statements or omissions were made; (2) the time and place the statements were made and by whom; (3) the content of the statements and how they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Failure to satisfy the pleading requirements of Rule 9(b) is ground

for dismissal of a claim based in fraud. *FindWhat*, 658 F.3d at 1298.

Under the PSLRA, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Additionally, if a claim requires proof "the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "Although factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute." *FindWhat*. 658 F.3d at 1296. If Plaintiffs fail to satisfy the PSLRA's pleading requirements, the Court "shall" dismiss the claim. *See* § 78u-4(b)(3)(A).

## III. DISCUSSION

Defendants seek to dismiss Plaintiffs' SAC as to all statements about pending lawsuits made after July 17, 2019 because Plaintiffs have not adequately alleged an element of their claim as to the post-July 17, 2019 statements — loss causation. Loss causation is "a causal connection between the material misrepresentation and the loss," *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005), and is an element of Plaintiffs' § 10(b) and Rule 10b-5 claim.[1] A plaintiff can demonstrate loss causation in fraud-on-the-market cases, like this one by:

---

[1] As the Court set out in its prior Order: to state a claim for a violation of § 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236–37 (11th Cir. 2008).

> (1) identifying a "corrective disclosure" (a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud); (2) showing that the stock price dropped soon after the corrective disclosure; and (3) eliminating other possible explanations for this price drop, so that the factfinder can infer that it is more probable than not that it was the corrective disclosure—as opposed to other possible depressive factors—that caused at least a "substantial" amount of the price drop.

*FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1311–12 (11th Cir. 2011) (footnote omitted). A corrective disclosure can be a single disclosure or a series of partial disclosures through which "the truth gradually leaked out into the marketplace." *Meyer v. Greene*, 710 F.3d 1189, 1197 (11th Cir. 2013).

In its prior Order, the Court found that Plaintiffs had sufficiently alleged loss causation as to Plaintiffs' claims based on the allegations that, on July 17, 2019, reputable news sources published articles revealing GEO's requests to ICE to help cover the costs of litigation because GEO could not bear the costs of defense on its own and that, over the next two days, GEO's share price fell over 7.9%. Thus, Defendants argue that because the corrective disclosure upon which Plaintiffs rely to plead loss causation was made in July 2019, any disclosures made thereafter cannot be the basis of Plaintiffs' claim, as Plaintiffs have not pled loss causation as to any post-July 2019 disclosures. In addition, Defendants maintain that July 17, 2019, the date of the corrective disclosure, should be the end of the proposed class period.

Plaintiffs respond that the Court already found the post-July 2019 statements actionable,[2] the Court already rejected Defendants' truth-on-the-market defense at this stage of the

---

[2] While the Court's prior Order found all of the statements about pending lawsuits false and made with scienter, the prior Order also found that Plaintiffs had adequately pled loss causation based on the July 17, 2019 corrective disclosure. The prior order did not explicitly state that Plaintiffs had adequately pled loss causation as to statements about the pending lawsuits made after July 17, 2019.

proceedings,[3] and the July 17, 2019 corrective disclosure was not a complete corrective disclosure. In support of this last argument, Plaintiffs point to GEO's August 6, 2020 press release announcing that GEO would be reducing its dividend by almost 30% "in order to preserve capital and focus on paying down debt." (Press Release [DE 52-1] at 3.) The press release, however, is not part of the SAC. Further, Plaintiffs did not plead any specific reason for the dividend reduction in the SAC and did not otherwise plead that it was in any way related to the litigation expenses GEO was facing. Additionally, nothing in the press release addresses litigation expenses. When read in context, the allegation about the reduction in the dividend appears in a section of the SAC discussing the effect of coronavirus on Defendants' facilities and the effects of growing public opposition to private prisons. Thus, while a corrective disclosure can be a series of partial corrective disclosures, nothing in the SAC indicates that the August 6, 2020 press release was a corrective disclosure in relation to GEO's prior statements about pending litigation.

Consequently, Plaintiffs have failed to plead loss causation as to any statements made after July 17, 2019 and Defendants' Motion to Dismiss is granted as to all litigation related statements made after July 17, 2019. As a result, the class period must be adjusted to reflect the date of the corrective disclosure.

In the alternative to the Motion to Dismiss, Defendants seek to strike large portions of Plaintiffs' SAC. Because the Motion to Dismiss is granted and Defendants seek the relief in the alternative, the Court need not address the Motion to Strike. Therefore, the Motion to Strike is denied. Accordingly, it is

[3] While the Court has rejected the truth-on-the-market defense at this stage of the proceedings, that does not mean that Plaintiffs do not have to plead all of the elements of their claims.

**ORDERED** that:

1. Defendants' Motion to Dismiss Lead Plaintiffs' Consolidated Class Action Second Amended Complaint, or Alternatively, Motion to Strike [DE 47] is **GRANTED in part and DENIED in part:**

a) Defendants' Motion to Dismiss is **GRANTED** as to all statements made after July 17, 2019. Plaintiffs' claim shall proceed only on those statements made before July 17, 2019 and the class period shall be adjusted accordingly.

b) Defendants' Motion to Strike is **DENIED as moot.**

2. Defendants shall file an answer to the Second Amended Complaint by **July 1, 2022.**

3. By **July 22, 2022,** the parties shall comply with the Court's prior Order Requiring Joint Scheduling Report, Certificates of Interested Parties and Corporate Disclosure Statements [DE 5].

**DONE and ORDERED** in Fort Lauderdale, Florida, this 21st day of June, 2022.

**RODNEY SMITH**
**UNITED STATES DISTRICT JUDGE**

cc: All Counsel of Record