**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case File No. 9:20-cv-81063-RS

STEVE HARTEL, individually and on behalf
of all others similarly situated,

        Plaintiff,

vs.

THE GEO GROUP, INC., *et al.*,

        Defendants.

_____/


**PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   SUMMARY OF THE LITIGATION .........................................................................2

III.  THE PROPOSED TERMS OF SETTLEMENT .......................................................3

     A.    The Settlement Class Definition ..................................................................3

     B.    Monetary Consideration and Plan of Allocation .........................................3

     C.    Release Provisions ......................................................................................4

IV.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL .............................4

     A.    The Standard for Judicial Approval of Class Action Settlements. ........................4

     B.    The Settlement Meets the Approval Requirements Under Rule 23(e)(2)..............6

          1.    Plaintiffs and Lead Counsel Adequately Represented the Settlement
               Class. .......................................................................................................6

          2.    The Proposed Settlement was Negotiated at Arm's Length. .......................7

          3.    The Relief Provided for the Settlement Class Is Adequate.........................8

               (a)    The benefits of Settlement outweigh the costs of litigation............ 8

               (b)    The proposed method of relief distribution is effective................ 10

               (c)    The proposed award of attorneys' fees is reasonable. .................. 12

               (d)    Considering all identified agreements, relief is adequate. ............ 13

          4.    The Settlement Treats Settlement Class Members Equitably....................13

V.    THE PROPOSED NOTICE OF SETTLEMENT IS SUFFICIENT...............................14

VI.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT
     PURPOSES...................................................................................................16

     A.    The Requirements of Rule 23(a) have been met..................................................16

     B.    The Requirements of Rule 23(b)(3) have been met.............................................18

VII.  PROPOSED SCHEDULE .....................................................................................20

VIII. CONCLUSION.....................................................................................20

## **TABLE OF AUTHORITIES**

### Cases

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................... 16, 19

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)............................................................................................................ 19

*Aranaz v. Catalyst Pharm. Partners Inc.*,
    302 F.R.D. 657 (S.D. Fla. 2014)........................................................................................ 17

*Ault v. Walt Disney World Co.*,
    692 F.3d 1212 (11th Cir. 2012) ......................................................................................... 17

*Bennett v. Behring Corp.*,
    96 F.R.D. 343 (S.D. Fla. 1982).......................................................................................... 5, 6

*Blum v. Stenson*,
    465 U.S. 886 (1984)........................................................................................................... 12

*Burrows v. Purchasing Power, LLC*,
    2013 U.S. Dist. LEXIS 189397 (S.D. Fla. Oct. 7, 2013) .................................................. 9

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
    2008 U.S. Dist. LEXIS 121093 (N.D. Ga. Oct. 20, 2008) ........................................ 8, 9, 14

*Cifuentes v. Regions Bank*,
    2014 U.S. Dist. LEXIS 37458 (S.D. Fla. Mar. 20, 2014) .................................................. 5

*City of L.A. v. Bankrate, Inc.*,
    2016 U.S. Dist. LEXIS 115071 (S.D. Fla. Aug. 25, 2016) ............................................. 5, 8

*Dukes v. Air Can.*,
    2019 U.S. Dist. LEXIS 221914 (M.D. Fla. Sept. 6, 2019)...................................... 10, 18, 19

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)............................................................................................................ 9

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2011) ........................................................................................... 6

*Fla. Educ. Ass'n v. State*,
    2019 U.S. Dist. LEXIS 229456 (N.D. Fla. Nov. 4, 2019).................................................. 5

*Fresco v. Auto Data Direct, Inc.*,
    2007 U.S. Dist. LEXIS 37863 (S.D. Fla. May 11, 2007) ................................................. 10

*Grant v. Ocwen Loan Servicing, LLC*,
    2019 U.S. Dist. LEXIS 14673 (M.D. Fla. Jan. 30, 2019)................................................... 8

*Gunthert v. Bankers Std. Ins. Co.*,
  2019 U.S. Dist. LEXIS 37161 (M.D. Ga. Mar. 8, 2019).......................................................7

*Hanley v. Tampa Bay Sports & Entm't. LLC*,
  2020 U.S. Dist. LEXIS 89175 (M.D. Fla. Apr. 23, 2020)...................................................12

*Holman v. Student Loan Xpress, Inc.*,
  2009 U.S. Dist. LEXIS 113491 (M.D. Fla. Nov. 19, 2009)...........................................16, 18

*Holmes v. Cont'l Can Co.*,
  706 F.2d 1144 (11th Cir. 1983) ...........................................................................................14

*In re Clarus Corp. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 50147 (N.D. Ga. Jan. 6, 2005).......................................................13

*In re Flowers Foods, Inc. Sec. Litig.*,
  No. 7:16-cv-000222-WLS, 2019 WL 6771749 (M.D. Ga. Dec. 11, 2019)..........................13

*In re Health Insurance Innovations Sec. Litig.*,
  2021 U.S. Dist. LEXIS 61051 (M.D. Fla. Mar. 23, 2021) ...................................................13

*In re Healthsouth Corp. Sec. Litig.*,
  334 F. App'x 248 (11th Cir. 2009) ......................................................................................16

*In re HealthSouth Corp. Sec. Litig.*,
  572 F.3d 854 (11th Cir. 2009) ...............................................................................................5

*In re Netbank, Inc. Sec. Litig.*,
  No. 1:07-cv-2298-TCB, 2011 WL 13353222 (N.D. Ga. Nov. 9, 2011)................................13

*In re NetBank, Inc.*,
  259 F.R.D. 656 (N.D. Ga. 2009) ..........................................................................................17

*In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.*,
  No. 1:00-cv-1416-CC, 2005 WL 8172262 (N.D. Ga. May 26, 2005)..................................13

*In re Rayonier Sec. Litig.*,
  2017 U.S. Dist. LEXIS 167510 (M.D. Fla. Oct. 5, 2017) ...................................................16

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) ..................................................................................9

*In re Terazosin Hydrochloride Antitrust Litig.*,
  2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005) ...................................................14

*In re Theragenics Corp. Sec. Litig.*,
  2004 U.S. Dist. LEXIS 32850 (N.D. Ga. Sept. 29, 2004) ..................................................13

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) ...............................................................................................5

*Kennedy v. Tallant*,
  710 F.2d 711 (11th Cir. 1983) .............................................................................................19

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ................................................................. 18

*Lee v. Ocwen Loan Servicing, LLC*,
   2015 U.S. Dist. LEXIS 121998 (S.D. Fla. Sept. 14, 2015) ......................... 15

*Lunsford v. Woodforest Nat'l Bank*,
   2014 U.S. Dist. LEXIS 200716 (N.D. Ga. May 19, 2014) ............................. 7

*Mashburn v. Nat'l Healthcare, Inc.*,
   684 F. Supp. 660 (M.D. Ala. 1988) ............................................................ 5

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ................................................................................ 12

*Monroe Cty. Employees' Ret. Sys. v. Southern Co.*,
   332 F.R.D. 370 (N.D. Ga. 2019) .............................................................. 19

*Morgan v. Pub. Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. 2016) ...................................................... 8

*Nelson v. Mead Johnson & Johnson Co.*,
   484 F. App'x 429 (11th Cir. 2012) ............................................................. 5

*Pierre-Val v. Buccaneers, L.P.*,
   2015 U.S. Dist. LEXIS 81518 (M.D. Fla. June 17, 2015) ............................ 6

*Poertner v. Gillette* Co.,
   2014 U.S. Dist. LEXIS 116616 (M.D. Fla. Aug. 21, 2014) ........................... 4

*Pritchard v. Apyx Med. Corp.*,
   2020 U.S. Dist. LEXIS 222174 (M.D. Fla. Nov. 18, 2020) .......................... 13

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 17, 2016) .............. 10, 12, 17

*Waters v. Int'l Precious Metals Corp.*,
   190 F.3d 1291 (11th Cir. 1999) ................................................................ 12

**Statutes**

15 U.S.C. § 78u-4(a)(7) ................................................................................. 15

**Rules**

Fed. R. Civ. P. 23(b)(3) ................................................................................. 16

Fed. R. Civ. P. 23(e)(1) .................................................................................. 6

**Other Authorities**

Newberg on Class Actions § 22:59 (5th ed.) ................................................ 13

Manual for Complex Litigation, § 21.312 (4th Ed.) ...................................... 14

## I.        PRELIMINARY STATEMENT

Lead Plaintiffs James Michael Deloach and Edward Oketola (together, "Plaintiffs"), by and through their counsel, hereby respectfully move this Court, pursuant to Federal Rule of Civil Procedure 23, for entry of the proposed Preliminary Approval Order: (1) granting preliminary approval of the proposed Settlement in the above-captioned action; (2) certifying the Settlement Class for settlement purposes; (3) approving the form and manner of providing notice of Settlement to members of the Settlement Class; and (4) setting a date and time for the fairness hearing to consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's forthcoming motion for an award of attorneys' fees and expenses and for Plaintiffs' PSLRA Award.[1] In accordance with the terms of the Stipulation, Defendants do not oppose this Motion.

Pursuant to the proposed Settlement, Defendants have agreed to cause to be paid $3,000,000 in cash in exchange for the release of all claims asserted in the Action.[2] The Settlement will bring a close to this hard-fought litigation, which included extensive motion practice, engagement of fact discovery, and mediation with a nationally recognized mediator. This is a strong result for the Settlement Class and, if approved, would guarantee a near-term distribution to shareholders, eliminate additional costs to the Parties, and circumvent future risks of litigation. Indeed, Plaintiffs believe the Settlement represents a favorable recovery for the Settlement Class. Preliminary approval is warranted because the Settlement is fair, reasonable, and adequate and certification of the Settlement Class is appropriate for purposes of settlement and final judgment. Fed. R. Civ. P. 23(e)(1).

---

[1] Unless otherwise noted, capitalized terms used herein have the same meanings ascribed to them in the Stipulation and Agreement of Settlement dated May 1, 2023 (the "Stipulation" or "Stip."), filed herewith; all emphasis is added; and internal citations are omitted.

[2] Defendants are The GEO Group ("GEO" or the "Company") and George C. Zoley ("Zoley").

## II.    SUMMARY OF THE LITIGATION

The initial complaint in this Action was filed on July 7, 2020. ECF No. 1. The operative complaint (the "Second Amended Complaint") was filed on October 4, 2021, alleging violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Act Commission ("SEC") Rule 10b-5, promulgated thereunder, on behalf of all persons or entities who purchased or otherwise acquired GEO common stock between November 9, 2018 and August 5, 2020, inclusive (the "Class Period"). ECF No. 46. Among other things, Plaintiffs alleged that Defendants made material misstatements and/or omissions regarding the financial impact of the Company's pending lawsuits, which caused its common stock to trade at artificially inflated prices until the market learned the truth, resulting in a decline in the price of GEO stock. Defendants deny each and all of Plaintiffs' allegations of wrongdoing.  Defendants further maintain that any alleged misstatements did not have a material impact on the Company's stock price.

Prior to filing an amended complaint, Plaintiffs initiated a thorough investigation into GEO's business, operational and compliance policies, including the review of GEO's SEC filings, as well as securities analysts' reports and advisories about the Company, press releases and other public statements issued by GEO, and media reports about the Company. *See* Joint Declaration of Adam M. Apton and Ivy T. Ngo ("Joint Decl.")), ¶¶8, 12. Additionally, through third-party investigators, Lead Counsel contacted and interviewed former GEO employees and other persons with relevant knowledge of the claims asserted, consulted with counsel representing plaintiffs in the relevant pending lawsuits, and corresponded with industry professionals investigating and monitoring GEO's business and ongoing liabilities. *See id*. ¶15. Lead Counsel also consulted with an expert on damages and loss causation issues regarding potential recovery in the Action. *Id.*

On June 21, 2022, the Court issued an Order granting in part and denying in part Defendants' third motion to dismiss.  The Order reaffirmed its previous findings that Plaintiffs adequately alleged that Defendants made materially false and misleading statements relating to the effects of the Company's pending lawsuits, and when the truth was revealed, Plaintiffs and the other members of the proposed class suffered a loss. ECF No. 63. Defendants filed their respective Answers on July 1, 2022. ECF Nos. 64 & 65.

Discovery commenced shortly thereafter. While counsel for the Parties made significant efforts to work collaboratively to conduct discovery, disputes arose early in the process, resulting in numerous lengthy meet and conferrals. *See* Joint Decl. ¶¶27, 33.

On December 4, 2022, the Parties attended a full-day mediation session with mediator Robert A. Meyer. *Id.* at ¶28. Mediation was initially unsuccessful, but the Parties ultimately agreed to resolve the case in response to a "mediator's recommendation" to settle for $3,000,000. *Id.*

## III.    THE PROPOSED TERMS OF SETTLEMENT

### A.    <u>The Settlement Class Definition</u>

The Settlement Class is defined as all Persons or entities who purchased or otherwise acquired GEO common stock during the Class Period, and who were damaged thereby. Stip. at ¶1.37. Excluded from the Settlement Class are Defendants, current and former Officers and directors of GEO during the Class Period, their Immediate Family Members, their legal representatives, heirs, successors, or assigns, any entity in which any excluded party has or had during the Class Period a controlling interest, and any Persons or entities who or which exclude themselves by timely filing a request for exclusion that is accepted by the Court. *Id.*

### B.    <u>Monetary Consideration and Plan of Allocation</u>

Plaintiffs secured a total benefit of $3,000,000 for the Settlement Class, to be paid on behalf

of Defendants. *Id.* at ¶2.1. The Plan of Allocation, described in full in the Notice of Pendency and

Proposed Settlement of Class Action (the "Notice"), is based on the Second Amended Complaint,

providing compensation to Settlement Class Members that sustained losses as a result of the

decline in the price of GEO's common stock on July 17, 2019 and August 6, 2020. *See* O'Brien

Decl. Ex. A-1 ("Notice") at 8-10. As described in detail below, the Plan of Allocation will be

applied uniformly to all Settlement Class Members who submit valid and timely claims.

### C.   Release Provisions

In exchange for monetary consideration, Plaintiffs agreed to release Defendants (and

Defendants' Releasees) from all claims arising from their purchase of GEO common stock during

the Class Period. Specifically, the Stipulation defines "Released Plaintiffs' Claims" as follows:

> [A]ny and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, whether arising under federal, state, local, statutory, common, or foreign law, or any other law, rule or regulation, including without limitation, claims for negligence, gross negligence, breach of contract, breach of duty of care, breach of duty of loyalty, breach of duty of candor, fraud, negligent misrepresentation, or breach of fiduciary duty, that relate to the purchase or otherwise acquisition of GEO common stock during the Class Period, and that the Plaintiffs or the Settlement Class Members, or any of them, or the successors or assigns of any of them, whether directly, indirectly, representatively or in any other capacity, against any of the Released Persons (i) asserted in the Complaint or (ii) could have asserted in any forum that arise out of, are based upon, or relate in any way, directly or indirectly, to (a) the allegations, transactions, facts, events, matters, occurrences, acts, representations, or omissions involved, set forth, or referred to in the Complaint; (b) Defendants' statements, including public filings, and (c) the purchase, sale, holding, or acquisition of GEO stock by any Settlement Class Member during the Class Period.

Stip. at ¶1.31.

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   The Standard for Judicial Approval of Class Action Settlements.

Rule 23(e) requires judicial approval of any class action settlement. *See Poertner v. Gillette*

Co., 2014 U.S. Dist. LEXIS 116616, at *5 (M.D. Fla. Aug. 21, 2014), *aff'd*, 618 F. App'x 624

(11th Cir. 2015). The Court's decision to approve a settlement is "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Nelson v. Mead Johnson & Johnson Co.,* 484 F. App'x 429, 434 (11th Cir. 2012). This is especially true of securities class actions. *See In re HealthSouth Corp. Sec. Litig.,* 572 F.3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors pretrial settlement of class action lawsuits.").[3]

Rule 23(e) provides a two-step process for approving class action settlements. First, "the court conducts a preliminary review to determine whether the proposed settlement is within the range of possible approval, or, in other words, whether there is probable cause to notify the class of the proposed settlement." *Fla. Educ. Ass'n v. State ("FEA"),* 2019 U.S. Dist. LEXIS 229456, at *8-9 (N.D. Fla. Nov. 4, 2019). Second, "the court conducts a fairness hearing at which all interested parties are afforded an opportunity to be heard" in order "to determine if the proposed settlement is fair, reasonable and adequate to those who are affected." *Id.* at *9. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *City of L.A. v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 115071, at *14 (S.D. Fla. Aug. 25, 2016).[4]

---

[3] *See, e.g., Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("Due to the notable unpredictability of result in complex securities litigation and the distinct possibility of litigation spanning up to a decade or more, securities fraud class actions readily lend themselves to settlement."); *see also In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992) ("Complex litigation can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements…"); *Bennett v. Behring Corp.,* 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) ("[S]ettlements [of class actions] are highly favored in the law and will be upheld whenever possible."); *Cifuentes v. Regions Bank,* 2014 U.S. Dist. LEXIS 37458, at *11 (S.D. Fla. Mar. 20, 2014) (same).

[4] Courts typically "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," are "hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Health Corp.,* 417 F. App'x 843, 845 (11th Cir. 2011); *see also Smith v. Wm. Wrigley Jr. Co.,* 2010 U.S. Dist. LEXIS 67832, at *6 (S.D. Fla. June 15, 2010) ("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient.").

Pursuant to Rule 23(e)(1), notice should be provided to the class if, based upon the parties' showing, the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). The court should consider the factors enumerated in Rule 23(e)(2) when assessing settlement approval. Further, when assessing whether the settlement "fair, reasonable, and adequate," courts in the Eleventh Circuit generally consider the *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the anticipated complexity, expense and duration of litigation; (5) the amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986; *see e.g.*, *Faught v. Am. Home Shield Corp.,* 668 F.3d 1233, 1240 (11th Cir. 2011). Full analysis of Rule 23(e)(2) or the *Bennett* factors is unnecessary at the preliminary approval stage. *See Pierre-Val v. Buccaneers, L.P.,* 2015 U.S. Dist. LEXIS 81518, at *3 (M.D. Fla. June 17, 2015) ("Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement").

**B.     The Settlement Meets the Approval Requirements Under Rule 23(e)(2).**

**1.     Plaintiffs and Lead Counsel Adequately Represented the Settlement Class.**

Plaintiffs and Lead Counsel diligently prosecuted this Action for more than two years. Among other things, Plaintiffs and Lead Counsel investigated relevant factual events, analyzed GEO's SEC filings and other public statements, and reviewed analyst reports concerning the Company. *See* Joint Decl. at ¶¶8, 11-12. Lead Counsel also researched the legal issues underlying Plaintiffs' claims; drafted a detailed amended and second amended complaint; prevailed in part against Defendants' second and third motions to dismiss; conducted fact discovery; retained experts and consultants; and participated in lengthy, mediator-assisted settlement negotiations. *See*

*id.* at ¶¶12-28. Likewise, Plaintiffs have been active and informed participants in the litigation. *See generally* Declarations of James Michael DeLoach and Edward Oketola. Among other things, Plaintiffs oversaw the drafting of both the amended and second amended complaint, and reviewed briefing on Defendants' second and third motions to dismiss. *See id.* at ¶3. Plaintiffs also participated in discovery, providing responses to written requests and documents in their possession relating to transactions in GEO common stock. *Id.*

Indeed, Lead Counsel, who is experienced in prosecuting complex class actions, had a clear view of the strengths and risks of the Action and were equipped to make an informed decision regarding the reasonableness of a potential settlement. *See* Joint Decl. at ¶¶32-37; *see also Lunsford v. Woodforest Nat'l Bank*, 2014 U.S. Dist. LEXIS 200716, at *26 (N.D. Ga. May 19, 2014) ("The Court should give great weight to the recommendation of counsel for the parties, given their considerable experience in this type of litigation."). The result of these efforts is an impressive settlement of $3,000,000 in cash for the benefit of the Settlement Class. As such, Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

**2.      The Proposed Settlement was Negotiated at Arm's Length.**

Courts presume that a proposed settlement is fair and reasonable when, as here, it is the result of arm's-length negotiations. *See Gunthert v. Bankers Std. Ins. Co.,* 2019 U.S. Dist. LEXIS 37161, at *7 (M.D. Ga. Mar. 8, 2019) ("There is a presumption of good faith in the negotiation process… [and] [w]here the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."). As previously discussed, the Parties engaged Robert A. Meyer, a nationally recognized mediator, and attended a full-day mediation session, which was initially unsuccessful. *See* Joint Decl., ¶28. Following weeks of post-mediation negotiations, the Parties ultimately agreed to resolve the Action based on a "mediator's recommendation" to settle

for $3,000,000. *Id.* Mr. Meyer's involvement strongly supports a finding that negotiations were conducted at arm's length and without collusion. *See Morgan v. Pub. Storage,* 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### 3.    The Relief Provided for the Settlement Class Is Adequate.

#### (a)    The benefits of Settlement outweigh the costs of litigation.

Under Rule 23(e)(2)(C) or the *Bennett* factors, courts assess the adequacy of the relief provided by settlement in contrast to the continuing risks of litigation. *See Grant v. Ocwen Loan Servicing, LLC,* 2019 U.S. Dist. LEXIS 14673, at *18 (M.D. Fla. Jan. 30, 2019) ("[I]t is not the value or nature of the settlement relief alone that is decisive, but whether that relief is reasonable when compared with the relief plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing."). When determining the range of reasonableness with respect to settlement of securities cases, "[c]ourts have repeatedly noted that stockholder litigation is notably difficult and notoriously uncertain." *Carpenters Health & Welfare Fund v. Coca-Cola Co.,* 2008 U.S. Dist. LEXIS 121093, at *37 (N.D. Ga. Oct. 20, 2008) (collecting cases).

Here, the proposed Settlement provides a certain near-term recovery of $3,000,000, which represents 8.9% of the estimated class-wide damages. *See* Joint Decl. at ¶¶31-32. According to Cornerstone Research, the median settlement as a percentage of total class-wide damages in securities fraud cases with damages ranging from $25 million to $74 million is 7.4%. *See id.* at ¶31 & Ex. A. Thus, the proposed Settlement represents a meaningful portion of the Settlement Class's possible recovery and comports with historical settlement data in similarly sized cases. *See Bankrate*, 2016 U.S. Dist. LEXIS 115071, at *15 (preliminarily approving settlement "recognizing that securities class actions are difficult to measure" and finding the amount "appears to be within

range of reasonableness"). Moreover, the Parties were well positioned to assess the strengths and weaknesses of the Action and the benefits of the proposed Settlement as this case has been zealously litigated since its filing in 2020. *See* Joint Decl. at ¶¶6, 8, 11-27; *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1332 (S.D. Fla. 2001) (holding "[t]his factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable" because the "case had progressed to a point where each side was well aware of the other side's position and the merits thereof.").

While Plaintiffs stand by their claims, further litigation – including contentious fact discovery, defeating Defendants' opposition to class certification, summary judgment, and winning at trial – presents clear risks. *See* Joint Decl. at ¶¶34-37. For example, while the Court partially denied Defendants' motions to dismiss, it also significantly limited Plaintiffs' theories of liability and actionable statements, thus substantially reducing the Settlement Class's possible recovery. *See* ECF Nos. 45, 47. Further, Defendants maintain that Plaintiffs have failed to demonstrate the alleged corrective disclosures were the proximate cause of any alleged loss.[5] *See* Joint Decl. at ¶¶34-35. Acceptance of any such arguments by the Court or a jury, in whole or part, would dramatically limit potential recovery, or eliminate it altogether. Thus, Plaintiffs' likelihood of success at trial is not certain. *See Burrows v. Purchasing Power, LLC,* 2013 U.S. Dist. LEXIS 189397, at *14 (S.D. Fla. Oct. 7, 2013) ("[B]ecause success at trial is not certain for Plaintiff, this factor weighs in favor of accepting the settlement."); *see also Coca-Cola Co.,* 2008 U.S. Dist. LEXIS 121093, at *36 ("[T]he range of possible recovery must be weighed against the risk of no recovery.").

Further, even assuming Plaintiffs were successful at each junction, continuing litigation

---

[5] Plaintiffs bear the burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover" *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005).

would pose considerable costs to the Parties and the Court, and would inevitably delay recovery for the Settlement Class. *See* Joint Decl. at ¶¶33, 36; *see also Thorpe v. Walter Inv. Mgmt. Corp.,* 2016 U.S. Dist. LEXIS 144133, at *10 (S.D. Fla. Oct. 17, 2016) (granting final approval and noting that "ongoing discovery and trial preparation would have substantially increased costs to the Class"). As such, the early stage of this litigation supports preliminary approval. *See Dukes v. Air Can.,* 2019 U.S. Dist. LEXIS 221914, at *6 (M.D. Fla. Sept. 6, 2019) (recommending preliminary approval of settlement of class action "pending for more than a year" finding that "[t]he proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision.") *aff'd and adopted by*, 2019 U.S. Dist. LEXIS 221913 (M.D. Fla. Sept. 26, 2019).

Thus, considerations of the complexity, expense, and duration of continuing litigation in conjunction with the certain near-term recovery of the proposed Settlement and the current stage of litigation support preliminary approval. *See Fresco v. Auto Data Direct, Inc.,* 2007 U.S. Dist. LEXIS 37863, *17 (S.D. Fla. May 11, 2007) (preliminarily approving settlement concluding that "[w]ere this matter to continue, numerous, complex issues of law would have to be resolved at the cost of considerable time and expense to the parties and the Court.").

(b)    The proposed method of relief distribution is effective.

The proposed Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator. *See* Joint Decl. at ¶38.[6] The Claims Administrator will employ a well-tested protocol for processing claims in connection with the settlement of a securities class action. Specifically, notice will be provided to potential

---

[6] Plaintiffs selected and retained Epiq Class Action and Claims Solutions, Inc. ("Epiq") to serve as the Claims Administrator for the Class, upon Court approval. Epiq is one of the leading claims administrators within the securities industry. *See* Declaration of Joseph Martino of behalf of Epiq Class Action and Claims Solutions, Inc. ("Martino Decl.").

Settlement Class Members by mailing the Court approved Notice of Pendency and Proposed Settlement of Class Action (the "Notice") to the Company's shareholders of record, including recipients consisting of brokers and various investment advisors as a standard operating procedure. Martino Decl., ¶¶4-6. These recipients manage accounts on behalf of thousands of retail investors who then forward the Notice to potential Settlement Class Members. *Id*. at ¶5. The Claims Administrator will also publish a Summary of Proposed Settlement of Class Action (the "Summary Notice") through a national business newswire. *Id.* at ¶2. In addition, toll-free telephone and email support will be provided, and a Settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim and Release form (the "Proof of Claim") and [Proposed] Order Preliminarily Approving Settlement and Providing for Notice to the Class (the "Notice Order"). *Id.* at ¶8.

Settlement Class Members then respond to the Notice by timely submitting a Proof of Claim. Once Settlement Class Members' Proof of Claim is received, either by mail or electronically, and the deadline for submitting Proof of Claim passes, the Claims Administrator will begin the process of reviewing each Proof of Claim for completeness and assessing the validity of the claim. *Id*. at ¶10. During the review process, the Claims Administrator verifies each Proof of Claim is authorized, *i.e.*, has been completed correctly, is properly signed, details qualifying transactions in GEO stock, in accordance with the Settlement Class definition, and includes all necessary supporting documentation. *Id.* at ¶10. Claimants who submit a deficient Proof of Claim will be notified and given an opportunity to cure the deficiency. *Id*. at ¶11. Once the claims are fully vetted, the Claims Administrator will calculate the distribution of the Settlement Funds to be sent via check to all eligible Settlement Class Members who submit a valid Proof of Claim ("Authorized Claimants") equal to his, her or its *pro rata* share of the total recoverable losses,

upon the Court's approval. *Id*. at ¶12. Payees are typically given 90 to 180 days to negotiate the checks. *Id*. at ¶13.

(c)   <u>The proposed award of attorneys' fees is reasonable.</u>

Lead Counsel intends to seek an award of attorneys' fees of up to 32% of the Settlement Fund.[7] *See* Joint Decl., ¶43. The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be a percentage-based contingency fee, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903-04 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). Moreover, in considering the reasonableness of attorneys' fees under the percentage method, "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund." *Hanley v. Tampa Bay Sports & Entm't. LLC,* 2020 U.S. Dist. LEXIS 89175, at *16 (M.D. Fla. Apr. 23, 2020) (citing *Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786, at *16-*17 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming attorneys' fee award of 33.3% to class counsel)). Indeed, this is especially true for comparable securities class actions in the Eleventh Circuit.[8]

---

[7] Lead Counsel also intends to request reimbursement for its out-of-pocket expenses, the majority of which are attributable to retaining and consulting with third-party consultants and experts, and engaging Mr. Meyer to oversee the Parties' mediation. *See* Joint Decl., ¶43. Lead Counsel will also request a PSLRA award to reimburse Plaintiffs for their time and expenses serving as class representatives during this litigation. *Id.* at ¶44. When Lead Counsel formally moves for an award of fees and expenses, it will submit additional evidence in support thereof. *See id.* at ¶45.

[8] *See, e.g., Thorpe*, 2016 U.S. Dist. LEXIS 144133, at *35 (awarding Co-Class Counsel 33.3% of

(d)      Considering all identified agreements, relief is adequate.

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in connection with the Settlement. In addition to the Stipulation, the Parties have entered into a supplemental agreement dated May 1, 2023 (the "Supplemental Agreement") regarding requests for exclusion. *See* Stip., ¶7.4. The Supplemental Agreement provides Defendants with the option to terminate the Settlement in the event requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. *See id.* As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class. *See* 7 Newberg on Class Actions § 22:59 (5th ed.) ("[P]arties write a so-called 'blow up' agreement into a settlement, whereby the defendants are authorized to walk away from the settlement if too many class members opt out; parties attempt to keep the precise level at which the exit is authorized private so as not to encourage opt outs.")). Pursuant to the Supplemental Agreement, it may be submitted to the Court *in camera* or under seal.

**4.      The Settlement Treats Settlement Class Members Equitably.**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. "A plan of distribution is [ ] sufficient where ... there is a rough correlation between the settlement distribution and the relative amounts of damages recoverable

---

settlement fund); *In re Health Insurance Innovations Sec. Litig.,* 2021 U.S. Dist. LEXIS 61051, at *36 (M.D. Fla. Mar. 23, 2021) (awarding 33% of settlement fund as reasonable); *Pritchard v. Apyx Med. Corp.,* 2020 U.S. Dist. LEXIS 222174, at *3 (M.D. Fla. Nov. 18, 2020) (awarding 33.3% of settlement fund as "fair and reasonable"); *In re Flowers Foods, Inc. Sec. Litig.,* No. 7:16-cv-000222-WLS, 2019 WL 6771749, at *1 (M.D. Ga. Dec. 11, 2019) (awarding 33.3%); *In re Netbank, Inc. Sec. Litig.,* No. 1:07-cv-2298-TCB, 2011 WL 13353222, at *2 (N.D. Ga. Nov. 9, 2011) (awarding 34%); *In re Profit Recovery Grp. Int'l, Inc. Sec. Litig.,* No. 1:00-cv-1416-CC, 2005 WL 8172262, at *3 (N.D. Ga. May 26, 2005) (awarding 33.3%); *In re Clarus Corp. Sec. Litig.,* 2005 U.S. Dist. LEXIS 50147, at *24 (N.D. Ga. Jan. 6, 2005) (same); *In re Theragenics Corp. Sec. Litig.,* 2004 U.S. Dist. LEXIS 32850, at *19 (N.D. Ga. Sept. 29, 2004) (same).

by Class Members." *In re Terazosin Hydrochloride Antitrust Litig.,* 2005 U.S. Dist. LEXIS 43082, at *16 (S.D. Fla. Apr. 19, 2005); *see also Holmes v. Cont'l Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983) ("[T]here is no rule that settlements benefit all class members equally.").

As reflected in the Plan of Allocation, the proposed Settlement treats all Settlement Class Members, including Plaintiffs, equitably relative to each other by providing that each Settlement Class Member shall receive his, her, or its *pro rata* share of the Settlement Fund less taxes, approved costs, fees, and expenses (the "Net Settlement Fund") based on their "Recognized Loss." *See* Notice at 8-10. As described in the Notice, the Plan of Allocation has a rational basis and was formulated by Lead Counsel, with the assistance of Plaintiffs' damages expert, ensuring its fairness and reliability. *See id.* The Plan of Allocation also clearly identifies the circumstances by which Settlement Class Members may participate in the distribution of the Net Settlement Fund. *See id.* As such, the Plan of Allocation is consistent with the alleged theories of damages under the Exchange Act and is substantially similar to other plans approved and successfully implemented in securities class actions in this Circuit. *See Coca-Cola Co.,* 2008 U.S. Dist. LEXIS 121093, at *21 (finding securities class action plan of allocation "treats all Settlement Class Members in a similar manner—ensuring that everyone entitled to a distribution…gets a *pro rata* share of the Net Settlement Fund in the proportion that his, her, or its Recognized Claim bears to the total of all Recognized Claims.").

## V.    THE PROPOSED NOTICE OF SETTLEMENT IS SUFFICIENT

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." *Manual for Complex Litigation*, § 21.312 (4th Ed.). In order to satisfy the due process requirements, notice "need only be reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their objections." *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, at *12 (S.D. Fla. Sept. 14, 2015). Notice must also satisfy the requirements of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* 15 U.S.C. § 78u-4(a)(7). Here, the Parties propose that notice be provided to the Class by mail via the U.S. Postal Service, as well as by the one-time publication of the Summary Notice over a national business newswire. *See* Stip. at ¶3.1.

The proposed Notice provides the following, in simple language: (i) basic information about the Action; (ii) an explanation of the Settlement and the considerations that caused Plaintiffs and Lead Counsel to conclude the Settlement is fair and adequate; (iii) a description of the Settlement benefits and how Settlement Class Members can submit a claim; (iv) an explanation that if the Settlement is approved, any claims against Defendants that could have been litigated in the Action will be released; (v) the contact information for the Claims Administrator and Lead Counsel; (vi) an explanation of how Settlement Class Members can timely exercise their right to opt out of the Settlement Class or object to the Settlement; (vii) information regarding Lead Counsel's intent to seek an award of attorneys' fees and expenses; and (viii) an explanation of the final approval hearing and how to submit a notice of appearance. *See generally*, Notice. The proposed Summary Notice also provides essential information about the Action and the Settlement and directs Settlement Class Members to alternative sources for additional information. *See* Stip., Ex. A-3. Likewise, the proposed Postcard Notice provides necessary information about the Settlement and how to participate. *See* Stip., Ex. A-4. In addition to the mailed and published notice, the Stipulation provides for the establishment of a website devoted to posting Settlement-related information, and a toll-free telephone number to answer Settlement-related inquires. *See* Stip. at ¶5.2.

Thus, the proposed nature and methods of notice constitute valid and sufficient notice to the Class, and comply fully with the requirements of the PSLRA, Rule 23 and due process. *See In re Healthsouth Corp. Sec. Litig.,* 334 F. App'x 248, 250 (11th Cir. 2009) (individual notice to all reasonably locatable class members, publication in newspapers); *In re Rayonier Sec. Litig.,* 2017 U.S. Dist. LEXIS 167510, at *4 (M.D. Fla. Oct. 5, 2017) (individual notice to all reasonably locatable class members, publication in Investor's Business Daily and over *PR Newswire*).

## VI.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

"A class may be certified solely for purposes of settlement if a settlement is reached before a litigated determination of the class certification issue." *Holman v. Student Loan Xpress, Inc.,* 2009 U.S. Dist. LEXIS 113491, at *4 (M.D. Fla. Nov. 19, 2009). Plaintiffs submit that Defendants stipulated to the certification of a Settlement Class for settlement purposes only. Stip. at ¶8.1. Settlement Class certification is appropriate because the four prerequisites of Rule 23(a) (numerosity, commonality, typicality, adequacy of representation) are met. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Also, common issues of law or fact predominate over individual issues, making the class action a superior vehicle to fairly and efficiently adjudicate the Class's claims. *See* Fed. R. Civ. P. 23(b)(3). In certifying a Settlement Class, the Court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D). Plaintiffs, therefore, respectfully request that the Court certify the Settlement Class using the definition agreed to in the Stipulation. Stip. at ¶1.37.

### A.   The Requirements of Rule 23(a) have been met.

First, Rule 23(a)(1) requires a plaintiff to show "the class is so numerous that joinder of all

16

members is impracticable." Here, GEO stock traded on the NYSE, and Plaintiffs believe there are "hundreds or thousands of members in the proposed [Settlement] Class." ECF No. 46 at ¶¶33, 157. Accordingly, the class is sufficiently numerous, and the difficulty or inconvenience of joining all Settlement Class Members makes certification appropriate. *Aranaz v. Catalyst Pharm. Partners Inc.,* 302 F.R.D. 657, 664 (S.D. Fla. 2014) ("Securities fraud actions predicated on public misrepresentations typically satisfy Rule 23(a)(1) where the securities were traded on a national public exchange, as the putative class members are likely to be numerous, geographically dispersed and difficult to identify.").

Second, the proposed Settlement Class also meets the commonality requirement of Rule 23(a), which the Eleventh Circuit has characterized as a "low hurdle" and "can even be satisfied by a single common question." *Thorpe,* 2016 U.S. Dist. LEXIS 33637, at *17. Here, Plaintiffs allege that Defendants engaged in conduct involving a common nucleus of operative facts by mispresenting or omitting material information relating to the Company's pending lawsuits. *See In re NetBank, Inc.,* 259 F.R.D. 656, 664 (N.D. Ga. 2009) ("Generally, where plaintiffs allege that the action is a result of a unified scheme to defraud investors, the element of commonality is met.").

Third, Rule 23(a)(3) requires that Plaintiffs show their claims or defenses "…are typical of the claims or defenses of the class." "Class members' claims need not be identical…rather, there need only exist a sufficient nexus…between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co.,* 692 F.3d 1212, 1216 (11th Cir. 2012). Plaintiffs' claims (like those of the Settlement Class) concern publicly traded GEO stock, are based on the same facts and legal theories, and will be proven with the same evidence, thus certification is warranted.

Lastly, pursuant to Rule 23(a)(4), "class counsel and the class representatives are adequate

representatives of the class if (1) 'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation' and (2) the plaintiffs lack 'interests antagonistic to those of the rest of the class.'" *Holman,* 2009 U.S. Dist. LEXIS 113491, at \*9 (quoting *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 726 (11th Cir. 1987)). First, having purchased or acquired GEO common stock during the Class Period and having sustained damages as a result of the same alleged material misstatements, Plaintiffs interests are aligned with those of the other Settlement Class members. In addition, as discussed above, Plaintiffs have taken an active role in the litigation on behalf of the absent Settlement Class members. *See* O'Brien Decl., Ex. 3-4. Likewise, Lead Counsel have years of experience prosecuting securities class actions, as numerous courts around the country have recognized. *See id.* at Ex. 8-9. And the proposed Settlement was reached only after a thorough investigation of the facts and merits of the legal claims and defenses. *See* Joint Decl., ¶¶8, 11-28; *see also Air Can.,* 2019 U.S. Dist. LEXIS 221914, \*11 (preliminary approval recommended where "Plaintiff and the Settlement Class seek redress of the same alleged wrong" and "Plaintiff's counsel understands the claims in this case and possesses class action experience.").

     **B.**       **The Requirements of Rule 23(b)(3) have been met.**

The proposed Class satisfies Rule 23(b)(3), because: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Predominance inquiries are based "on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement."

*Amchem,* 521 U.S. at 623.[9] As in *Amgen*, common questions of law and fact exist as to all Settlement Class Members and predominate any questions affecting individual members. *See Amgen*, 568 U.S. at 459-60.

Finally, Courts have long recognized that the class action is not only a superior method, but possibly the only feasible method to fairly and efficiently adjudicate a controversy involving a significant number of purchasers of securities injured by securities law violations. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Settlement Class Members are not likely to have an interest in or the means to prosecute an individual case against GEO, a large, sophisticated company accustomed to litigation. Further, a class action benefits GEO which could not otherwise obtain a Class-wide release, and therefore, would have little incentive to agree to the current Settlement on an individual basis. Additionally, concerns of efficiency and economy further tip the scales in favor of collectively litigating the alleged claims. Therefore, resolution of the Action on behalf of the proposed Settlement Class is superior to any other available method of resolution.[10]

---

[9] The "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud [claims]." *Amchem*, 521 U.S. at 625; *see also Monroe Cty. Employees' Ret. Sys. v. Southern Co.,* 332 F.R.D. 370, 380 (N.D. Ga. 2019) (same). The Supreme Court provided clarity offering, "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 459 (2013).

[10] *See Air Can.,* 2019 U.S. Dist. LEXIS 221914, *12-13 ("The members of the Settlement Class suffered the same alleged injury and seek relief under the same legal theory; thus, as a practical matter, requiring multiple actions by each Settlement Class member would be financially burdensome and judicially inefficient.").

## VII.    PROPOSED SCHEDULE

In conjunction with the Notice Order, the Parties propose the following schedule:

| EVENT | PROPOSED TIMING |
|---|---|
| Deadline to mail Postcard Notice ("Notice Date") | No later than 21 calendar days after entry of Notice Order |
| Deadline to publish the Summary Notice | No later than 14 calendar days after Notice Date |
| Deadline to file initial papers in support of final approval and seek fees and expenses | No later than 42 calendar days prior to Settlement Hearing |
| Deadline to object or request exclusion | No later than 28 calendar days prior to Settlement Hearing |
| Deadline to file proof of mailing and publication | No later than 7 calendar days prior to Settlement Hearing |
| Deadline to file reply papers | No later than 14 calendar days prior to Settlement Hearing |
| Settlement Hearing | Approx. 100 calendar days from entry Notice Order |
| Deadline to submit Proof of Claim | No later than 120 calendar days after Notice Date |

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant their Motion in its entirety.

Dated:  May 8, 2023                                  Respectfully submitted,

**CULLIN O'BRIEN LAW, P.A.**

 */s/ Cullin O'Brien*
Cullin O'Brien (FL# 0597341)
6541 NE 21st Way
Fort Lauderdale, Florida 33308
(T): (561) 676-6370
(F): (561) 320-0285
cullin@cullinobrienlaw.com

*Additional Counsel for Lead Plaintiff James Michael DeLoach*

**LEVI & KORSINSKY, LLP**
Adam M. Apton
55 Broadway, 4th Floor
New York, New York 10006
(T): (212) 363-7500
(F): (212) 363-7171
aapton@zlk.com

**FREEDMAN NORMAND FRIEDLAND LLP**
Velvel (Devin) Freedman (FL# 99762)
Ivy T. Ngo
Constantine P. Economides (FL# 118177)
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
(T): (786) 924-2900
vel@fnf.law
ingo@fnf.law
ceconomides@fnf.law

*Lead Counsel for Plaintiffs and the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
(T): (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Edward Oketola*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 8, 2023, I authorized the electronic filing of the foregoing

document with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the e-mail address denoted on the attached Electronic Mail Notice List.

<u>*/s/ Cullin O'Brien*</u>
Cullin O'Brien