**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case File No. 9:20-cv-81063-RS

STEVE HARTEL, individually and on behalf
of all others similarly situated,

                    Plaintiff,

    vs.

THE GEO GROUP, INC., *et al.*,

                    Defendants.

_____      /

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
**AND PLAN OF ALLOCATION AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

I.        INTRODUCTION ....................................................................................................5

II.       THE SETTLEMENT WARRANTS FINAL APPROVAL ...................................7

          A.      Plaintiffs and Lead Counsel Adequately Represented the Class........................8

          B.      The Settlement is the Product of Arm's-Length Negotiations ...........................9

          C.      The Relief Provided to the Settlement Class is Adequate................................11

          D.      All Settlement Class Members Are Treated Equitably ....................................15

          E.      The Remaining Eleventh Circuit Factors Are Satisfied ..................................15

III.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................18

IV.       NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE
          PROCESS.........................................................................................................19

V.        THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED............................20

VI.       CONCLUSION ................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ............................................................................................................10

*Aranaz v. Catalyst Pharm. Partners Inc*.,
    2014 WL 11870214 (S.D. Fla. Dec. 3, 2014) ............................................................21

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ..............................................................................8, 9

*Berman v. General Motors LLC*,
    2019 WL 6163798 (S.D. Fl. Nov. 18, 2019)...............................................................18

*Carpenters Health & Welfare Fund v. Coca- Cola Co.*,
    2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ...................................................18, 20

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ....................................................15, 16

*Deas v. Russell Stover Candies, Inc.*,
    2005 WL 8158201 (N.D. Ala. Dec. 22, 2005)...........................................................17

*Guevoura Fund Ltd. v. Sillerman*,
    2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019)...........................................................14

*Hanley v. Tampa Bay Sports & Entm't. LLC*,
    2020 U.S. Dist. LEXIS 89175 (M.D. Fla. Apr. 23, 2020)..........................................16

*Howard v. Chanticleer Holdings, Inc.*,
    2014 WL 12600501 (S.D. Fla. Aug. 14, 2014)..........................................................19

*In re Auto. Parts Antitrust Litig.*,
    2019 WL 7877812 (E.D. Mich. Dec. 20, 2019).........................................................19

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................................15

*In re Checking Acct. Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011).........................................................11, 13, 18

*In re China Sunergy Sec. Litig.*,
    2011 WL 1899715 (S.D.N.Y. May 13, 2011)..............................................................6

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    2020 WL 256132 (N.D. Ga. Mar. 17, 2020)............................................ 10, 13, 16, 18

*In re HealthSouth Corp. Sec. Litig.*,
    572 F.3d 854 (11th Cir. 2009).....................................................................................8

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006)...............................................................................13

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
   2023 WL 5511513 (E.D.N.Y. Aug. 24, 2023) ........................................................11

*In re NetBank, Inc. Sec. Litig.*,
   2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) ........................................................13

*In re Sunbeam Sec. Litig.*,
   176 F. Supp. 2d 1323 (S.D. Fla. 2001) ..........................................................17, 19

*Jairam v. Colourpop Cosmetics*, LLC,
   2020 WL 5848620 (S.D. Fla. Oct. 1, 2020) ........................................................12

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
   2016 WL 6542707 (D. Conn. Nov. 3, 2016) ........................................................11

*Kirkpatrick v. J.C. Bradford Co.*,
   827 F.2d 718 (11th Cir. 1987) ......................................................................10

*Kuhr v. Mayo Clinic Jacksonville*,
   2020 WL 5912350 (M.D. Fla. Oct. 6, 2020) ........................................................20

*Lipuma v. Am. Express Co.*,
   406 F. Supp. 2d 1298 (S.D. Fla. 2005) ............................................................18

*Lowry v. Andrx Corp.*,
   2008 WL 11331829 (S.D. Fla. Apr. 4, 2008) ......................................................21

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ..............................................................19

*Morgan v. Pub. Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. 2016) ............................................................11

*Nelson v. Mead Johnson & Johnson Co.*,
   484 F. App'x 429 (11th Cir. 2012) ..............................................................12, 18

*Perez v. Asurion Corp.*,
   501 F. Supp. 2d 1360 (S.D. Fla. 2007) ............................................................12

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ..................................................................19

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992) ..............................................................14

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ....................................................................15

*Strube v. Am. Equity Inv. Life Ins. Co.*,
   226 F.R.D. 688 (M.D. Fla. 2005) ..................................................................13

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ..................................................12, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................................20

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) ...................................................................................16

*Wolff v. Cash 4 Titles*,
  2012 U.S. Dist. LEXIS 153786 (S.D. Fla. Sept. 26, 2012) .........................................16

*Yang v. Focus Media Holding Ltd.*,
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .................................................................8

*Zuckerman v. Smart Choice Auto. Grp., Inc.*,
  2001 WL 686879 (M.D. Fla. May 3, 2001) .................................................................14

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................10, 20, 21

Lead Plaintiffs James Michael DeLoach ("DeLoach") and Edward Oketola ("Oketola") (together, "Plaintiffs"), respectfully submit this Unopposed Motion for (1) final approval of the proposed settlement resolving the Action in exchange for payment of $3 million in cash for the benefit of the Settlement Class (the "Settlement"), and (2) approval of the proposed plan of allocation of the proceeds of the Settlement.[1]

## I.  INTRODUCTION

After over three years of hard-fought litigation, Plaintiffs have agreed to settle this Action for a cash payment of $3 million for the benefit of the Settlement Class. As discussed in greater detail below, Plaintiffs respectfully submit that the Settlement is an excellent result for the Settlement Class and that final approval of the Settlement is warranted, based on the following factors:

**The Outstanding Results**: The $3 million Settlement represents 8.9% of the Settlement Class's maximum estimated aggregate damages of $33.8 million, which is greater than the typical recovery in similar securities class action lawsuits. *See* Joint Declaration of Adam M. Apton and Ivy T. Ngo (ECF No. 87-1) (the "Joint Decl."), ¶31 (citing Cornerstone Research report); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting an average recovery of 3% to 7% of estimated damages). This recovery is particularly notable in light of the obstacles Plaintiffs faced in the litigation, including those relating to the Rule 10b-5 element of

---

[1] Plaintiffs respectfully refer the Court to the Joint Declaration of Adam M. Apton and Ivy T. Ngo dated May 5, 2023 (ECF No. 87-1) (the "Joint Decl.") and the accompanying Supplemental Joint Declaration of Adam M. Apton and Ivy T. Ngo (the "Supp. Joint Decl."), filed herewith, for a detailed description of the case and the Settlement. Unless otherwise indicated, all capitalized terms have the same meanings as in the Stipulation and Agreement of Settlement dated May 1, 2023 (ECF No. 86). Unless otherwise indicated, all emphasis has been added, and all internal citations and quotation marks have been omitted.

"loss causation" and whether GEO's statements about its ability to maintain its capital funding and/or dividends were materially misleading. *See* Joint Decl. at ¶¶32-33.

**Extensive Litigation Efforts:** The Parties reached the Settlement only after vigorous litigation and successive motions to dismiss, by which time Plaintiffs had developed a thorough understanding of the strengths and weaknesses of the claims and defenses in the Action. The $3 million Settlement was achieved after Lead Counsel: (1) conducted an extensive investigation of all potential claims that could be asserted against the Company and its executives or others, (2) drafted a detailed amended and second amended complaint, (3) prevailed in part against Defendants' second and third motions to dismiss, (4) retained experts and consultants, and (5) participated in lengthy, mediator-assisted settlement negotiations. Thus, the Settlement is the culmination of substantial investigation, document review, vigorous litigation, and a thorough mediation process with a nationally regarded private mediator.

**The Risks Involved:** In reaching the Settlement, Plaintiffs and Lead Counsel considered the numerous risks associated with continuing the litigation, including the risks of recovering less than the Settlement Amount after substantial delay or of no recovery at all. Plaintiffs and Lead Counsel believe their case against Defendants is strong, but acknowledge Defendants had credible arguments concerning liability. For example, while the Court partially denied Defendants' motions to dismiss, it also significantly limited Plaintiffs' theories of liability and actionable statements, thus substantially reducing the Settlement Class's possible recovery. *See* ECF Nos. 45, 47. Further, Defendants maintain that Plaintiffs have failed to demonstrate the alleged corrective disclosures were the proximate cause of any alleged loss. These and many other risks support the reasonableness of the Settlement.

**Arm's-Length Settlement Negotiations**: The Settlement is the product of the Parties'

hard fought, arm's-length negotiations, comprising a full-day mediation session and extensive follow-up negotiations conducted under the auspices of Robert A. Meyer of JAMS, a "highly qualified mediator" whose involvement "strongly supports a finding that negotiations were conducted at arm's length and without collusion." *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014).

Based on the results achieved, the risks of litigating this Action, and the substantial delay that would result from the continued litigation of this case through trial and the inevitable subsequent appeals, Plaintiffs and Lead Counsel strongly believe that the Settlement is a highly favorable result. The $3 million Settlement achieved by Plaintiffs and Lead Counsel avoids the risks and uncertainties of continued litigation and provides an immediate and substantial financial benefit for the Settlement Class. Accordingly, Plaintiffs respectfully submit that the Court should approve the Settlement as fair, adequate and reasonable. *See* Declaration of James Michael DeLoach, ECF No. 87-3, ¶4; Declaration of Edward Oketola, ECF No. 87-4, ¶4.

Plaintiffs also request that the Court approve the proposed Plan of Allocation for the Net Settlement Fund. The Plan of Allocation is designed to equitably distribute the Settlement Fund proceeds on a *pro rata* basis to Authorized Claimants. It was prepared with the assistance of Plaintiffs' damages expert, who calculated the alleged artificial inflation in the prices of GEO's stock during the Class Period and is substantially similar to numerous other plans that have been approved in this District and around the country as fair, adequate, and reasonable.

## II.     THE SETTLEMENT WARRANTS FINAL APPROVAL

The Eleventh Circuit and courts nationwide recognize that there is a "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *see also In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors

the pretrial settlement of class action lawsuits.").

Rule 23(e)(2) of the Federal Rules of Civil Procedure provides that the Court should determine whether a proposed settlement is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In conjunction with these factors, courts in the Eleventh Circuit examine: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the anticipated complexity, expense and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett,* 737 F.2d at 986.

This Court has already made a preliminary finding that the Settlement is "fair, reasonable, and adequate to the Settlement Class" under these factors in its Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (subject to further consideration at the Settlement Hearing). *See* ECF No. 89. As set forth below, the $3 million Settlement readily satisfies each of the applicable factors.

### A.   Plaintiffs and Lead Counsel Adequately Represented the Class

In evaluating the adequacy of representation, courts in this District consider (1) whether

class representatives have interests antagonistic to the interests of other class members; and (2) whether class counsel has the necessary qualifications and experience to lead the litigation. *See, e.g., Kirkpatrick v. J.C. Bradford Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, *5 (N.D. Ga. Mar. 17, 2020).

Plaintiffs and Lead Counsel easily meet both of these criteria. Plaintiffs asserted claims that are typical of and coextensive with those of other Settlement Class Members and have no interests antagonistic to the interests of other members of the Settlement Class. Plaintiffs and the other Settlement Class Members all purchased GEO stock during the Class Period and were allegedly damaged by the same alleged false and misleading statements. And, if Plaintiffs were required to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Moreover, Plaintiffs and Lead Counsel have adequately represented the Settlement Class in their vigorous prosecution of the Action and in the negotiation and achievement of the Settlement. Lead Counsel Levi & Korsinsky, LLP and Freedman Normand Friedland, LLP are highly qualified and experienced in securities litigation, and were able to successfully conduct the litigation against skilled opposing counsel and obtain a favorable settlement. Lead Counsel vigorously prosecuted the Settlement Class's claims and expended significant time and effort throughout the litigation. Accordingly, the Settlement Class was adequately represented.

### B.    The Settlement is the Product of Arm's-Length Negotiations

In weighing approval of a class action settlement, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Settlement here was reached only after extensive arm's-length negotiations between the Parties, which were conducted

with the assistance of an experienced mediator. The mediation process included the exchange of detailed mediation statements and a full-day mediation session under the direction of Robert A. Meyer. Mr. Meyer is a widely-respected JAMS mediator who has mediated hundreds of complex disputes with aggregate values in the billions of dollars—including numerous securities class actions against Fortune 500 companies. *See Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at *2 (D. Conn. Nov. 3, 2016) ("Robert A. Meyer … is experienced with mediating large, complex matters…"). These facts strongly support the conclusion that the Settlement is fair. *E.g.*, *In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2023 WL 5511513, at *7 (E.D.N.Y. Aug. 24, 2023) ("As to the parties' selected mediator, Robert Meyer, several courts in this circuit have held that Mr. Meyer's involvement has supported a finding that settlement negotiations were at arm's length."); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

In addition, Plaintiffs and Lead Counsel were sufficiently knowledgeable about the strengths and weaknesses of the case before reaching the agreement to settle. Lead Counsel had conducted an extensive investigation regarding the alleged fraud; prepared and filed a detailed amended and second amended complaint; briefed and prevailed in part against Defendants' motions to dismiss; conducted fact discovery; consulted extensively with experts and consultants; and participated in lengthy, mediator-assisted settlement negotiations. Accordingly, the Court should give considerable weight to the judgment of Plaintiffs and Lead Counsel that the Settlement is in the best interests of the Settlement Class. Indeed, "[i]n evaluating a proposed class action settlement, the Court will not substitute its business judgment for that of the parties." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). Lead Counsel's substantial

experience in cases of this nature gives further weight to its judgment that the Settlement is fair and reasonable. *See Jairam v. Colourpop Cosmetics*, LLC, 2020 WL 5848620, at *3 (S.D. Fla. Oct. 1, 2020) ("In evaluating a proposed class action settlement, 'the district court may rely upon the judgment of experienced counsel for the parties.'") (quoting *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012)); *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) ("[a] district court properly considers the judgment of experienced counsel when asked to approve a class action settlement").

### C.    The Relief Provided to the Settlement Class is Adequate

#### 1.    The Size of the Settlement Supports Approval

Plaintiffs and Lead Counsel have achieved an outstanding benefit for the Settlement Class, whether measured in absolute terms or as a percentage of estimated recoverable damages.  Plaintiffs estimate the amount of damages–after consulting with Crowninshield Financial Research, a highly experienced economics and market efficient expert–to be $33.8 million. *See* Joint Decl. at ¶31. According to Cornerstone Research, the median settlement as a percentage of total class-wide damages in securities fraud cases with damages ranging from $25 million to $74 million is 7.4%. *See id.* Thus, the $3 million cash Settlement represents 8.9% of the estimated class-wide damages and falls in line with settlements in other similar class action lawsuits. Moreover, as discussed further below, even assuming success at trial, Plaintiffs' chances of achieving a judgment anywhere near the upper end of its damages range would be remote. Indeed, settlements valued at much lower percentages of damages are routinely not only approved but praised by courts. *See, e.g., Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (settlement worth 5.5% of maximum damages was "an excellent recovery"). Thus, the Settlement is an exceptional recovery for the Settlement Class.

11

## 2.      The Risks of Continued Litigation Support Approval

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court should view the Settlement "in light of the risks of continued litigation." *Equifax*, 2020 WL 256132, at *7; *see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697-98 (M.D. Fla. 2005) (analyzing "whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement"); *Checking Account Overdraft Litig*., 830 F. Supp. 2d at 1345 (court need not determine if the settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial."). Indeed, courts have routinely recognized, "the complexity of securities class action litigation is notably difficult and notoriously uncertain." *In re NetBank, Inc. Sec. Litig*., 2011 WL 13353222, at *3 (N.D. Ga. Nov. 9, 2011). Accordingly, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig*., 233 F.R.D. 306, 310 (E.D.N.Y. 2006). Here, there is no question that continued litigation would have been costly, risky, and protracted. Indeed, even though Plaintiffs prevailed at the pleading stage, the Court significantly limited Plaintiffs' theories of liability and actionable statements, thus substantially reducing the Settlement Class's possible recovery. *See* ECF Nos. 45, 47.

Further, Plaintiffs still had to prove their claims. Defendants maintain that Plaintiffs have failed to demonstrate the alleged corrective disclosures were the proximate cause of any alleged loss. *See* Joint Decl. at ¶¶ 34-35. Defendants would have continued to make that argument, which would–if accepted by the Court or a jury–dramatically limit potential recovery, or eliminate it altogether. Thus, Plaintiffs' likelihood of success at trial is not certain. However, even assuming Plaintiffs were successful at each junction, continuing litigation would pose considerable costs to

the Parties and the Court, and would inevitably delay recovery for the Settlement Class. *See Thorpe*, 2016 WL 10518902, at \*3 (granting final approval and noting that "ongoing discovery and trial preparation would have substantially increased costs to the Class").

While Plaintiffs believe they had credible counterarguments on each of Defendants' points, the fact remains that the Court at summary judgment, or the jury at trial, could have sided with Defendants, thereby significantly reducing or eliminating recoverable damages and undermining the viability of the entire Action. Courts in this District have recognized that, even with the aid of expert testimony, disputes over damages present a substantial risk before a jury, even in a successful trial outcome. *See Zuckerman v. Smart Choice Auto. Grp., Inc.*, 2001 WL 686879, at \*10 (M.D. Fla. May 3, 2001) ("The determination of damages . . . is a complicated and uncertain process, typically involving conflicting expert opinions."); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) ("In the 'battle of experts,' it is impossible to predict with any certainty which arguments would find favor with the jury.").

In addition, moving forward, the Action would have continued to present significant cost and risks, as pre-trial proceedings would further involve contentious fact discovery; preparation of complex expert reports and discovery of the expert witnesses; the negotiation and completion of a complex and voluminous pre-trial order; extensive briefing on motions for summary judgment; motions to strike expert reports and other motions in limine likely to be made, and a costly and labor intensive trial would be followed by "inevitable post-trial motions and appellate proceedings." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, \*7 (S.D.N.Y. Dec. 18, 2019). Consequently, at "[e]ach step of the way, expenses would continue to accumulate, further decreasing the funds available to Class Members" if the litigation was to continue. *Id.*

In sum, even after a successful trial, there was no guarantee that Plaintiffs would have

13

obtained a judgment greater than or even equivalent to the $3 million Settlement, and, indeed, there was a very significant risk that years of continued litigation might yield a smaller recovery—or no recovery at all—after trial or the inevitable appeals.[2] These risks strongly support approval of the Settlement.

### 3. The Proposed Method for Distributing Relief to the Settlement Class is Effective

Under Rule 23(e)(2)(C)(ii), courts consider "the effectiveness of [the] proposed method of distributing relief to the class." Here, as demonstrated below in Section III, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well established, effective procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. Epiq, the Court-approved claims administrator, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing like the method proposed here is standard in securities class action settlements and has been long found to be effective. *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

### 4. Lead Counsel's Fee Request is Fair and Reasonable

Lead Counsel has applied for a fee of one-third of the Settlement Fund. As set forth in more

---

[2] *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.,* 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

detail in the Memorandum of Law in Support of Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, such a fee is highly reasonable in light of the work performed and the results obtained and is comparable to other settlements in complex class actions approved in the Eleventh Circuit and nationwide. *See, e.g., Hanley v. Tampa Bay Sports & Entm't. LLC*, 2020 U.S. Dist. LEXIS 89175, at *16 (M.D. Fla. Apr. 23, 2020) (citing *Wolff v. Cash 4 Titles*, 2012 U.S. Dist. LEXIS 153786, at *16-*17 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming attorneys' fee award of 33.3% to class counsel)); *see also Equifax*, 2020 WL 256132, at *34 (noting that "[a]wards of up to 33% of the common fund are not uncommon in the Eleventh Circuit" in complex class actions, and that, in the Eleventh Circuit, the average fee was 30% and the median fee was 33% between 2009 and 2013).

### D.    All Settlement Class Members Are Treated Equitably

As set forth in the Notice (at 8-10) and explained below in Section III, the Plan of Allocation—which was developed in consultation with Plaintiffs' damages expert—treats all Settlement Class Members equitably. Under the Plan of Allocation, the Authorized Claimants shall receive their *pro rata* share of the Net Settlement Fund based upon their recognized claim compared to the total recognized claims of all Authorized Claimants. *See* Notice, ECF No. 86, pp. 59-61 (Exhibit A-1). *See Christine Asia Co., Ltd.,* 2019 WL 5257534 at *15 (finding plan of allocation entitling class members to *pro rata* share to treat all class members equitably).

### E.    The Remaining Eleventh Circuit Factors Are Satisfied

In addition to the factors set forth in Rule 23, courts in the Eleventh Circuit are further guided by the factors set forth in *Bennett*. *Equifax,* 2020 WL 256132, at *10. Many of these factors

overlap substantially with those in Rule 23. *See Id*. Each of these factors supports final approval of the Settlement.

### 1. The Likelihood of Success at Trial Supports Final Approval of the Settlement

The "first and most important *Bennett* factor is the likelihood of success at trial." *Thorpe*, 2016 WL 10518902, at *2-3. This factor "is evaluated in the context of the relief proposed by the settlement." *Id.* at *3. As set forth, *supra*, the many risks Plaintiffs would face before, during, and after trial weigh in favor of final approval of the Settlement. Defendants would have vigorously argued that Plaintiffs have failed to demonstrate the alleged corrective disclosures were the proximate cause of any alleged loss at summary judgment and trial. Defendants' success on any one of these bases would have presented the risk of a substantially reduced recovery, or no recovery whatsoever. Accordingly, this factor strongly weighs in favor of final approval.

### 2. The Settlement Amount is Reasonable Considering the Range of Possible Recoveries

"The second and third factors in the Eleventh's Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Deas v. Russell Stover Candies, Inc.,* 2005 WL 8158201, at *11 (N.D. Ala. Dec. 22, 2005); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) (these factors "are easily combined"). As set forth above, the $3 million cash Settlement is well within the range of reasonableness under the circumstances to warrant final approval of the Settlement and the issuance of notice to the Settlement Class. Realistic maximum damages in the case are $33.8 million, and Defendants raised a number of credible arguments concerning proximate cause throughout the litigation that, if accepted, would have substantially

reduced or eliminated altogether recoverable damages, further underscoring the valuable benefits obtained through the proposed Settlement. *See Carpenters Health & Welfare Fund v. Coca- Cola Co.*, 2008 WL 11336122, *8 (N.D. Ga. Oct. 20, 2008) ("the determination of loss causation and damages is a complicated and uncertain process" with "highly unpredictable" results at trial). Indeed, particularly in light of the proximate cause risks described above, the $3 million Settlement—estimated to be nearly 10% of maximum damages—is likely "in the high range of what could have been obtained had the parties continued to litigate." *Equifax,* 2020 WL 256132, at *10. In assessing the reasonableness of the settlement, the Court can "rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Carpenters Health & Welfare Fund*, 2008 WL 11336122, at *8; *see also Nelson v. Mead Johnson & Johnson Co*., 484 F. App'x 429, 434 (11th Cir. 2012) (same); *Checking Acct. Overdraft Litig.,* 830 F. Supp. 2d at 1345.

### 3.    The Stage of Proceedings at Which Settlement Was Achieved Strongly Supports Final Approval

In assessing the stage of the proceedings at which a settlement is achieved, the relevant inquiry is whether the parties "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Berman v. General Motors LLC*, 2019 WL 6163798, at *8 (S.D. Fl. Nov. 18, 2019); *accord Lipuma v. Am. Express Co*., 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

Here, the Settlement was reached after over three years of hard-fought litigation, and after Plaintiffs conducted an extensive investigation, drafted a detailed amended and second amended complaint, and prevailed in part against Defendants' second and third motions to dismiss. Plaintiffs also retained and consulted with experts and participated in extensive settlement negotiations. In

sum, by the time the Settlement was reached, Plaintiffs had sufficient information to assess the strengths and weaknesses of their claims and were "well aware of the other side's position and the merits thereof." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1332.

> **4.    The Favorable Response to the Settlement from the Class Supports Final Approval**

The positive reaction of class members, and the absence of substantial objections, "is strong evidence of the propriety and acceptability of that request." *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992). The Court-ordered deadline for submitting objections and requests for exclusions is October 17, 2023. *See* ECF No. 89, ¶ 15. As of September 29, 2023, no objections to, or requests for exclusion from, the Settlement have been received. Decl. of Morgan Kimball ("Epiq Decl."), filed herewith, at ¶¶22, 23. Plaintiffs will file reply papers on October 31, 2023, after the exclusion and objection deadline has passed, to further address this factor.

**III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

As with settlements, courts in this Circuit assess whether plans of allocation are "fair and reasonable." *Howard v. Chanticleer Holdings, Inc.*, 2014 WL 12600501, at *9 (S.D. Fla. Aug. 14, 2014). Under this analysis, the Court's "principal obligation in approving a plan of allocation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *In re Auto. Parts Antitrust Litig.*, 2019 WL 7877812, at *1 (E.D. Mich. Dec. 20, 2019). Moreover, a plan of allocation "need not be perfect," and "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015).

Here, the proposed Plan of Allocation, which has been preliminarily approved by the Court, fairly and reasonably distributes the Net Settlement Fund on a *pro rata* basis among claimants based

on their respective Recognized Losses. In calculating the estimated artificial inflation caused by Defendants' alleged misrepresentations and omissions, Plaintiffs' expert considered price changes in GEO common stock in reaction to certain public announcements allegedly revealing the truth concerning Defendants' alleged misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry forces. Similar plans of allocation are commonly used and approved in class actions and represent a widely recognized means of fairly distributing settlement funds to class members. *See, e.g. Carpenters Health & Welfare Fund*, 2008 WL 11336122, at *5 (similar plan of allocation developed by damages expert found fair and reasonable because it "treats all Settlement Class Members in a similar manner—ensuring that everyone entitled to a distribution under the Plan of Allocation who submits a valid and timely claim gets a *pro rata* share of the Net Settlement Fund in the proportion that his, her, or its Recognized Claim bears to the total of all Recognized Claims").

## IV.   NOTICE TO THE SETTLEMENT CLASS SATISFIED RULE 23 AND DUE PROCESS

The Notice to the Settlement Class—the form of which has already been approved by this Court—satisfied the requirements of Rule 23, which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Kuhr v. Mayo Clinic Jacksonville*, 2020 WL 5912350, at *9 (M.D. Fla. Oct. 6, 2020). The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005). Put another way, the Notice satisfies the requirements of Rule 23 and due process because it "clearly and

concisely explains the nature of the action and the rights of class members, thereby satisfying the requirements of Rule 23 and due process." *Equifax,* 2020 WL 256132, at *27.

Both the substance of the Notice and the method of its dissemination to potential members of the Class satisfied these standards. The Court-approved Notice includes all the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7). In accordance with the Court's Preliminary Approval Order, Epiq began mailing copies of the Postcard Notice to potential Class Members on July 31, 2023. *See* Epiq Decl. at ¶10. As of September 29, 2023, Epiq had disseminated 5,483 copies of the Postcard Notice to potential Class Members and nominees. *See Id.* at ¶15. In addition, Lead Counsel caused the Summary Notice to be published over the *Business Wire* on August 14, 2023. *See id.* ¶5. This combination of individual mail to all Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, and transmitted over a newswire, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). *See Aranaz v. Catalyst Pharm. Partners Inc.*, 2014 WL 11870214, at *2-3 (S.D. Fla. Dec. 3, 2014) (notice distributed by first class mail to all class members "who can be identified with reasonable effort . . . constitute[s] the best notice practicable under the circumstances; and constitute[s] due and sufficient notice to all persons and entities entitled thereto"); *see also Lowry v. Andrx Corp.*, 2008 WL 11331829, at *2 (S.D. Fla. Apr. 4, 2008) (approving substantially similar notice method).

## V.      THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

On July 7, 2023, the Court granted Lead Plaintiffs' motion for preliminary approval of the Settlement, and preliminarily certified the Settlement Class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure. ECF No. 89. Nothing has changed to alter the propriety of certification of the proposed Settlement Class for settlement purposes and thus, for the

reasons set forth in Plaintiffs' preliminary approval papers (ECF No. 89), Plaintiffs respectfully request that the Court grant final certification of the Settlement Class.

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully submit that the proposed Settlement and Plan of Allocation readily meet all of the requirements under Rule 23, the PSLRA, and Eleventh Circuit precedent. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.[3]

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for Plaintiffs certifies that they have conferred with counsel for Defendants, and Defendants (i) support final approval of the Settlement; and (ii) take no position with respect to the other relief requested in the motion, including but not limited to the Court's approval of the Plan of Allocation.

[Signature blocks on following page]

---

[3] A proposed order granting final approval of the Settlement was submitted in conjunction with the motion for Preliminary Approval. ECF No. 87-5. An updated proposed order with respect to final approval (with information regarding requests for exclusion) along with a proposed order granting final approval of the Plan of Allocation will be submitted with Lead Plaintiffs' reply brief in further support of this motion, which will be filed on October 31, 2023.

Dated:  October 3, 2023

Respectfully submitted,

**CULLIN O'BRIEN LAW, P.A.**

 _/s/ Cullin O'Brien_
Cullin O'Brien (FL# 0597341)
6541 NE 21st Way
Fort Lauderdale, Florida 33308
(T): (561) 676-6370
(F): (561) 320-0285
cullin@cullinobrienlaw.com

_Additional Counsel for Lead Plaintiff James Michael DeLoach_

**LEVI & KORSINSKY, LLP**
Adam M. Apton
33 Whitehall Street, 17th Floor
New York, New York 10004
(T): (212) 363-7500
(F): (212) 363-7171
aapton@zlk.com

**FREEDMAN NORMAND FRIEDLAND LLP**
Velvel (Devin) Freedman (FL# 99762)
Ivy T. Ngo
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
(T): (786) 924-2900
vel@fnf.law
ingo@fnf.law
ceconomides@fnf.law

_Lead Counsel for Plaintiffs and the Class_

**THE SCHALL LAW FIRM**
Brian Schall
1880 Century Park East, Suite 404
Los Angeles, CA 90067
(T): (424) 303-1964
brian@schallfirm.com

_Additional Counsel for Lead Plaintiff Edward Oketola_

22