**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case File No. 9:20-cv-81063-RS

STEVE HARTEL, individually and on
behalf of all others similarly situated,

|  |  |
|---|---|
| | Plaintiff, |
| vs. | |
| THE GEO GROUP, INC., *et al.*, | |
| | Defendants. |

## PLAINTIFFS' MOTION FOR DISTRIBUTION OF CLASS SETTLEMENT FUNDS

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiffs James Michael DeLoach ("DeLoach") and Edward Oketola ("Oketola") (together, "Plaintiffs"), by and through their undersigned attorneys, hereby move for an order: (a) approving the administrative determinations of the court-appointed Claims Administrator[1], Epiq Class Action & Claims Solutions, Inc. ("Epiq"), concerning the acceptance and rejection of claims as recommended in the Declaration of Morgan Kimball concerning the results of the Claims Administration Process ("Kimball Declaration"), attached as Exhibit 1 in Support of Plaintiffs' Motion for Distribution of Class Settlement Funds, (b) directing payment of the Net Settlement Fund to the Authorized Claimants as identified in Kimball Declaration, pursuant to the Stipulation and the Plan of Allocation; and (c) approving a payment to the Claims Administrator for the balance of its fees and expenses incurred in connection with disseminating notice to the Settlement Class, preparing tax returns for the Settlement Fund, processing Proofs of Claim, communicating with Class Members and distributing the balance of the Net Settlement Fund.

Plaintiffs respectfully request that the Court decide this motion on the papers and approve and enter the proposed order submitted herewith.

## I. INTRODUCTION

On July 7, 2023, the Court entered the Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 89) ("Preliminary Approval Order"). On November 17, 2023, the Court entered the Order and Final Judgment (Dkt No. 104) ("Final Judgment"), finally approving the Settlement, finding the Plan of Allocation to be a fair and reasonable method of allocating the Net Settlement Fund among Class Members and directing Class Counsel and the Claims Administrator to administer the Stipulation and Plan of Allocation in accordance with their terms and

---

[1] All capitalized terms herein, unless otherwise indicated, have the same meaning and definition as given to them in the Stipulation and Agreement of Settlement, dated May 1, 2023 (the "Stipulation") (Dkt. No. 86).

provisions.

The Claims Administrator has now completed all analyses and accounting procedures in connection with the submitted claims and has finalized its determination of which claims are authorized and which are ineligible. Kimball Declaration ¶¶ 14-26. All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Authorized Claimants. Class Counsel, therefore, requests that the Court authorize the distribution of the Net Settlement Fund to Authorized Claimants as identified in the Kimball Declaration.

## II.  DETERMINATION OF AUTHORIZED CLAIMANTS

Under the Preliminary Approval Order, Class Members wishing to participate in the Settlement were required to submit Proofs of Claim postmarked no later than November 28, 2023. Preliminary Approval Order ¶ 13. As of September 4, 2024, the Claims Administrator received 59 claims postmarked after the November 28, 2023 claim submission deadline established by the Court. In consultation with Plaintiffs' Counsel, the Claims Administrator recommends that no Claim Form postmarked after July 24, 2024 (the "Claims Bar Date") be deemed eligible for payment.[2]

As a result of a very effective notice program, the Claims Administrator has processed 12,047 Proofs of Claim. Kimball Declaration ¶ 3. The Claims Administrator received and reviewed all 12,047 Proofs of Claim and has now finalized its determination of which claims are authorized and which are ineligible. *Id*. ¶ 31.

### A. Valid and Properly-Documented Claims

The Claims Administrator has determined, following an analysis of the 12,047 Proofs of Claim that were postmarked through July 24, 2024, that 5,161 claims, representing Recognized Losses of $49,227,419.41, should be accepted. Of these claims, $48,309,116.67 worth were timely (i.e. postmarked no later than November 28, 2023) ("Timely Eligible Claims") and $918,302.74 worth

---

[2] There must be a final cutoff date after which no more claims will be accepted so that there may be a proportional distribution of the Net Settlement Fund and the distribution may be accomplished.

were postmarked after November 28, 2023 but received on or before July 24, 2024 ("Late But Otherwise Eligible Claims"). Kimball Declaration ¶ 25.

Plaintiffs request that the Court accept the Timely Eligible Claims and the Late But Otherwise Eligible Claims. The Late Eligible Claims have not caused significant delay to the distribution of the Net Settlement Fund or otherwise prejudiced any Authorized Claimant, and Plaintiffs believe that it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the November 28, 2023 submission deadline but while claims were still being processed. *See In re Agent Orange Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261–63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt- out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"); *In re Authentidate Holding Corp. Secs. Litig.*, No. 05 Civ. 5323 (LTS), 2013 U.S. Dist. LEXIS 11815, at *3 (S.D.N.Y. Jan. 25, 2013) (courts have "inherent power to accept late claims") (citation omitted); *In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) (court allowing late claims postmarked within one month and four days of original deadline to participate in the distribution of settlement funds).

Accordingly, Plaintiffs respectfully request that the Court approve the Timely Eligible Claims and the Late But Otherwise Eligible Claims as listed in Kimball Declaration.

**B. Deficient Claims**

Epiq initially identified 7,178 deficient claims from both paper and electronic claims. Kimball Declaration ¶¶ 17, 20. Of the 1,536 paper claims received as of September 18, 2024, 792 were incomplete or had one or more defects or conditions of ineligibility, such as the Claim Form not being signed, not being properly documented, or indicating no eligible transactions in GEO Group, Inc. common stock on a U.S. exchange during the Class Period. *Id.* at ¶ 17. Of the 10,511 electronic claims

received, 6,386 were deficient or ineligible. *Id.* at ¶ 20. For all deficient claims, Epiq sent deficiency notices advising claimants of the deficiency and giving them the opportunity to cure the deficiency. *Id.* at ¶¶ 17-21.

Claimants were advised that they had the right to contest Epiq's administrative determinations of deficiencies or ineligibility within 20 days of the date of notification and that they could request that the dispute be submitted to the Court for review. *Id.* at ¶ 22. Epiq received 11 requests for review by the Court of the administrative determination made by Epiq. *Id.* at ¶ 23. In an attempt to resolve the disputes without necessitating the Court's intervention, Epiq contacted all of the claimants requesting Court review, and with respect to those Claimants who were reached, Epiq answered all of their questions, fully explained Epiq's determination of the Claims' status, and facilitated the submission of missing information or documentation where applicable. *Id.* As a result of these efforts, 10 requests for Court review have been resolved. *Id.* Specifically, seven (7) claimants cured the deficiencies in their claims, which have since been accepted, and three (3) claims did not generate a Recognized Loss and, after speaking with Epiq, the claimants further understood the deficiencies and withdrew their requests for Court review. *Id.*

There has been one (1) request for Court review that has not been resolved or retracted that Epiq recommends for complete rejection. Kimball Declaration ¶ 24. Epiq contacted the claimant by phone or e-mail three times, and the claimant did not respond to Epiq's outreach. *Id*. Class Counsel believes the Court should approve the Claims Administrator's determination to reject Claim 220. In Claim 220, the claimant purchased 200 shares of GEO common stock on October 09, 2019, 20.38 shares on "various" dates between November 9, 2018 through August 5, 2020, and 80 shares on May 13, 2020, and sold them all on June 01, 2020. *Id.*, Ex. B. The claim was calculated to have no loss under the Court-approved Plan of Allocation as the purchases of GEO Group, Inc. common stock were purchased and sold within the same inflationary period. *Id.* at ¶24. Although the price of GEO common

stock declined during that time, that decline is not attributable to the disclosure of information correcting any allegedly misleading statement by Defendants. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (securities fraud actions serve "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause"). Accordingly, Class Counsel requests that the Court approve the Claims Administrator's determination to reject Claim 220.

### III. FEES AND EXPENSES OF THE CLAIMS ADMINISTRATOR

Class Counsel requests that the Court approve payment to the Claims Administrator for the balance of its fees and expenses incurred in connection with disseminating notice to the Settlement Class, preparing tax returns for the Settlement Fund, processing Proofs of Claim, communicating with Class Members, and administering and distributing the balance of the Net Settlement Fund.

To date, the Claims Administrator has billed a total of $233,503.33  for its work in disseminating notice to the Settlement Class, preparing tax returns for the Settlement Fund, processing Proofs of Claim, and communicating with Class Members, none of which has been paid yet. The Claims Administrator estimates that it will incur $16,935.50 in fees and expenses to conduct the initial distribution of the Net Settlement Fund to Authorized Claimants. Kimball Declaration ¶ 37. This would result in a total of $250,438.83  for the costs of claims administration. Class Counsel submits that this sum is reasonable for the Claims Administrator's work in this Action, which included sending 1,298 Postcard Notices to potential Class Members and receiving and processing 12,047 Proofs of Claim. *See, e.g., In re Home Loan Servicing Sols., Ltd. Sec. Litig.*, No. 16-CV-60165-WPD (S.D. Fla. Oct. 22, 2018) (approving up to $374,707.66 for claims administration costs where 13,379 claim forms accepted).

Accordingly, Class Counsel requests that the Court approve the payment of $250,438.83 from the Settlement Fund to the Claims Administrator for its fees and expenses for the work it has performed

on behalf of the Class, and for its projected fees and expenses to conduct the initial distribution.

## IV. PLANNED DISTRIBUTION OF THE NET SETTLEMENT FUND

As of September 17, 2024, the Settlement Fund contains $2,075,493.50. This reflects the $3,000,000.00 original Settlement Amount, plus interest earned to date of $3,495.38, less (i) Court-approved attorneys' fees in the amount of $960,000.00; (ii) Court-approved reimbursement of expenses in the amount of $39,727.87; (iii) a payment to the Claims Administrator for fees and expenses in the amount of $250,438.83; (iv) a payment to Lead Plaintiff Michael Deloach in the amount of $5,000.00; and (v) a payment to Lead Plaintiff Edward Oketola in the amount of $5,000.00. The Net Settlement Fund will be $1,743,328.68 following such payments.

Pursuant to the Stipulation, "the Claims Administrator … shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund … to Authorized Claimants." Stipulation ¶ 5.1. Class Counsel now seeks to distribute the Net Settlement Fund to the Class Members whose 5,186 claims have been accepted as set forth in the Kimball Declaration, in proportion to their Recognized Claims as shown therein.

The Claims Administrator shall make reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks. However, if any funds remain in the Net Settlement Fund six (6) months after the initial distribution, by reason of uncashed checks or otherwise, then any balance remaining in the Net Settlement Fund shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Class Members; (ii) second, to pay any additional notice and administration costs incurred in administering the Settlement; and (iii) finally, to make a second distribution to Class Members who cashed their checks from the initial distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. *See* Stipulation, ¶ 5.10. If such second distribution

is not undertaken, or if any funds remain in the Net Settlement Fund six (6) months after such second distribution and after the Claims Administrator has made reasonable and diligent efforts to have Class Members cash their checks, then any funds remaining in the Net Settlement Fund shall be contributed to the Investor Protection Trust, a non-sectarian, not-for-profit organization dedicated to investor education. *See Pritchard v. Apyx Med. Corp.*, 819CV00919SCBAEP, 2021 WL 2451356 (M.D. Fla. June 15, 2021) (approving Investor Protection Trust as the *cy pres* beneficiary in a securities class action settlement).

## V. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court approve and enter the [Proposed] Order for Distribution of Class Settlement Funds submitted herewith.

Dated: September 19, 2024          Respectfully submitted,

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Devin (Velvel) Freedman*
Devin (Velvel) Freedman (FL# 99762)
Ivy T. Ngo
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
(T): (786) 924-2900
vel@fnf.law
ingo@fnf.law

**LEVI & KORSINSKY, LLP**
Adam M. Apton
33 Whitehall Street, 17th Floor
New York, New York 10004
(T): (212) 363-7500
(F): (212) 363-7171
aapton@zlk.com

*Lead Counsel for Plaintiffs and the Class*

**CULLIN O'BRIEN LAW, P.A.**
Cullin O'Brien (FL# 0597341)
6541 NE 21st Way
Fort Lauderdale, Florida 33308
(T): (561) 676-6370

(F): (561) 320-0285
cullin@cullinobrienlaw.com

*Additional Counsel for Lead Plaintiff James
Michael DeLoach*

**THE SCHALL LAW FIRM**
Brian Schall
1880 Century Park East, Suite 404
Los Angeles, CA 90067
(T): (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff Edward
Oketola*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 19, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Devin (Velvel) Freedman*
Devin (Velvel) Freedman